**Exhibit C
to the
Declaration of Sabin Head In Support of Visto's
Motion for Preliminary Injunction**

US006085192A

# United States Patent [19]

## Mendez et al.

| [11] | **Patent Number:** | **6,085,192** |
|---|---|---|
| [45] | **Date of Patent:** | **Jul. 4, 2000** |

[54] **SYSTEM AND METHOD FOR SECURELY SYNCHRONIZING MULTIPLE COPIES OF A WORKSPACE ELEMENT IN A NETWORK**

[75] Inventors: **Daniel J. Mendez,** Mountain View; **Mark D. Riggins,** San Jose; **Prasad Wagle,** Santa Clara; **Christine C. Ying,** Foster City, all of Calif.

[73] Assignee: **RoamPage, Inc.,** Mountain View, Calif.

[21] Appl. No.: **08/835,997**

[22] Filed: **Apr. 11, 1997**

[51] **Int. Cl.**$^7$ ...................................................... **G06F 17/30**

[52] **U.S. Cl.** ............................ **707/10;** 707/203; 707/104; 707/1; 707/9; 707/10

[58] **Field of Search** .................................... 707/203, 104, 707/1, 9, 10

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| 4,831,582 | 5/1989 | Miller et al. | 707/104 |
|---|---|---|---|
| 4,875,159 | 10/1989 | Cary et al. | 364/200 |
| 5,263,157 | 11/1993 | Janis | 707/9 |
| 5,386,564 | 1/1995 | Shearer et al. | 395/650 |
| 5,581,749 | 12/1996 | Hossain et al. | 707/1 |
| 5,600,834 | 2/1997 | Howard | 395/617 |
| 5,613,012 | 3/1997 | Hoffman et al. | 382/115 |
| 5,627,658 | 5/1997 | Connors et al. | 358/407 |
| 5,666,553 | 9/1997 | Crozier | 395/803 |
| 5,682,524 | 10/1997 | Freund et al. | 395/605 |
| 5,684,990 | 11/1997 | Boothby | 707/203 |
| 5,701,423 | 12/1997 | Crozier | 395/335 |
| 5,706,502 | 1/1998 | Foley et al. | 707/10 |
| 5,710,918 | 1/1998 | Lagarde et al. | 395/610 |
| 5,715,403 | 2/1998 | Stefik | 705/44 |
| 5,721,908 | 2/1998 | Lagarde et al. | 395/610 |
| 5,721,914 | 2/1998 | DeVries | 395/615 |
| 5,745,360 | 4/1998 | Leone et al. | 364/140 |
| 5,757,916 | 5/1998 | MacDoran et al. | 380/25 |
| 5,778,346 | 7/1998 | Frid-Nielsen et al. | 395/208 |
| 5,790,425 | 8/1998 | Wagle | 364/551.01 |
| 5,790,790 | 8/1998 | Smith et al. | 395/200.36 |
| 5,799,318 | 8/1998 | Cardinal et al. | 707/104 |

### OTHER PUBLICATIONS

Network Firewalls, Bellovin et al., IEEE Communications Magazine, pp. 50–57, Sep. 1994.

IpAccess—An Internet Service Access System for Firewall Installations, Steffen Stempel, 1995 IEEE, pp. 31–41, Feb. 1995.

Web traffic characterization: an assessment of the impact of caching documents from NCSA's web server, Braun et al., Computer Networks and ISDN Systems, V. 28, pp. 37–51, Jul. 1995.

Security for Infinite Networks, Nelson et al., Aug. 1995 IEEE, pp. 11–19.

DEsigning an Academic Firewall: Policy, Practice, and Experience with SURF, Greenwald et al., Proceedings of SNDSS '96, Feb. 1996 IEEE, pp. 79–92.

(List continued on next page.)

*Primary Examiner*—Wayne Amsbury
*Assistant Examiner*—Shahid Alam
*Attorney, Agent, or Firm*—Graham & James LLP

[57] **ABSTRACT**

A system includes a general synchronization module at the client site for operating within a first firewall and for examining first version information to determine whether a first workspace element has been modified. The system further includes a synchronization agent at a global server for operating outside the first firewall and for forwarding to the general synchronization module second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified. A synchronization-start module is maintained at the client site for operating within the first firewall and for securely initiating the general synchronization module and the synchronization agent when predetermined criteria have been satisfied. The system further includes means for generating a preferred version from the first workspace element and from the copy by comparing the first version information and the second version information, and means for storing the preferred version at the first store and at the second store.

**25 Claims, 6 Drawing Sheets**



**6,085,192**

Page 2

## OTHER PUBLICATIONS

C–HTTP—The Development of a Secure, Closed HTTP–based Network on the Internet, Kiuchi et al., Proceedings of SNDSS '96, Feb. 1996 IEEE, pp. 64–75.

Establishing Firewall Policy, S. Cobb, Director of Special Projects National Computer Security Associations, Florida Office, ISBN#0–7803–3268–7, Jun. 1996, pp. 198–205.

Web site entitled "Bookmark Translator 2.0: This Utility transform Microsoft Internet Explore's bookmarks in the format valid for Netscape Navigator and viceversa," Enzo Marinacci, Rome– Jul. 1997, URL=http://www.bns.it/emware/BookmarkTranslator–uk.htm, pp. 1–4.

Article by Bellovin et al., entitled: "Network Firewalls"Published by IEEE Communications Magizine Sep. 1994, pp.50–57.

Article by Steffen Stempel, entitled: "IPAccess–An Internet Service Access System for Firewall Installations"Published by IEEE Communications Magazine a Feb. 16, 1995, pp.31–41.

Article by Braun et al., entitled:"Web Traffic Characterization: an assessment of the impact of caching documents from NCSA's web server"Published by Elservier Science B.V. 1995 pp. 37–51.

Article by Nelson et al., entitled: "Security for Infinite Networks"Published by IEEE Communications Magazine on Aug. 22, 1995, pp.11–19.

Article by Greenwald et al., "Designing an Academic Firewall: Policy, Pratice, and Experience with SURF"Published by IEEE Communications Magazine on Feb. 22, 1996, pp. 79–92.

Article by Kiuchi et al., entitled: "C–HTTP–The Development of a Secure, Closed HTTP–based Network on the Internet"Published by IEEE Proceedings of SNDSS on Feb. 22, 1996, pp. 64–75.

Article by S. Cobb, entitled: "Establishing Firewall Policy"Published by National Computer Security Assn. on Jun. 25–27, 1996, pp. 198–205.

**U.S. Patent**          **Jul. 4, 2000**          **Sheet 1 of 6**          **6,085,192**



FIG. 1



FIG. 2

Case3:04-cv-00651-EMC   Document100-3   Filed11/22/05   Page6 of 79



FIG. 3



FIG. 4



126

Synchronization
Agent



505

Communications
Module

510

General
Synchronization
Module

FIG. 5



FIG. 6

6,085,192

**1**

## SYSTEM AND METHOD FOR SECURELY SYNCHRONIZING MULTIPLE COPIES OF A WORKSPACE ELEMENT IN A NETWORK

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is related to co-pending patent application entitled "System and Method for Globally Accessing Computer Services," Ser. No. 08/766,307, now pending, filed on Dec. 13, 1996, by inventors Mark D. Riggins, R. Stanley Bailes, Hong Q. Bui, David J. Cowan, Daniel J. Mendez, Mason Ng, Sean Michael Quinlan, Prasad Wagle, Christine C. Ying, Christopher R. Zuleeg and Joanna A. Aptekar-Strober; and to co-pending patent application entitled "System and Method for Enabling Secure Access to Services in a Computer Network," Ser. No. 08/841,950, now pending, filed on Apr. 8, 1997, by inventor Mark Riggins, both of which are hereby incorporated by reference. These related applications have been commonly assigned to RoamPage, Inc.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates generally to computer networks, and more particularly to a system and method for securely synchronizing multiple copies of a workspace element such as a file in a secure network.

2. Description of the Background Art

Data consistency is a significant concern for computer users. For example, when maintaining multiple independently-modifiable copies of a document, a user risks using an outdated version. Further, by the time the user notices the inconsistency, interparty miscommunication or data loss may have resulted. The user must then spend more time attempting to reconcile the inconsistent versions.

The problem of data inconsistency is exacerbated when multiple copies of a document are maintained at different network locations. For example, due to network security systems such as conventional firewall technology, a user may have access only to a particular one of these network locations. Without access to the other sites, the user cannot confirm that the version on the accessible site is the most recent draft.

Therefore, a system and method are needed for providing users with data consistency, and more particularly for synchronizing multiple copies of a workspace element such as a document in the secure network environment.

### SUMMARY OF THE INVENTION

The present invention provides a system and method for synchronizing multiple copies of a workspace element in a secure network environment. The secure network environment includes a global server connected to multiple clients. Using the present system and method, the clients automatically synchronize workspace data between multiple sites, independent of whether the sites are protected by site firewalls.

The present system includes a general synchronization module at the client site for operating within a first firewall and for examining first version information to determine whether a first workspace element has been modified. The system further includes a synchronization agent at the global server for operating outside the first firewall and for forwarding to the general synchronization module second version information which indicates whether an independently-

**2**

modifiable copy of the first workspace element has been modified. A synchronization-start module, at the client site operates within the first firewall and initiates the general synchronization module and the synchronization agent when predetermined criteria have been satisfied. The system further includes means for generating a preferred version from the first workspace element and from the copy by comparing the first version information and the second version information, and means for storing the preferred version at the first store and at the second store.

The system further handles the case when both the workspace element and the copy have been modified independently since the last date and time of synchronization. Accordingly, a content-based synchronization module performs a responsive action such as determined a preferred version or storing both the first workspace element and the copy at both the first store and at the second store.

The present method includes the steps of generating first examination results by examining first version information, which indicates whether a first workspace element stored at a first store within a firewall has been modified; and generating second examination results by examining second version information which indicates whether an independently-modifiable copy of the first workspace element, the copy being stored at a second store outside the firewall, has been modified. The present method further includes the steps of initiating synchronization from within the firewall when predetermined criteria have been satisfied; generating a preferred version from the first workspace element and from the copy based on the first and second examination results; and storing the preferred version at the first store and at the second store.

The system and method advantageously use a trusted third party to enable the synchronization of workspace data among multiple sites. Accordingly, a client user who maintains a work site, a home site, an off-site and the global server site can synchronize the workspace data or portions thereof among all four sites. Further, the predetermined criteria (which controls when the synchronizationstart module initiates synchronization) may be set so that the general synchronization module synchronizes the workspace data upon user request, at predetermined times during the day such as while the user is commuting, or after a predetermined user action such as user log-off or user log-on. Because the system and method operate over the Internet, synchronization can occur over any distance. Since synchronization is initiated from within the firewall, the typical firewall, which prevents in-bound communications, does not act as an impediment to workspace data synchronization. Also, since the user's preferences may be previously set, the present system and method may operate unattended by the client user.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram illustrating a secure data-synchronizing network in accordance with the present invention;

FIG. 2 is a block diagram illustrating details of a FIG. 1 service server;

FIG. 3 is a block diagram illustrating details of the FIG. 1 desktop computer;

FIG. 4 is a block diagram illustrating details of the FIG. 3 base system;

FIG. 5 is a block diagram illustrating details of the FIG. 1 synchronization agent; and

FIG. 6 is a flowchart illustrating a method for synchronizing multiple copies of a workspace element in a secure network.

6,085,192

**3**

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

FIG. 1 is a block diagram illustrating a secure data-synchronizing network **100**, comprising a first site such as a remote computer terminal **105** coupled via a communications channel **110** such as the Internet to a global server **120**. The global server **120** is in turn coupled via a communications channel **125** such as the Internet to a second site such as a corporate Local Area Network (LAN) **135**. The global server **120** is protected by a global firewall **115**, and the corporate LAN **135** is protected by a corporate firewall **130**.

The corporate LAN **135** includes a corporate signal bus **140** coupling the corporate firewall **130** to an e-mail server **145** having e-mail data **165**, to a file server **150** having file data **170**, to a calendar server **155** having calendar data **175** and to a desktop computer **160** having user data **180**. It will be appreciated that the e-mail data **165**, file data **170**, calendar data **175** and user data **180** or portions thereof may be stored at different locations such as locally on the desktop computer **160**. It will be further appreciated that the e-mail data **165**, file data **170**, calendar data **175** and user data **180** are exemplary and collectively referred to herein as "workspace data" **185**. Those skilled in the art will recognize that "workspace data" may include other types of data such as application programs. It will be further appreciated that the e-mail data **165**, file data **170**, calendar data **175** and user data **180** may each be divided into workspace elements, wherein each workspace element is identified by particular version information **255** (described below with reference to FIG. 2). Accordingly, each e-mail, file, calendar, etc. may be referred to as "a workspace element in workspace data."

An independently modifiable copy of the workspace data **185**, referred to herein as workspace data **123**, is stored on the global server **120** for easy access by a user from the remote terminal **105**. Being a copy, the workspace data **123** includes independently modifiable copies of each workspace element in workspace data **185** and an independently modifiable copy of version information **255** (FIG. 2), referred to herein as version information **124**.

Network **100** further comprises synchronization means, which includes a base system **190** stored within the corporate LAN **135** and for example on the desktop computer **160** and further includes a synchronization agent **126** stored outside the corporate firewall **130** and preferably on the global server **120**. The base system **190** and the synchronization agent **126** cooperate to synchronize the workspace data **185** with the workspace data **123**. Generally, the base system **190** manages the workspace data **185** within the corporate LAN **135** and the synchronization agent **126** manages the workspace data **123** within the global server **120**. As described in greater detail below with reference to FIG. 4, the base system **190** preferably initiates and controls data synchronization. Other components and functions of the global server **120** are described in the cross-referenced patent applications which are herein incorporated by reference.

The remote terminal **105** may include a smart telephone or a Personal Data Assistant (PDA) such as the PalmPilot system by the U.S. Robotics, Inc. Although not shown, the remote terminal **105** may include a second base system similar to the base system **190**, which is described with greater detail with reference to FIG. 4. Accordingly, the second base system on the remote terminal **105** would cooperate with the synchronization agent **126** to synchronize the workspace data stored on the remote terminal **105** with the workspace data **123** stored on the global server **120**. As

**4**

with the corporate LAN, the second base system on the remote terminal **105** would preferably initiate and control data synchronization with the global server **120** for the same reasons discussed below. Workspace data on the remote terminal **105** would thus be synchronized with the workspace data **123** and with the workspace data **185**.

FIG. 2 is a block diagram illustrating details of a service server **200**, wherein each of the e-mail server **145**, the file server **150**, the calendar server **155** and the desktop computer **160** is an instance thereof. Service server **200** includes a Central Processing Unit (CPU) **205** such as a Motorola Power PC® microprocessor or an Intel Pentium® microprocessor. An input device **210** such as a keyboard and mouse and an output device **215** such as a Cathode Ray Tube (CRT) display are coupled via a signal bus **220** to CPU **205**. A communications interface **225** (such as an Ethernet port), a data storage device **230** (such as read only memory or a magnetic disk), and Random-Access Memory (RAM) **235** are further coupled via signal bus **220** to the CPU **205**.

An operating system **240** includes a program for controlling processing by the CPU **205**, and is typically stored in the data storage device **230** and loaded into the RAM **235** for execution. A service engine **245** includes a program for performing a particular service such as maintaining an e-mail data base, a calendar data base, a bookmarks data base or another file data base, and may be also stored in the data storage device **230** and loaded into the RAM **235** for execution. To perform a service, the service engine **245** operates on service data **250** (e.g., the e-mail data **165**, the file data **170**, the calendar data **175** or the user data **180**), which is typically stored in the data storage device **250**. The service data **250** includes version information **255** indicating the date and time of the last modification. The service engine **245** operates to update the version information **255** whenever modifications are made. It will be appreciated that the portion of memory in the data storage device **250** which contains the service data **250** is referred to as the service "store."

FIG. 3 is a block diagram illustrating details of the desktop computer **160**, which includes a CPU **305**, an input device **310**, an output device **315**, a communications interface **325**, a data storage device **330** and RAM **335**, each coupled to a signal bus **320**.

An operating system **340** includes a program for controlling processing by the CPU **305**, and is typically stored in the data storage device **330** and loaded into the RAM **335** for execution. A desktop service engine **345** (i.e., a particular service engine **245**, FIG. 2) includes a service program for managing user data **180** (i.e., particular service data **250**, FIG. 2) which includes version information **350** (i.e., particular version information **255**, FIG. 2). The desktop service engine **345** may be also stored in the data storage device **330** and loaded into the RAM **335** for execution. The user data **180** may be stored in the data storage device **330**. As stated above with reference to FIG. 1, the base system **1 90** operates to synchronize the workspace data **185** (which includes user data **180**) with the workspace data **123**. The base system **190** may be also stored in the data storage device **330** and loaded into the RAM **335** for execution.

FIG. 4 is a block diagram illustrating details of the base system **190**, which includes a communications module **405**, a user interface module **410**, a locator module **415**, a synchronization-start ("synch-start") module **420**, a general synchronization module **425** and a content-based synchronization module **430**. For simplicity, each module is illustrated as communicating with one another via a signal bus **440**.

6,085,192

**5**

The communications module **405** includes routines for compressing data, and routines for communicating via the communications interface **325** (FIG. 3) with the synchronization agent **126** (FIG. 1). The communications module **405** may further include routines for applying Secure Socket Layer (SSL) technology and user identification and authentication techniques (i.e., digital certificates) to establish a secure communication channel through the corporate firewall **130** and through the global firewall **126**. Examples of communications modules **405** may include TCP/IP stacks or the AppleTalk® protocol.

The user interface **410** includes routines for communicating with a user, and may include a conventional Graphical User Interface (GUI). The user interface **410** operates in coordination with the other desktop computer **160** components as described herein.

The locator module **415** includes routines for identifying the memory locations of the workspace elements in the workspace data **185** and the memory locations of the workspace elements in the workspace data **123**. Workspace element memory location identification may be implemented using intelligent software, i.e., preset memory addresses or the system's registry, or using dialogue boxes to query a user. Accordingly, the locator module **415** determines the memory addresses of the workspace elements in the e-mail data **165**, the workspace elements in the file data **170**, the workspace elements in the calendar data **175** and the workspace elements in the user data **180** as well as the memory addresses of the corresponding workspace elements in the workspace data **123**. It will be appreciated that the locator module **415** may perform workspace element memory location identification upon system boot-up or after each communication with the global server **120** to maintain updated memory locations of workspace elements.

The synchronization-start module **420** includes routines for determining when to initiate synchronization of workspace data **123** and workspace data **185**. For example, the synchronization-start module **420** may initiate data synchronization upon user request, at a particular time of day, after a predetermined time period passes, after a predetermined number of changes, after a user action such as user log-off or upon like criteria. The synchronization-start module **420** initiates data synchronization by instructing the general synchronization module **425** to begin execution of its routines. It will be appreciated that communications with synchronization agent **126** preferably initiate from within the corporate LAN **1135**, because the typical corporate firewall **130** prevents in-bound communications and allows out-bound communications.

The general synchronization module **425** includes routines for requesting version information **124** from the synchronization agent **126** (FIG. 1) and routines for comparing the version information **255** against a last synchronization signature **435** such as a last synchronization date and time to determine which versions have been modified. The general synchronization module **425** further includes routines for comparing the version information **124** and the version information **255** to determine if only one or both versions of a particular workspace element have been modified and routines for performing an appropriate synchronizing responsive action. Appropriate synchronizing responsive actions may include forwarding the modified version (as the preferred version) of a workspace element in workspace data 1 85 or forwarding just a compilation of the changes to the other store(s). Other appropriate synchronizing responsive actions may include, if reconciliation between two modified versions is needed, then instructing the content-based syn-

**6**

chronization module **430** to execute its routines which are described below.

It will be appreciated that the synchronization agent **126** preferably examines the version information **124** and forwards only the version information **124** determined to be modified since the last synchronization signature **435**. This technique makes efficient use of processor power and avoids transferring unnecessary data across the communications channel **125**. The general synchronization module **425** in the corporate LAN **135** accordingly compares the received version information **124** with the version information **255** to determine if reconciliation is needed. Upon completion of the data synchronization, the general synchronization module **425** updates the last synchronization signature **435**.

The content-based synchronization module **430** includes routines for reconciling two or more modified versions in workspace data **123**, **185** of the same workspace element. For example, if the original and the copy of a user workspace element have both been modified independently since the last synchronization, the contentbased synchronization module **430** determines the appropriate responsive action. The content-based synchronization module **430** may request a user to select the preferred one of the modified versions or may respond based on preset preferences, i.e., by storing both versions in both stores or by integrating the changes into a single preferred version which replaces each modified version at both stores.

FIG. **5** is a block diagram illustrating details of the synchronization agent **126**, which includes a communications module **505** (similar to the communications module **405** described above with reference to FIG. 4) and a general synchronization module **510** (similar to the general synchronization module **425** described above also with reference to FIG. **4**). The communications module **505** includes routines for compressing data, and routines for communicating via the communications channel **125** with the base system **190**. The communications module **505** may further include routines for establishing a secure communications channel through the global firewall **126** and through the corporate firewall **126**.

The general synchronization module **510** includes routines for comparing the version information **124** with the last synchronization signature **435**, and routines for forwarding to the general synchronization module **425** version information **124** determined to be modified. The general synchronization module **510** may either maintain its own last synchronization signature **435** copy (not shown). Alternatively, the request to synchronize from the base system **190** may include a copy of the last synchronization signature **435**. The general synchronization module **510** further includes routines for receiving preferred versions of workspace data **185** workspace elements from the general synchronization module **425**, and routines for forwarding preferred versions of workspace data **123** workspace elements to the general synchronization module **425**.

FIG. **6** is a flowchart illustrating a method **600** for synchronizing multiple copies of workspace data **123**, **185** in a secure network **100**. Method **600** begins with locator module **415** in step **605** identifying the memory locations of the workspace elements in workspace data **123**, **185**. As stated above, workspace element memory location identification may be implemented using intelligent software or dialogue boxes. The user interface module **410** in step **610** enables selection of the workspace elements in workspace data **123**, **185** to be synchronized by the general synchronization module **425**.

6,085,192

7

The synchronization-start module 420 in step 615 determines whether predetermined criteria have been met which indicate that synchronization of the workspace elements selected in step 610 should start. If not, then method 600 loops back to step 615. Otherwise, the communications module 405 and communications module 505 in step 617 establish a secure communications channel between the global server 120 and the desktop computer 160. The general synchronization module 510 in step 620 compares the version information 124 of each of the selected work- 10 space elements in workspace data 123 against the last synchronization signature 435 to determine modified workspace elements, and forwards the version information 124 of workspace elements determined to be modified to the general synchronization module 425. Further, the general syn- 15 chronization module 425 in step 620 compares the version information 255 of each selected workspace element in the workspace data 185 against the last synchronization signature 435 to locate modified workspace elements. In this embodiment, a workspace element has been modified if the 20 date and time of last modification is after the date and time of last synchronization.

If no modified workspace elements in workspace data 123 or in workspace data 185 are located, then the general synchronization modules 425 and 510 in step 650 update the 25 last synchronization signature 435 and method 600 ends. Otherwise, the general synchronization module 425 in step 625 determines whether more than one version of the same workspace element has been modified since the last syn- 30 chronization.

If only one version has been modified, then the corresponding general synchronization module 425 or 510 in step 630 forwards the updated preferred version of the workspace element to the other store, and then in step 635 determines 35 whether all workspace elements selected in step 610 have been examined. If so, then method 600 jumps to step 650. Otherwise, then method 600 returns to step 620.

If more than one version has been modified, then the general synchronization module 425 in step 640 instructs the 40 content-based synchronization module 430 to reconcile the modified versions. Reconciliation may include requesting instructions from the user or, based on preselected preferences, performing responsive actions such as storing both versions in both stores. 45

General synchronization module 425, 510 in step 645 sends the preferred version of the workspace element or just a compilation of the changes to the other store. That is, if the preferred version is a workspace element in the workspace data 185, then general synchronization module 425 sends 50 the preferred version or the changes to general synchronization module 510 to update the outdated workspace element in the workspace data 123. If the preferred version is a workspace element in the workspace data 123, then the general synchronization module 510 sends the preferred 55 version or the changes to the general synchronization module 425 to update the outdated workspace element in the workspace data 185. Method 600 then jumps to step 635.

The foregoing description of the preferred embodiments of the invention is by way of example only, and other 60 variations of the above-described embodiments and methods are provided by the present invention. For example, although the global server 120 is illustrated as a single device, the global server 120 may include several computers networked together. Although not described in great detail, 65 the remote terminal 105 can synchronize copies of workspace elements stored on it with workspace elements of

8

workspace data 123 stored on the global server 120. Components of this invention may be implemented using a programmed general purpose digital computer, using application specific integrated circuits, or using a network of interconnected conventional components and circuits. The embodiments described herein have been presented for purposes of illustration and are not intended to be exhaustive or limiting. Many variations and modifications are possible in light of the foregoing teaching. The system is limited only by the following claims.

What is claimed is:

1. A computer-based method comprising the steps of:
   (a) generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;
   (b) generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;
   (c) initiating steps (a) and (b) from within the firewall when predetermined criteria have been satisfied;
   (d) generating a preferred version from the first workspace element and from the copy based on the first and second examination results; and
   (e) storing the preferred version at the first store and at the second store.

2. The method of claim 1 wherein the second store is on a global server outside the firewall and which is protected by a global firewall.

3. The method of claim 1 wherein the first version information includes the date and time the first workspace element was last modified and the second version information includes the date and time the copy was last modified.

4. The method of claim 3 wherein generating the first examination results includes the step of comparing the first version information against a date and time of last synchronization.

5. The method of claim 3 wherein generating the second examination results includes the step of comparing the second version information against a date and time of last synchronization.

6. The method of claim 1 further comprising, before generating the first examination results, the step of updating the first version information whenever the first workspace element is modified.

7. The method of claim 1 further comprising, before generating the second examination results, the step of updating the second version information whenever the copy is modified.

8. The method of claim 1 wherein if only one of the first workspace element and the copy has been modified, then the step of generating includes selecting the one as the preferred version.

9. The method of claim 1 further comprising the step of locating the first workspace element, the first version information, the copy and the second version information.

10. A system comprising:
   a general synchronization module for operating within a first firewall and for examining first version information to determine whether a first workspace element has been modified;
   a synchronization agent for operating outside the first firewall and for forwarding to the general synchronization module second version information which indi-

**9**

cates whether an independently modifiable copy of the first workspace element has been modified;

a synchronization-start module for operating within the first firewall and for initiating the general synchronization module and the synchronization agent when predetermined criteria have been satisfied;

means for generating a preferred version from the first workspace element and from the copy by comparing the first version information and the second version information; and

means for storing the preferred version at the first store and at the second store.

**11.** The system of claim **10** further comprising a communications module for communicating through the first firewall.

**12.** The system of claim **10** wherein the synchronization agent and the second store are on a global server which is protected by a global firewall.

**13.** The system of claim **12** further comprising a communications module for communicating through the first firewall and through the global firewall.

**14.** The system of claim **10** wherein the first version information includes the date and time the first workspace element was last modified and the second version information includes the date and time the copy was last modified.

**15.** The system of claim **14** wherein the general synchronization module compares the first version information against a date and time of last synchronization.

**16.** The system of claim **14** wherein the synchronization agent compares the second version information against the date and time of last synchronization.

**17.** The system of claim **10** further comprising means for updating the first version information whenever the first workspace element is modified.

**18.** The system of claim **10** further comprising means for updating the second version information whenever the copy is modified.

**19.** The system of claim **10** wherein if only one of the first workspace element and the copy has been modified, then the means for generating selects the one as the preferred version.

**20.** The system of claim **10** further comprising a locator module for locating the first store, the first workspace element, the first version information, the second store, the copy and the second version information.

**21.** A system comprising:

first means for generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;

second means for generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;

means for initiating the first and second means from within the firewall when predetermined criteria have been satisfied;

means for generating a preferred version from the first workspace element and from the copy based on the first and second examination results; and

means for storing the preferred version at the first store and at the second store.

**22.** A computer-readable storage medium storing program code for causing a computer to perform the steps of:

(a) generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;

**10**

(b) generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;

(c) initiating steps (a) and (b) from within the firewall when predetermined criteria have been satisfied;

(d) generating a preferred version from the first workspace element and from the copy based on the first and second examination results; and

(e) storing the preferred version at the first store and at the second store.

**23.** A computer-based method comprising the steps of:

(a) generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;

(b) generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;

(c) initiating steps (a) and (b) from within the firewall when predetermined criteria have been satisfied;

(d) determining based on the first and second examination results that both the first workspace element and the copy have been modified; and

(e) storing both the first workspace element and the copy at the first store and at the second store.

**24.** A system comprising:

first means for generating first examination results from first version information which indicates whether a first workspace element stored at a first store within a firewall has been modified;

second means for generating second examination results from second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified, the copy being stored at a second store outside the firewall;

means for initiating the first and second means from within the firewall when predetermined criteria have been satisfied;

means for determining based on the first and second examination results that both the first workspace element and the copy have been modified; and

means for storing both the first file and the copy at the first store and at the second store.

**25.** A system comprising:

a global server for operating outside a firewall and including memory for storing first workspace data and corresponding first version information; and

a synchronization agent for managing the first workspace data and the corresponding first version information and for communicating with remote clients; and

a remote client for operating within the firewall and including memory for storing second workspace data and corresponding second version information;

means for cooperating with the synchronization agent to synchronize the first workspace data with the second workspace data by examining the first version information and the second version information; and

a synchronization-start module for initiating workspace data synchronization between the global server and the remote client.

\* \* \* \* \*



U S FILE HISTORY NUMBER

6,085,192

COPIED ON

4/25/02

CLIENT MATTER NUMBER

Notes:

The **File Closure**ˢᴹ by
metroPatent, Inc.
1-800-298-4624 

VO 000355

6085192

6085192

| UTILITY SERIAL NUMBER | PATENT DATE JUL 04 2000 | PATENT NUMBER |
|---|---|---|

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 08/905,90? | 04/31/97 | 707 | 101 | 2771 | S. ALAM |

**APPLICANTS**

LUIS L.? FELIPE, MOUNTAIN VIEW, CA; MARK D. RIGGINS, SAN JOSE, CA; PRASAD WAGLE, SANTA CLARA, CA; CHRISTINE C. YING, FOSTER CITY, CA.

**CONTINUING DATA*********************
VERIFIED

54

***************

IF REQUIRED FOREIGN FILING LICENSE GRANTED 09/29/97 ** SMALL ENTITY **

| Foreign priority claimed ☑ yes ☐ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☐ no | | CA | 6 | 25 | 7 | $600.00 | 40827.000? |
| Verified and Acknowledged    Examiner's initials | | | | | | | |

**ADDRESS**

MARC A. SOCKOL, ESG.
GRAHAM & JAMES, LLP
600 HANSEN WAY
PALO ALTO CA 94304-1043          PHONE: (650)856-6500

**TITLE**

SYSTEM AND METHOD FOR SECURELY SYNCHRONIZING MULTIPLE COPIES OF A NETWORK ELEMENT IN A NETWORK

U.S. DEPT. OF COMM./PAT. & TM—PTO-436L (Rev. 12-94)

**PARTS OF APPLICATION FILED SEPARATELY**

**NOTICE OF ALLOWANCE MAILED**
SHAHID ALAM
Assistant Examiner

**CLAIMS ALLOWED**

**ISSUE FEE**

| Amount Due | Date Paid |
|---|---|
| 600 | |

WAYNE AMSBURY
PRIMARY PATENT EXAMINER
Primary Examiner

**ISSUE BATCH NUMBER**

Label Area

**PREPARED FOR ISSUE**

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

**ISSUE FEE IN FILE**

Formal Drawings (6 shts) set
Form PTO-436A
(Rev. 8/92)

TM

VO 000356

FACE

59655 U.S. PTO
08835997

04/11/97

# PATENT APPLICATION

08835997

APPROVED FOR LICENSE

INITIALS

| Date Entered or Counted | CONTENTS | Date Received or Mailed |
|---|---|---|
| | 1. Application _____ 6 _____ papers | |
| | 2. Reg'd Cor-Cae | 10-14-97 |
| | 3. P/A | 3/3/98 |
| | 4. Notice of Acceptance | 2/1/98 |
| 7-20-98 | 5. Notice of Allow | 7/20-98 |
| | 6. IDS | 6-9-98 |
| 11-4 | 7. Supple. Notice of Allow. | NOV a a from |
| | 8. Formal Drawings | Oct-19, 1998 |
| | 9. IDS | 10-26-98 |
| 4/23/99 | 10. A letter | 1-27-99 S.C |
| | 11. Min let w/attach | |
| | 12. Letter | 5-15-99 |
| | 13. Supplemental Action | 4-15-99 |
| | 14. Supplemental Amd. A 13 | 7-16-99 |
| | 15. IDS | 7-11-99 |
| | 16. Suppl. IDS | 7-16-99 |
| | 17. Suppl. IDS | 7-12-99 |
| | 18. Suppl. IDS | 5-13-99 |
| | 19. Suppl. IDS | 5-17-99 |
| | 20. Post Allowance Communication | 7-30-99 |
| | 21. Rep for FR | 5-12-99 |
| | 22. Supp. IDS | 11/8/99 |
| | 23. Post Allowance Communication | 2-16-00 |
| | 24. Suppl IDS | 2-17-00 |
| 3/21 | 25. Letter | 3-28-00 |
| | 26. Formal Drawings (Canc) not | 10-19-00 |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

(FRONT)

VO 000357

ORIGINAL CLASSIFICATION

CLASS · 707 · · · SUBCLASS · 10 · · ·

APPLICATION SERIAL NUMBER
08/835,997

APPLICANT'S NAME (PLEASE PRINT)
MENDEZ et al.

IF REISSUE, ORIGINAL PATENT NUMBER

INTERNATIONAL CLASSIFICATION
G06F 17/30

PTO-270 (REV. 5-91)

CROSS REFERENCE(S)

| CLASS | | SUBCLASS (ONE SUBCLASS PER BLOCK) |
|---|---|---|
| 707 | 203 | 104 |
| 707 | | 9 | 10 |

GROUP ART UNIT
2776

ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME)
SHAHID ALAM

PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME)
WAYNE AMSBURY

ISSUE CLASSIFICATION SLIP

U.S. DEPARTMENT
PATENT AND

| Claim | Date | | | | Claim | Date | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final / Original | | | | | Final / Original | | | | |
| 1 | | | | | 51 | | | | |
| 2 | | | | | 52 | | | | |
| 3 | | | | | 53 | | | | |
| 4 | | | | | 54 | | | | |
| 5 | | | | | 55 | | | | |
| 6 | | | | | 56 | | | | |
| 7 | | | | | 57 | | | | |
| 8 | | | | | 58 | | | | |
| 9 | | | | | 59 | | | | |
| 10 | | | | | 60 | | | | |
| 11 | | | | | 61 | | | | |
| 12 | | | | | 62 | | | | |
| 13 | | | | | 63 | | | | |
| 14 | | | | | 64 | | | | |
| 15 | | | | | 65 | | | | |
| 16 | | | | | 66 | | | | |
| 17 | | | | | 67 | | | | |
| 18 | | | | | 68 | | | | |
| 19 | | | | | 69 | | | | |
| 20 | | | | | 70 | | | | |
| 21 | | | | | 71 | | | | |
| 22 | | | | | 72 | | | | |
| 23 | | | | | 73 | | | | |
| 24 | | | | | 74 | | | | |
| 25 | | | | | 75 | | | | |
| 26 | | | | | 76 | | | | |
| 27 | | | | | 77 | | | | |
| 28 | | | | | 78 | | | | |
| 29 | | | | | 79 | | | | |
| 30 | | | | | 80 | | | | |
| 31 | | | | | 81 | | | | |
| 32 | | | | | 82 | | | | |
| 33 | | | | | 83 | | | | |
| 34 | | | | | 84 | | | | |
| 35 | | | | | 85 | | | | |
| 36 | | | | | 86 | | | | |
| 37 | | | | | 87 | | | | |
| 38 | | | | | 88 | | | | |
| 39 | | | | | 89 | | | | |
| 40 | | | | | 90 | | | | |
| 41 | | | | | 91 | | | | |
| 42 | | | | | 92 | | | | |
| 43 | | | | | 93 | | | | |
| 44 | | | | | 94 | | | | |
| 45 | | | | | 95 | | | | |
| 46 | | | | | 96 | | | | |
| 47 | | | | | 97 | | | | |
| 48 | | | | | 98 | | | | |
| 49 | | | | | 99 | | | | |
| 50 | | | | | 100 | | | | |

SYMBOLS
✓ .......... Rejected
— .......... Allowed
(Through numeral) Cancelled
.......... Restricted
N .......... Non-elected
I .......... Interference
A .......... Appeal
O .......... Objected

(LEFT INSIDE)

VO 000358



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 707 | 203 | 6/8/98 | SA |
| 707 | 104 | 6/10/98 | SA |
| 707 | 1 | 6/10/98 | SA |
| 707 | 9 | 7/16/98 | SA |
| 707 | 10 | 7/16/98 | SA |

| SEARCH NOTES | | |
|---|---|---|
| | Date | Exmr. |
| | | |



| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 707 | 203 | 7/16/98 | SA |
| | 104 | | |
| | 1 | | |
| | 9 | | |
| | 10 | 7/16/98 | SA |

(RIGHT OUTSIDE)

VO 000360

69665 U.S. PTO
08835997

04/11/97

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

09/23/1997 CSTREATE 00000069 DA#:060600    08835997
01 FC:201          385.00 CH
02 FC:202          160.00 CH
03 FC:203           55.00 CH

260 IU 05/15/97 08835997
1 501              40.00 CK

PTO-1556
(5/87)

Case Docket No.: _____ 647

PATENT APPLICATION
ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Sir:
Transmitted herewith for filing is the patent application of
Applicants:     Daniel Mendez et al.
Title:          System and Method for Securely Synchronizing Multiple Copies of a Workspace Element in a Network

Enclosed are:
[x]    _32_ pages of specification, claims and abstract.
[x]    _6_ sheets of [x] informal [ ] formal drawing(s).
[x]    A declaration and power of attorney.
[x]    An assignment transmittal.
[x]    An assignment of the invention to: RoamPage, Inc.
       Please record the assignment and return to the undersigned.
[ ]    A certified copy of a _____ application.
[ ]    An associate power of attorney.
[x]    A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27.
[ ]    PTO Form-1449 and copies of cited art.

The filing fee has been calculated as shown below:

| For | (Col. 1) No. Filed | (Col. 2) No. Extra | Small Entity Rate | Small Entity Fee | or | Other Than a Small Entity Rate | Other Than a Small Entity Fee |
|---|---|---|---|---|---|---|---|
| Basic Fee |  |  |  | $385.00 |  |  | $770.00 |
| Total Claims | 25- 20 =* | 5 | x $11 = | $55.00 |  | x $22 = | $ |
| Indep. Claims | 7- 3 =* | 4 | x $40 = | $160.00 | or | x $80 = | $ |
| Multiple Dependent Claims Present [ ] |  |  | + $130 = | $0.00 |  | + $260 = | $ |
| *If the difference in column 1 is less than zero, enter 0 in column 2 |  |  | Total | $600.00 | or | Total | $ |

[ ]    Please charge my Deposit Account No. 06-0600 the amount of $____. A duplicate copy of this sheet is enclosed.

[x]    A check in the amount of $640.00 to cover the filing fee [x] and recording of assignment is enclosed.

[x]    The Commissioner is hereby authorized to charge payment of the following fees during the pendency of this application or credit any overpayment to Deposit Account No. 06-0600. A duplicate copy of this sheet is enclosed.
       [x]    Any additional filing fees required under 37 CFR § 1.16.
       [x]    Any patent application processing fees under 37 CFR § 1.17.
       [ ]    The issue fee set in 37 CFR § 1.18 at or before mailing of the Notice of Allowance, pursuant to 37 CFR § 1.311(b).

Dated: _4/11/97_

Respectfully submitted,

Marc A. Sockol, Registration No. P-40,823
Carr, DeFilippo & Ferrell LLP
2225 East Bayshore Road, Suite 200
Palo Alto, California 94303
(415) 812-3407

VO 000362

IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANTS: Daniel Mendez et al.

SERIAL NO.: Unknown

FILING DATE: On Even Date Herewith

TITLE: System and Method for Securely Synchronizing Multiple
Copies of a Workspace Element in a Network

EXAMINER: Unknown

GROUP ART UNIT: Unknown

ATTY.DKT.NO.: 647

---

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

### CERTIFICATE OF EXPRESS MAIL

SIR:

"Express Mail" mailing label number  EM502168943US

Date of Deposit:  4/11/97

I hereby certify that this paper or fee is being deposited with the United States Postal Service."Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Assistant Commissioner for Patents, Washington, D.C. 20231.

Deposited by:  Isis Nieto

(Signature of person mailing paper or fee)

VO 000363

(L)                    (600-20)

PATENT
08/835, 997

## SYSTEM AND METHOD FOR SECURELY SYNCHRONIZING MULTIPLE

## COPIES OF A WORKSPACE ELEMENT IN A NETWORK

### CROSS-REFERENCE TO RELATED APPLICATIONS

5          This application is related to co-pending patent application

entitled "System and Method for Globally Accessing Computer

Services," serial number 08/766,307, *now pending,* filed on December 13, 1996, by

inventors Mark D. Riggins, R. Stanley Bailes, Hong Q. Bui, David J.

Cowan, Daniel J. Mendez, Mason Ng, Sean Michael Quinlan, Prasad

10     Wagle, Christine C. Ying, Christopher R. Zuleeg and Joanna A.

Aptekar-Strober; and to co-pending patent application entitled

"System and Method for Enabling Secure Access to Services in a

Computer Network," serial number 08/841950, *now pending,* filed on 4/08/97, by

inventor Mark Riggins, both of which are hereby incorporated by

15     reference. These related applications have been commonly assigned

to RoamPage, Inc.

-1-

VO 000364

PATENT

## BACKGROUND OF THE INVENTION

### 1.    Field of the Invention

This invention relates generally to computer networks, and more particularly to a system and method for securely synchronizing
5    multiple copies of a workspace element such as a file in a secure network.

### 2.    Description of the Background Art

Data consistency is a significant concern for computer users.
10   For example, when maintaining multiple independently-modifiable copies of a document, a user risks using an outdated version. Further, by the time the user notices the inconsistency, interparty miscommunication or data loss may have resulted. The user must then spend more time attempting to reconcile the inconsistent
15   versions.

The problem of data inconsistency is exacerbated when multiple copies of a document are maintained at different network locations. For example, due to network security systems such as conventional firewall technology, a user may have access only to a
20   particular one of these network locations. Without access to the other sites, the user cannot confirm that the version on the accessible site is the most recent draft.

-2-

VO 000365

Therefore, a system and method are needed for providing users with data consistency, and more particularly for synchronizing multiple copies of a workspace element such as a document in the secure network environment.

5

## SUMMARY OF THE INVENTION

The present invention provides a system and method for synchronizing multiple copies of a workspace element in a secure network environment. The secure network environment includes a global server connected to multiple clients. Using the present system and method, the clients automatically synchronize workspace data between multiple sites, independent of whether the sites are protected by site firewalls.

10

The present system includes a general synchronization module at the client site for operating within a first firewall and for examining first version information to determine whether a first workspace element has been modified. The system further includes a synchronization agent at the global server for operating outside the first firewall and for forwarding to the general synchronization module second version information which indicates whether an independently-modifiable copy of the first workspace element has been modified. A synchronization-start module at the client site

15

20

-3-

VO 000366

PATENT

operates within the first firewall and initiates the general
synchronization module and the synchronization agent when
predetermined criteria have been satisfied. The system further
includes means for generating a preferred version from the first
5    workspace element and from the copy by comparing the first version
information and the second version information, and means for
storing the preferred version at the first store and at the second
store.

The system further handles the case when both the workspace
10   element and the copy have been modified independently since the
last date and time of synchronization. Accordingly, a content-based
synchronization module performs a responsive action such as
determined a preferred version or storing both the first workspace
element and the copy at both the first store and at the second store.

15   The present method includes the steps of generating first
examination results by examining first version information, which
indicates whether a first workspace element stored at a first store
within a firewall has been modified; and generating second
examination results by examining second version information which
20   indicates whether an independently-modifiable copy of the first
workspace element, the copy being stored at a second store outside
the firewall, has been modified. The present method further

-4-

VO 000367

PATENT

includes the steps of initiating synchronization from within the firewall when predetermined criteria have been satisfied; generating a preferred version from the first workspace element and from the copy based on the first and second examination results; and storing

5    the preferred version at the first store and at the second store.

The system and method advantageously use a trusted third party to enable the synchronization of workspace data among multiple sites. Accordingly, a client user who maintains a work site, a home site, an off-site and the global server site can synchronize the

10   workspace data or portions thereof among all four sites. Further, the predetermined criteria (which controls when the synchronization-start module initiates synchronization) may be set so that the general synchronization module synchronizes the workspace data upon user request, at predetermined times during the day such as while the

15   user is commuting, or after a predetermined user action such as user log-off or user log-on. Because the system and method operate over the Internet, synchronization can occur over any distance. Since synchronization is initiated from within the firewall, the typical firewall, which prevents in-bound communications, does not act as

20   an impediment to workspace data synchronization. Also, since the user's preferences may be previously set, the present system and method may operate unattended by the client user.

-5-

VO 000368

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram illustrating a secure data-synchronizing network in accordance with the present invention;

FIG. 2 is a block diagram illustrating details of a FIG. 1 service

5   server;

FIG. 3 is a block diagram illustrating details of the FIG. 1 desktop computer;

FIG. 4 is a block diagram illustrating details of the FIG. 3 base system;

10   FIG. 5 is a block diagram illustrating details of the FIG. 1 synchronization agent; and

FIG. 6 is a flowchart illustrating a method for synchronizing multiple copies of a workspace element in a secure network.

-6-

VO 000369

PATENT

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

FIG. 1 is a block diagram illustrating a secure data-synchronizing network 100, comprising a first site such as a remote computer terminal 105 coupled via a communications channel 110

5  such as the Internet to a global server 120. The global server 120 is in turn coupled via a communications channel 125 such as the Internet to a second site such as a corporate Local Area Network (LAN) 135. The global server 120 is protected by a global firewall 115, and the corporate LAN 135 is protected by a corporate firewall

10  130.

The corporate LAN 135 includes a corporate signal bus 140 coupling the corporate firewall 130 to an e-mail server 145 having e-mail data 165, to a file server 150 having file data 170, to a calendar server 155 having calendar data 175 and to a desktop

15  computer 160 having user data 180. It will be appreciated that the e-mail data 165, file data 170, calendar data 175 and user data 180 or portions thereof may be stored at different locations such as locally on the desktop computer 160. It will be further appreciated that the e-mail data 165, file data 170, calendar data 175 and user

20  data 180 are exemplary and collectively referred to herein as "workspace data" 185. Those skilled in the art will recognize that "workspace data" may include other types of data such as

-7-

VO 000370

application programs. It will be further appreciated that the e-mail data 165, file data 170, calendar data 175 and user data 180 may each be divided into workspace elements, wherein each workspace element is identified by particular version information 255

5    (described below with reference to FIG. 2). Accordingly, each e-mail, file, calendar, etc. may be referred to as "a workspace element in workspace data."

An independently modifiable copy of the workspace data 185, referred to herein as workspace data 123, is stored on the global

10    server 120 for easy access by a user from the remote terminal 105. Being a copy, the workspace data 123 includes independently modifiable copies of each workspace element in workspace data 185 and an independently modifiable copy of version information 255 (FIG. 2), referred to herein as version information 124.

15    Network 100 further comprises synchronization means, which includes a base system 190 stored within the corporate LAN 135 and for example on the desktop computer 160 and further includes a synchronization agent 126 stored outside the corporate firewall 130 and preferably on the global server 120. The base system 190

20    and the synchronization agent 126 cooperate to synchronize the workspace data 185 with the workspace data 123. Generally, the base system 190 manages the workspace data 185 within the

-8-

PATENT

corporate LAN 135 and the synchronization agent 126 manages the

workspace data 123 within the global server 120. As described in

greater detail below with reference to FIG. 4, the base system 190

preferably initiates and controls data synchronization. Other

5    components and functions of the global server 120 are described in

the cross-referenced patent applications which are herein

incorporated by reference.

   The remote terminal 105 may include a smart telephone or a

Personal Data Assistant (PDA) such as the PalmPilot system by the

10    U.S. Robotics, Inc. Although not shown, the remote terminal 105

may include a second base system similar to the base system 190,

which is described with greater detail with reference to FIG. 4.

Accordingly, the second base system on the remote terminal 105

would cooperate with the synchronization agent 126 to synchronize

15    the workspace data stored on the remote terminal 105 with the

workspace data 123 stored on the global server 120. As with the

corporate LAN, the second base system on the remote terminal 105

would preferably initiate and control data synchronization with the

global server 120 for the same reasons discussed below. Workspace

20    data on the remote terminal 105 would thus be synchronized with

the workspace data 123 and with the workspace data 185.

-9-

PATENT

FIG. 2 is a block diagram illustrating details of a service server 200, wherein each of the e-mail server 145, the file server 150, the calendar server 155 and the desktop computer 160 is an instance

5 thereof. Service server 200 includes a Central Processing Unit (CPU) 205 such as a Motorola Power PC® microprocessor or an Intel Pentium® microprocessor. An input device 210 such as a keyboard and mouse and an output device 215 such as a Cathode Ray Tube (CRT) display are coupled via a signal bus 220 to CPU 205. A

10 communications interface 225 (such as an Ethernet port), a data storage device 230 (such as read only memory or a magnetic disk), and Random-Access Memory (RAM) 235 are further coupled via signal bus 220 to the CPU 205.

An operating system 240 includes a program for controlling

15 processing by the CPU 205, and is typically stored in the data storage device 230 and loaded into the RAM 235 for execution. A service engine 245 includes a program for performing a particular service such as maintaining an e-mail data base, a calendar data base, a bookmarks data base or another file data base, and may be also

20 stored in the data storage device 230 and loaded into the RAM 235 for execution. To perform a service, the service engine 245 operates on service data 250 (e.g., the e-mail data 165, the file data 170, the

-10-

VO 000373

calendar data 175 or the user data 180), which is typically stored in the data storage device 250. The service data 250 includes version information 255 indicating the date and time of the last modification. The service engine 245 operates to update the version information

5    255 whenever modifications are made. It will be appreciated that the portion of memory in the data storage device 250 which contains the service data 250 is referred to as the service "store."

FIG. 3 is a block diagram illustrating details of the desktop
10   computer 160, which includes a CPU 305, an input device 310, an output device 315, a communications interface 325, a data storage device 330 and RAM 335, each coupled to a signal bus 320.

An operating system 340 includes a program for controlling processing by the CPU 305, and is typically stored in the data storage
15   device 330 and loaded into the RAM 335 for execution. A desktop service engine 345 (i.e., a particular service engine 245, FIG. 2) includes a service program for managing user data 180 (i.e., particular service data 250, FIG. 2) which includes version information 350 (i.e., particular version information 255, FIG. 2). The
20   desktop service engine 345 may be also stored in the data storage device 330 and loaded into the RAM 335 for execution. The user data 180 may be stored in the data storage device 330. As stated

-11-

above with reference to FIG. 1, the base system 190 operates to synchronize the workspace data 185 (which includes user data 180) with the workspace data 123. The base system 190 may be also stored in the data storage device 330 and loaded into the RAM 335

5    for execution.

FIG. 4 is a block diagram illustrating details of the base system 190, which includes a communications module 405, a user interface module 410, a locator module 415, a synchronization-start ("synch-

10    start") module 420, a general synchronization module 425 and a content-based synchronization module 430. For simplicity, each module is illustrated as communicating with one another via a signal bus 440.

The communications module 405 includes routines for

15    compressing data, and routines for communicating via the communications interface 325 (FIG. 3) with the synchronization agent 126 (FIG. 1). The communications module 405 may further include routines for applying Secure Socket Layer (SSL) technology and user identification and authentication techniques (i.e., digital

20    certificates) to establish a secure communication channel through the corporate firewall 130 and through the global firewall 126.

-12-

VO 000375

Examples of communications modules 405 may include TCP/IP stacks or the AppleTalk® protocol.

The user interface 410 includes routines for communicating with a user, and may include a conventional Graphical User Interface

5   (GUI). The user interface 410 operates in coordination with the other desktop computer 160 components as described herein.

The locator module 415 includes routines for identifying the memory locations of the workspace elements in the workspace data 185 and the memory locations of the workspace elements in the

10   workspace data 123. Workspace element memory location identification may be implemented using intelligent software, i.e., preset memory addresses or the system's registry, or using dialogue boxes to query a user. Accordingly, the locator module 415 determines the memory addresses of the workspace elements in the

15   e-mail data 165, the workspace elements in the file data 170, the workspace elements in the calendar data 175 and the workspace elements in the user data 180 as well as the memory addresses of the corresponding workspace elements in the workspace data 123. It will be appreciated that the locator module 415 may perform

20   workspace element ·memory location identification upon system boot-up or after each communication with the global server 120 to maintain updated memory locations of workspace elements.

-13-

VO 000376

PATENT

The synchronization-start module 420 includes routines for determining when to initiate synchronization of workspace data 123 and workspace data 185. For example, the synchronization-start module 420 may initiate data synchronization upon user request, at

5    a particular time of day, after a predetermined time period passes, after a predetermined number of changes, after a user action such as user log-off or upon like criteria. The synchronization-start module 420 initiates data synchronization by instructing the general synchronization module 425 to begin execution of its routines. It will

10    be appreciated that communications with synchronization agent 126 preferably initiate from within the corporate LAN 1135, because the typical corporate firewall 130 prevents in-bound communications and allows out-bound communications.

The general synchronization module 425 includes routines for

15    requesting version information 124 from the synchronization agent 126 (FIG. 1) and routines for comparing the version information 255 against a last synchronization signature 435 such as a last synchronization date and time to determine which versions have been modified. The general synchronization module 425 further

20    includes routines for comparing the version information 124 and the version information 255 to determine if only one or both versions of a particular workspace element have been modified and routines for

-14-

VO 000377

PATENT

performing an appropriate synchronizing responsive action. Appropriate synchronizing responsive actions may include forwarding the modified version (as the preferred version) of a workspace element in workspace data 185 or forwarding just a

5   compilation of the changes to the other store(s). Other appropriate synchronizing responsive actions may include, if reconciliation between two modified versions is needed, then instructing the content-based synchronization module 430 to execute its routines which are described below.

10   It will be appreciated that the synchronization agent 126 preferably examines the version information 124 and forwards only the version information 124 determined to be modified since the last synchronization signature 435. This technique makes efficient use of processor power and avoids transferring unnecessary data across the

15   communications channel 125. The general synchronization module 425 in the corporate LAN 135 accordingly compares the received version information 124 with the version information 255 to determine if reconciliation is needed. Upon completion of the data synchronization, the general synchronization module 425 updates the

20   last synchronization signature 435.

The content-based synchronization module 430 includes routines for reconciling two or more modified versions in workspace

-15-

VO 000378

data 123, 185 of the same workspace element. For example, if the original and the copy of a user workspace element have both been modified independently since the last synchronization, the content-based synchronization module 430 determines the appropriate

5    responsive action. The content-based synchronization module 430 may request a user to select the preferred one of the modified versions or may respond based on preset preferences, i.e., by storing both versions in both stores or by integrating the changes into a single preferred version which replaces each modified version at

10    both stores.

FIG. 5 is a block diagram illustrating details of the synchronization agent 126, which includes a communications module 505 (similar to the communications module 405 described above with reference to FIG. 4) and a general synchronization module 510

15    (similar to the general synchronization module 425 described above also with reference to FIG. 4). The communications module 505 includes routines for compressing data, and routines for communicating via the communications channel 125 with the base

20    system 190. The communications module 505 may further include routines for establishing a secure communications channel through the global firewall 126 and through the corporate firewall 130.

-16-

VO 000379

The general synchronization module 510 includes routines for comparing the version information 124 with the last synchronization signature 435, and routines for forwarding to the general synchronization module 425 version information 124 determined to

5 be modified. The general synchronization module 510 may either maintain its own last synchronization signature 435 copy (not shown). Alternatively, the request to synchronize from the base system 190 may include a copy of the last synchronization signature 435. The general synchronization module 510 further includes

10 routines for receiving preferred versions of workspace data 185 workspace elements from the general synchronization module 425, and routines for forwarding preferred versions of workspace data 123 workspace elements to the general synchronization module 425.

15 FIG. 6 is a flowchart illustrating a method 600 for synchronizing multiple copies of workspace data 123, 185 in a secure network 100. Method 600 begins with locator module 415 in step 605 identifying the memory locations of the workspace elements in workspace data 123, 185. As stated above, workspace element

20 memory location identification may be implemented using intelligent software or dialogue boxes. The user interface module 410 in step 610 enables selection of the workspace elements in workspace data

-17-

VO 000380

123, 185 to be synchronized by the general synchronization module 425.

The synchronization-start module 420 in step 615 determines whether predetermined criteria have been met which indicate that
5   synchronization of the workspace elements selected in step 610 should start. If not, then method 600 loops back to step 615. Otherwise, the communications module 405 and communications module 505 in step 617 establish a secure communications channel between the global server 120 and the desktop computer 160. The
10  general synchronization module 510 in step 620 compares the version information 124 of each of the selected workspace elements in workspace data 123 against the last synchronization signature 435 to determine modified workspace elements, and forwards the version information 124 of workspace elements determined to be
15  modified to the general synchronization module 425. Further, the general synchronization module 425 in step 620 compares the version information 255 of each selected workspace element in the workspace data 185 against the last synchronization signature 435 to locate modified workspace elements. In this embodiment, a
20  workspace element has been modified if the date and time of last modification is after the date and time of last synchronization.

-18-

VO 000381

PATENT

123, 185 to be synchronized by the general synchronization module
425.

The synchronization-start module 420 in step 615 determines
whether predetermined criteria have been met which indicate that
5   synchronization of the workspace elements selected in step 610
should start. If not, then method 600 loops back to step 615.
Otherwise, the communications module 405 and communications
module 505 in step 617 establish a secure communications channel
between the global server 120 and the desktop computer 160. The
10  general synchronization module 510 in step 620 compares the
version information 124 of each of the selected workspace elements
.in workspace data 123 against the last synchronization signature 435
to determine modified workspace elements, and forwards the
version information 124 of workspace elements determined to be
15  modified to the general synchronization module 425. Further, the
general synchronization module 425 in step 620 compares the
version information 255 of each selected workspace element in the
workspace data 185 against the last synchronization signature 435 to
locate modified workspace elements. In this embodiment, a
20  workspace element has been modified if the date and time of last
modification is after the date and time of last synchronization.

-18-

VO 000381

If no modified workspace elements in workspace data 123 or in workspace data 185 are located, then the general synchronization modules 425 and 510 in step 650 update the last synchronization signature 435 and method 600 ends. Otherwise, the general

5 synchronization module 425 in step 625 determines whether more than one version of the same workspace element has been modified since the last synchronization.

If only one version has been modified, then the corresponding general synchronization module 425 or 510 in step 630 forwards the

10 updated preferred version of the workspace element to the other store, and then in step 635 determines whether all workspace elements selected in step 610 have been examined. If so, then method 600 jumps to step 650. Otherwise, then method 600 returns to step 620.

15 If more than one version has been modified, then the general synchronization module 425 in step 640 instructs the content-based synchronization module 430 to reconcile the modified versions. Reconciliation may include requesting instructions from the user or, based on preselected preferences, performing responsive actions

20 such as storing both versions at both stores.

General synchronization module 425, 510 in step 645 sends the preferred version of the workspace element or just a compilation of

-19-

VO 000382

PATENT

the changes to the other store. That is, if the preferred version is a

workspace element in the workspace data 185, then general

synchronization module 425 sends the preferred version or the

changes to general synchronization module 510 to update the

5   outdated workspace element in the workspace data 123. If the

preferred version is a workspace element in the workspace data 123,

then the general synchronization module 510 sends the preferred

version or the changes to the general synchronization module 425 to

update the outdated workspace element in the workspace data 185.

10   Method 600 then jumps to step 635.

The foregoing description of the preferred embodiments of the

invention is by way of example only, and other variations of the

above-described embodiments and methods are provided by the

15   present invention. For example, although the global server 120 is

illustrated as a single device, the global server 120 may include

several computers networked together. Although not described in

great detail, the remote terminal 105 can synchronize copies of

workspace elements stored on it with workspace elements of

20   workspace data 123 stored on the global server 120. Components of

this invention may be implemented using a programmed general

purpose digital computer, using application specific integrated

-20-

VO 000383

PATENT

circuits, or using a network of interconnected conventional components and circuits. The embodiments described herein have been presented for purposes of illustration and are not intended to be exhaustive or limiting. Many variations and modifications are

5 possible in light of the foregoing teaching. The system is limited only by the following claims.

-21-

VO 000384

(4-11)

1-25

VO 000385

PATENT

WHAT IS CLAIMED IS:

1  1.    A computer-based method comprising the steps of:

2  (a)   generating first examination results from first version

3  information which indicates whether a first workspace element

4  stored at a first store within a firewall has been modified;

5  (b)   generating second examination results from second version

6  information which indicates whether an independently-modifiable

7  copy of the first workspace element has been modified, the copy

8  being stored at a second store outside the firewall;

9  (c)   initiating steps (a) and (b) from within the firewall when

10  predetermined criteria have been satisfied;

11  (d)   generating a preferred version from the first workspace

12  element and from the copy based on the first and second

13  examination results; and

14  (e)   storing the preferred version at the first store and at the

15  second store.


1  2.    The method of claim 1 wherein the second store is on a global

2  server outside the firewall and which is protected by a global

3  firewall.

-22-

VO 000386

1    3.    The method of claim 1 wherein the first version information

2    includes the date and time the first workspace element was last

3    modified and the second version information includes the date and

4    time the copy was last modified.


1    4.    The method of claim 3 wherein generating the first

2    examination results includes the step of comparing the first version

3    information against a date and time of last synchronization.


1    5.    The method of claim 3 wherein generating the second

2    examination results includes the step of comparing the second

3    version information against a date and time of last synchronization.


1    6.    The method of claim 1 further comprising, before generating

2    the first examination results, the step of updating the first version

3    information whenever the first workspace element is modified.


1    7.    The method of claim 1 further comprising, before generating

2    the second examination results, the step of updating the second

3    version information whenever the copy is modified.


-23-

VO 000387

PATENT

1   8.   The method of claim 1 wherein if only one of the first

2   workspace element and the copy has been modified, then the step of

3   generating includes selecting the one as the preferred version.

1   9.   The method of claim 1 further comprising the step of locating

2   the first workspace element, the first version information, the copy

3   and the second version information.

1   10.   A system comprising:

2        a general synchronization module for operating within a first

3   firewall and for examining first version information to determine

4   whether a first workspace element has been modified;

5        a synchronization agent for operating outside the first firewall

6   and for forwarding to the general synchronization module second

7   version information which indicates whether an independently-

8   modifiable copy of the first workspace element has been modified;

9        a synchronization-start module for operating within the first

10   firewall and for initiating the general synchronization module and

11   the synchronization agent when predetermined criteria have been

12   satisfied;

-24-

VO 000388

PATENT

13        means for generating a preferred version from the first

14   workspace element and from the copy by comparing the first version

15   information and the second version information; and

16        means for storing the preferred version at the first store and at

17   the second store.

1   11.   The system of claim 10 further comprising a communications

2   module for communicating through the first firewall.

1   12.   The system of claim 10 wherein the synchronization agent and

2   the second store are on a global server which is protected by a global

3   firewall.

1   13.   The system of claim 12 further comprising a communications

2   module for communicating through the first firewall and through the

3   global firewall.

1   14.   The system of claim 10 wherein the first version information

2   includes the date and time the first workspace element was last

3   modified and the second version information includes the date and

4   time the copy was last modified.

-25-

VO 000389

1   15.   The system of claim 14 wherein the general synchronization
2   module compares the first version information against a date and
3   time of last synchronization.

1   16.   The system of claim 14 wherein the synchronization agent
2   compares the second version information against the date and time
3   of last synchronization.

1   17.   The system of claim 10 further comprising means for updating
2   the first version information whenever the first workspace element
3   is modified.

1   18.   The system of claim 10 further comprising means for updating
2   the second version information whenever the copy is modified.

1   19.   The system of claim 10 wherein if only one of the first
2   workspace element and the copy has been modified, then the means
3   for generating selects the one as the preferred version.

-26-

VO 000390

PATENT

1    20. The system of claim 10 further comprising a locator module for
2    locating the first store, the first workspace element, the first version
3    information, the second store, the copy and the second version
4    information.


1    21. A system comprising:

2        first means for generating first examination results from first
3    version information which indicates whether a first workspace
4    element stored at a first store within a firewall has been modified;
5        second means for generating second examination results from
6    second version information which indicates whether an
7    independently-modifiable copy of the first workspace element has
8    been modified, the copy being stored at a second store outside the
9    firewall;

10       means for initiating the first and second means from within the
11   firewall when predetermined criteria have been satisfied;

12       means for generating a preferred version from the first
13   workspace element and from the copy based on the first and second
14   examination results; and

15       means for storing the preferred version at the first store and at
16   the second store.

-27-

VO 000391

1    22. A computer-readable storage medium storing program code for

2    causing a computer to perform the steps of:

3    (a) generating first examination results from first version

4    information which indicates whether a first workspace element

5    stored at a first store within a firewall has been modified;

6    (b) generating second examination results from second version

7    information which indicates whether an independently-modifiable

8    copy of the first workspace element has been modified, the copy

9    being stored at a second store outside the firewall;

10    (c) initiating steps (a) and (b) from within the firewall when

11    predetermined criteria have been satisfied;

12    (d) generating a preferred version from the first workspace

13    element and from the copy based on the first and second

14    examination results; and

15    (e) storing the preferred version at the first store and at the

16    second store.

-28-

VO 000392

1   23.   A computer-based method comprising the steps of:

2   (a)   generating first examination results from first version

3   information which indicates whether a first workspace element

4   stored at a first store within a firewall has been modified;

5   (b)   generating second examination results from second version

6   information which indicates whether an independently-modifiable

7   copy of the first workspace element has been modified, the copy

8   being stored at a second store outside the firewall;

9   (c)   initiating steps (a) and (b) from within the firewall when

10  predetermined criteria have been satisfied;

11  (d)   determining based on the first and second examination results

12  that both the first workspace element and the copy have been

13  modified; and

14  (e)   storing both the first workspace element and the copy at the

15  first store and at the second store.

-29-

VO 000393

1  24.  A system comprising:

2     first means for generating first examination results from first

3  version information which indicates whether a first workspace

4  element stored at a first store within a firewall has been modified;

5     second means for generating second examination results from

6  second version information which indicates whether an

7  independently-modifiable copy of the first workspace element has

8  been modified, the copy being stored at a second store outside the

9  firewall;

10     means for initiating the first and second means from within the

11  firewall when predetermined criteria have been satisfied;

12     means for determining based on the first and second

13  examination results that both the first workspace element and the

14  copy have been modified; and

15     means for storing both the first file and the copy at the first

16  store and at the second store.

-30-

VO 000394

PATENT

1  25.  A system comprising:

2       a global server for operating outside a firewall and including

3           memory for storing first workspace data and

4       corresponding first version information; and

5           a synchronization agent for managing the first workspace

6       data and the corresponding first version information and for

7       communicating with remote clients; and

8       a remote client for operating within the firewall and including

9           memory for storing second workspace data and

10      corresponding second version information;

11          means for cooperating with the synchronization agent to

12      synchronize the first workspace data with the second

13      workspace data by examining the first version information and

14      the second version information; and

15          a synchronization-start module for initiating workspace

16      data synchronization between the global server and the remote

17      client.

-31-

VO 000395

08/835,997
PATENT

## SYSTEM AND METHOD FOR SECURELY SYNCHRONIZING MULTIPLE

## COPIES OF A WORKSPACE ELEMENT IN A NETWORK

### ABSTRACT OF THE DISCLOSURE

5      A system includes a general synchronization module at the

client site for operating within a first firewall and for examining first

version information to determine whether a first workspace element

has been modified.  The system further includes a synchronization

agent at a global server for operating outside the first firewall and

10     for forwarding to the general synchronization module second version

information which indicates whether an independently-modifiable

copy of the first workspace element has been modified.  A

synchronization-start module is maintained at the client site for

operating within the first firewall and for securely initiating the

15     general synchronization module and the synchronization agent when

predetermined criteria have been satisfied.  The system further

includes means for generating a preferred version from the first

workspace element and from the copy by comparing the first version

information and the second version information, and means for

20     storing the preferred version at the first store and at the second

store.

VO 000396

FROM : Panasonic FAX SYSTEM      PHONE NO. :                    Apr. 11 1997 02:39PM P4
        PH n. 11 ..55 ..1 ..05PM    4PM DEP ILPPO                    Na. 349    P. 2

ATTORNEY'S DOCKET NO.: ___647___

DECLARATION AND POWER OF ATTORNEY FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled "System and Method for Securely Synchronizing Multiple Copies of a Workspace Element in a Network," the specification of which (check one):

> IXI is attached hereto.
> I__I was filed on_____ as U.S. Application No.
> or PCT International Application No._____
> and was amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, §1.56.

I hereby claim foreign priority benefits under Title 35, United States Code §119(a)-(d) or §365(b) of any foreign application(s) for patent or inventor's certificate, or §365(a) of any PCT International application which designated at least one country other than the United States, listed below and have also identified below any foreign application for patent or inventor's certificate, or PCT International application, having a filing date before that of the application on which priority is claimed.

Prior Foreign Application(s)                          Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | Yes | No |

1

VO 000397

FROM : Panasonic FAX SYSTEM       PHONE NO. :              Apr. 11 1997 02:40PM P6

Atty. Dkt.No. _____ 647 _____

Applicant _____ Daniel J. Mendez, et al. _____
Serial or Patent No.: _____ Unknown _____
Filed or Issued: _____ Herewith _____
For: System and Method for Securely Synchronizing Multiple Copies of a
       Workspace Element in a Network.

VERIFIED STATEMENT (DECLARATION) CLAIMING
SMALL ENTITY STATUS
(37 CFR 1.9 (f) and 1.27 (c)) - SMALL BUSINESS CONCERN

I hereby declare that I am:

[ ] the owner of the small business concern identified below:
[x] an official of the small business concern empowered to
    act on behalf of the concern identified below:

NAME OF CONCERN     RoamPage, Inc. _____
ADDRESS OF CONCERN  156 East Dana Street, Mountain View, CA 94041

I hereby declare that the above identified small business concern qualifies as a
small business concern as defined in 13 CFR 121.2, and reproduced in 37 CFR 1.9
(d), for purposes of paying reduced fees to the United States Patent and Trademark
Office, in that the number of employees of the concern, including those of its
affiliates, does not exceed 500 persons. For purposes of this statement, (1) the
number of employees of the business concern is the average over the previous
fiscal year of the concern of the persons employed on a full-time part-time or
temporary basis during each of the pay periods of the fiscal year, and (2) concerns
are affiliates of each other when either, directly or indirectly, one concern controls
or has the power to control the other, or a third party or parties controls or has the
power to control both.

I hereby declare that rights under contract or law have been conveyed to and
remain with the small business concern identified above with regard to the
invention, entitled "System and Method for Securely Synchronizing Multiple
Copies of a Workspace Element in a Network," by inventors Daniel J. Mendez
et al. and described in

[x] the specification filed herewith.
[ ] application serial no._____ filed _____.
[ ] patent no._____ issued _____.

VO 000398

If the rights held by the above identified small business concern are not exclusive, each individual, concern or organization having rights in the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person made the invention, or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d), or a nonprofit organization under 37 CFR 1.9(e). *NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME _____
ADDRESS _____
[ ] INDIVIDUAL  [ ] SMALL BUSINESS CONCERN  [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of the Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING _____ Hong Q. Bui _____
TITLE OF PERSON Vice President of Product Development _____
ADDRESS 10250 Parkwood Drive, #4, Cupertino, CA 95014 _____

SIGNATURE _____  DATE 4/11/97

VO 000399

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of first inventor:___Manal I. Mendez___

Inventor's signature_____ Dated: __4/11/97__

Residence_____801 Church Street. #1121. Mountain View. CA 94041___

Post Office Address_____same_____ Citizenship____USA____

Full name of second inventor:___Mark D. Riggins___

Inventor's signature_____ Dated: __4-11-97__

Residence_____5818 Moraga Avenue. San Jose. CA 95123___

Post Office Address_____same_____ Citizenship____USA____

Full name of third inventor:___Prasad Wagle___

Inventor's signature_____ Dated: __4-11-97__

Residence_____2831 Pruneridge Avenue. Santa Clara. CA 95051___

Post Office Address_____same_____ Citizenship____India____

Full name of fourth inventor:___Christine C. Ying___

Inventor's signature_____ Dated: __4-11-97__

Residence___ · 1204 Moonsail Lane. Foster City. CA 94404___

Post Office Address_____same_____ Citizenship____USA____

3

CD
BD
W
U
D
4
9
6
5
B
B
O
·
O
4
1
1
1
B
7

VO 000400

I hereby claim the benefit under Title 35, United States Code §119(e) of any United
States provisional application(s) listed below.

| (Application Number) | (Filing Date) |
|---|---|
| (Application Number) | (Filing Date) |

I hereby claim the benefit under Title 35, United States Code §120 of any United
States application(s), or §365(c) of any PCT International application designating the
United States, listed below and, insofar as the subject matter of each of the claims of
this application is not disclosed in the prior United States or PCT International
application in the manner provided by the first paragraph of Title 35, United States
Code §112, I acknowledge the duty to disclose information which is material to
patentability as defined in Title 37, Code of Federal Regulations, §1.56 which became
available between the filing date of the prior application and the national or PCT
International filing date of this application.

| (Application Number) | (Filing Date) | (Status – patented, pending, abandoned) |
|---|---|---|
| (Application Number) | (Filing Date) | (Status – patented, pending, abandoned) |

· POWER OF ATTORNEY: I hereby appoint the following attorney(s) and/or agent(s)
to prosecute this application and to transact all business in the Patent and
Trademark Office connected therewith:

John S. Ferrell, Reg. No. 34,593; J. Eppa Hite, Reg. No. 30,266;
Leroy D. Maunu Reg. No. 35,274; Francis H. Lewis, Reg. No. 27,684;
Marc A. Sockol, Reg. No. P-40,823 and Gregory J. Koerner, Reg. No. 38,519

SEND ALL CORRESPONDENCE TO:

Marc A. Sockol
CARR, DEFILIPPO & FERRELL LLP
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
TEL: (415) 812-3407
FAX: (415) 812-3444

2

VO 000401



FIG. 1

VO 000402



FIG. 2

0883597.041197

VO 000403



FIG. 3

US7405697.04119Z



FIG 4

VO 000405

Synchronization
Agent
126

Communications
Module  505

General
Synchronization
Module  510

FIG. 5

0883597" 041197



FIG. 6

600

Start

Identify Workspace Data Locations — 605

Select Workspace Elements to Synchronize — 610

Have Predetermined Criteria which indicate that synchronization should start been met? — 615

No

Yes

Establish Secure communication between the global server and the desktop computer — 617

Locate a Modified workspace Element? — 620

No

Yes

Have More than one Version of the Workspace Element Been Modified? — 625

Yes → Reconcile Modifications — 640

No

Send updated Version to the Other Store — 630

Send Preferred Version To Other Store — 645

Done? — 635

No

Yes

Update Last Synchronization Signature — 650

end

08035997 .041197

VO 000407

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 1

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG. 3

VO 000410

PRINT OF DRAWINGS
AS ORIGINALLY FILED



FIG 4

VO 000411

PRINT OF DRAWINGS
AS ORIGINALLY FILED

Synchronization
Agent
126

Communications
Module          505

General
Synchronization
Module          510

FIG. S

VO 000412

PRINT OF DRAWINGS
AS ORIGINALLY FILED

FIG. 6



MULTIPLE DEPENDENT CLAIM
FEE CALCULATION SHEET
(FOR USE WITH FORM PTO-875)

SERIAL NO. 835997

FILING DATE

APPLICANT(S)

CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | * | | * | | * | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | 1 | | | | | | 51 | | | | | | |
| 2 | | 1 | | | | | 52 | | | | | | |
| 3 | | 1 | | | | | 53 | | | | | | |
| 4 | | 1 | | | | | 54 | | | | | | |
| 5 | | 1 | | | | | 55 | | | | | | |
| 6 | | 1 | | | | | 56 | | | | | | |
| 7 | | 1 | | | | | 57 | | | | | | |
| 8 | | 1 | | | | | 58 | | | | | | |
| 9 | | 1 | | | | | 59 | | | | | | |
| 10 | 1 | | | | | | 60 | | | | | | |
| 11 | | 1 | | | | | 61 | | | | | | |
| 12 | | 1 | | | | | 62 | | | | | | |
| 13 | | 1 | | | | | 63 | | | | | | |
| 14 | | 1 | | | | | 64 | | | | | | |
| 15 | | 1 | | | | | 65 | | | | | | |
| 16 | | 1 | | | | | 66 | | | | | | |
| 17 | | 1 | | | | | 67 | | | | | | |
| 18 | | 1 | | | | | 68 | | | | | | |
| 19 | | 1 | | | | | 69 | | | | | | |
| 20 | | 1 | | | | | 70 | | | | | | |
| 21 | 1 | | | | | | 71 | | | | | | |
| 22 | 1 | | | | | | 72 | | | | | | |
| 23 | 1 | | | | | | 73 | | | | | | |
| 24 | 1 | | | | | | 74 | | | | | | |
| 25 | 1 | | | | | | 75 | | | | | | |
| 26 | | | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | | | | | | | 78 | | | | | | |
| 29 | | | | | | | 79 | | | | | | |
| 30 | | | | | | | 80 | | | | | | |
| 31 | | | | | | | 81 | | | | | 1 | |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| TOTAL IND. | 7 | | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | 18 | | | | | | TOTAL DEP. | | | | | | |
| TOTAL | 25 | | | | | | TOTAL | | | | | | |

VO 000414

**MULTIPLE DEPENDENT CLAIM FEE CALCULATION SHEET**
*(FOR USE WITH FORM PTO-875)*

SERIAL NO. 835997

FILING DATE

APPLICANT(S)

| CLAIMS | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | 1 | | | | | | 51 | | | | | | |
| 2 | | 1 | | | | | 52 | | | | | | |
| 3 | | 1 | | | | | 53 | | | | | | |
| 4 | | 1 | | | | | 54 | | | | | | |
| 5 | | 1 | | | | | 55 | | | | | | |
| 6 | | 1 | | | | | 56 | | | | | | |
| 7 | | 1 | | | | | 57 | | | | | | |
| 8 | | 1 | | | | | 58 | | | | | | |
| 9 | | 1 | | | | | 59 | | | | | | |
| 10 | 1 | | | | | | 60 | | | | | | |
| 11 | | 1 | | | | | 61 | | | | | | |
| 12 | | 1 | | | | | 62 | | | | | | |
| 13 | | 1 | | | | | 63 | | | | | | |
| 14 | | 1 | | | | | 64 | | | | | | |
| 15 | | 1 | | | | | 65 | | | | | | |
| 16 | | 1 | | | | | 66 | | | | | | |
| 17 | | 1 | | | | | 67 | | | | | | |
| 18 | | 1 | | | | | 68 | | | | | | |
| 19 | | 1 | | | | | 69 | | | | | | |
| 20 | | 1 | | | | | 70 | | | | | | |
| 21 | 1 | | | | | | 71 | | | | | | |
| 22 | 1 | | | | | | 72 | | | | | | |
| 23 | 1 | | | | | | 73 | | | | | | |
| 24 | 1 | | | | | | 74 | | | | | | |
| 25 | 1 | | | | | | 75 | | | | | | |
| 26 | | | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | | | | | | | 78 | | | | | | |
| 29 | | | | | | | 79 | | | | | | |
| 30 | | | | | | | 80 | | | | | | |
| 31 | | | | | | | 81 | | | | | | 1 |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| TOTAL IND. | 7 | | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | 18 | | | | | | TOTAL DEP. | | | | | | |
| TOTAL | 25 | | | | | | TOTAL | | | | | | |

VO 000414

⑥

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1996

| Application or Docket Number |
|---|
| 835 749 |

## CLAIMS AS FILED - PART I

| | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | | | RATE | FEE | | RATE | FEE |
| BASIC FEE | | | | 385.00 | OR | | 770.00 |
| TOTAL CLAIMS | 25 | minus 20 = | 5 | x$11= | 55 | | x$22= | |
| INDEPENDENT CLAIMS | 7 | minus 3 = | 4 | x40= | 160 | OR | x80= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | | +130= | | OR | +260= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 615 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| **AMENDMENT A** | Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus *** | = | x40= | | OR | x80= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus *** | = | x40= | | OR | x80= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT C** | Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus *** | = | x40= | | OR | x80= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875     U.S. Department of Commerce 1996 - 413-206/40101     Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

VO 000415

2

VO 000416



IN THE

UNITED STATES PATENT AND TRADEMARK OFFICE

| APPLICANTS: | Daniel J. Mendez et. al. |
| --- | --- |
| SERIAL NO.: | 08/835,997 |
| FILING DATE: | April 11, 1997 |
| TITLE: | System And Method For Securely Synchronizing Multiple Copies Of A Workspace Element In A Network |
| ATTY.DKT.NO.: | 647 US |

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

REQUEST FOR CORRECTED FILING RECEIPT

SIR:

Applicants hereby request that the United States Patent and Trademark Office correct its records and issue a corrected filing receipt with the typographical errors corrected per redlined corrections in the attached filing receipt.

Since the paperwork submitted to the United States Patent and Trademark Office indicated the correct firm name, middle initial of the applicant Daniel J. Mendez and the correct title, Applicants believe that there is no fee for this request, however, the Commissioner is hereby authorized to charge any additional fees which may be required to Deposit Account No. 06-0600. A duplicate copy of this letter is enclosed for this purpose.

VO 000417

Respectfully submitted,

Daniel J. Mendez
Mark D. Riggins
Prosad Wagle
Christine C Ying

Dated: ___October 8, 1997_____     By: _____

Charles B. Katz, Reg. No. 36,564
Carr & Ferrell LLP
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
TEL: (415) 390-9014
FAX: (415) 812-3444

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on the date printed below:

Dated: ____October 8, 1997_____     _____

VO 000418