1  **MANATT, PHELPS & PHILLIPS, LLP**
   RONALD S. KATZ (State Bar No. 85713)
2  ROBERT D. BECKER (State Bar No. 160648)
   GREG T. WARDER (State Bar No. 209966)
3  1001 Page Mill Road, Building 2
   Palo Alto, CA  94304-1006
4  Telephone:     (650) 812-1300
   Facsimile:      (650) 213-0260
5
   *Attorneys for Plaintiff*
6  VISTO CORPORATION

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT

10 | SAN FRANCISCO DIVISION

11 | VISTO CORPORATION, | Case No.  C 04-0651 EMC

12 | Plaintiff, | **PLAINTIFF VISTO CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS CLAIM CONSTRUCTION PURSUANT TO P.R. 4-5(c)**

13 | v. |

14 | SPROQIT TECHNOLOGIES, INC., |

15 | Defendant. |

1

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1
II. DISCUSSION ........................................................................................................................ 1
    A. Stare Decisis Favors Adopting Judge Ward's Claim Construction ........................ 1
    B. Sproqit Improperly Construes Terms With Reference To The Accused Products ........................................................................................................................ 3
    C. Sproqit's Constructions Impose Unnecessary Limitations ..................................... 3
    D. Claim Terms Of Related Patents Should Be Construed Consistently ................... 4
III. SPROQIT'S PROPOSED CLAIM CONSTRUCTIONS ARE IMPROPER ....................... 5
    A. "an independently modifiable copy of the first workspace element" .................... 5
    B. "version information" ............................................................................................ 6
    C. "Examination Results" ........................................................................................... 7
    D. "Initiating steps __ and __ from within the firewall" ............................................ 8
    E. "First Format/Second Format" ............................................................................. 10
    F. "Global Server" .................................................................................................... 11
IV. THE MEANS PLUS FUNCTION LIMITATIONS ........................................................... 13
    A. "Means for translating . . ." ................................................................................. 13
    B. "Synchronization means for synchronizing . . ." ................................................. 13
    C. "Means for generating a preferred version" ........................................................ 13
V. CONCLUSION ................................................................................................................... 14

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

# TABLE OF AUTHORITIES

**Page**

### CASES

*Abbott Labs. v. Dey, L.P.*,
  110 F. Supp. 2d 667 (N.D. Ill. 2000) ................................................................................ 2

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
  334 F.3d 1294 (Fed. Cir. 2003) ...................................................................................... 11

*Comark Communications, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998) ........................................................................................ 8

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001) ...................................................................................... 12

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004) ...................................................................................... 10

*Johnson Worldwide Assocs. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 2002) .......................................................................................... 5

*Kegel Co. v. AMF Bowling*,
  127 F.3d 1420 (Fed. Cir. 1997) ........................................................................................ 8

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
  863 F.2d 855 (Fed. Cir. 1988) .......................................................................................... 8

*Markman v. Westview Instr., Inc.*,
  517 U.S. 370 (1996) ......................................................................................................... 2

*Nilssen v. Motorola, Inc.*,
  80 F. Supp. 2d 921 (N.D. Ill. 2000) ................................................................................. 2

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ........................................................................................ 4

*Palumbo v. Don-Joy Co.*,
  762 F.2d 969 (Fed. Cir. 1985), 226 U.S.P.Q. at 8 ........................................................... 3

*Raytheon Co. v. McData Corp.*,
  2004 WL 952284, 11 (E.D. Tex. 2004) ........................................................................... 6

*Rhine v. Casio, Inc.*,
  183 F.3d 1342 (Fed. Cir. 1999) ...................................................................................... 11

*Sri Int'l v. Matsushita Elec. Corp.*,
  775 F.2d 1107 (Fed. Cir. 1985) .................................................................................... 3, 6

*Superguide Corp. v. DirecTV Enters.*,
  358 F.3d 870 (Fed. Cir. 2004) .......................................................................................... 4

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
  831 F.2d 1017 (Fed. Cir. 1987) ........................................................................................ 7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ...................................................................................... 11

*Tex. Instruments, Inc. v. Linear Techs. Corp.*,
  182 F. Supp. 2d 580 (Fed. Cir. 2002) .............................................................................. 1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Texas Digital Sys. v. Telegenix, Inc.*,
   308 F.3d 1193 (Fed. Cir. 2002) ............................................................................. 4, 9

*TM Patents, L.P. v. Int'l Bus. Machs. Corp.*,
   72 F. Supp. 2d 370 (S.D.N.Y. 1999) ........................................................................ 2

*Transmatic, Inc. v. Gulton Indus., Inc.*,
   53 F.3d 1270 (Fed. Cir. 1995) .......................................................................... 10, 14

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed.Cir. 1997) ............................................................................ 3, 6

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576, 39 USPQ2d 1573 (Fed. Cir. 1996) .................................................... 1

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) ................................................................................. 3

### STATUTES

35 U.S.C. § 112(6) ........................................................................................................ 13

35 U.S.C. § 112, P 1 ..................................................................................................... 11

### OTHER AUTHORITIES

*The Microsoft Computer Dictionary* (3rd Ed., 1997) at 197 ........................................... 9

iii   PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

## I. INTRODUCTION

Sproqit's proposed claim constructions violate established principles of Federal Circuit jurisprudence. For instance, Sproqit's criticism of Visto's approach to using dictionary definitions to ascertain the ordinary meaning of claim terms is misplaced. The Federal Circuit has consistently held that "Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6, 39 USPQ2d 1573, 1580 n.6 (Fed. Cir. 1996).

As discussed in detail below, there are four problems with Sproqit's approach to the claim construction of the patent terms at issue in this case that pervade nearly all of Sproqit's proposed constructions.

## II. DISCUSSION

### A. Stare Decisis Favors Adopting Judge Ward's Claim Construction

First, Sproqit refuses to recognize the relevance of the Claim Construction Order of the *same patent terms* adopted by Judge Ward in the Eastern District of Texas, to which Sproqit originally stipulated for purposes of Visto's Motion for Preliminary Injunction. The principles of *stare decisis* favor promoting inter-jurisdictional consistency as to the constructions of Visto's patents which are asserted in several pending lawsuits throughout the country.[1] As the Federal Circuit noted in *Tex. Instruments, Inc. v. Linear Techs. Corp.*: "While the court's previous opinion does not have issue preclusive effect against [Defendant] in this case, to the extent the parties **do not raise new arguments**, the court will defer to its previous construction of the claims. *See* Markman v. Westview Instr., Inc., 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384

---

[1] Recently, on April 28, 2006, the jury in the *Visto v. Seven* case returned a unanimous verdict in favor of Visto finding: (1) that all asserted claims of the patents in suit ('708, '192, and '221 patents) were infringed by Seven Networks Inc. ("Seven"); (2) that such infringement was willful; and (3) that the asserted patent claims were not invalid. [*See Visto v. Seven,* Eastern District of Texas Case No. 2:03-CV-333, Docket No. 370]. In addition to the pending actions against Sproqit and Seven, Visto has filed patent infringement lawsuits against Microsoft, Good Technology, Research In Motion, and Smartner Information Systems.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

1   (1996)(holding that issue preclusion cannot be asserted against new defendants but noting that

2   generally, stare decisis should promote uniformity in the claim construction of a given patent.)"

3   *Tex. Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 588 (E.D. Tex. 2002).

4       Nine of the ten claim terms at issue in this claim construction proceeding, with the

5   exception of the term "format", were previously construed by Judge Ward in *Visto v. Seven* based

6   on the same evidence of record in this case, *i.e.*, the patents, file histories and dictionary

7   definitions. These terms are from the same patents ('131, '192, '221 and '708 patents) that are at

8   issue in this case. The claim constructions adopted by Judge Ward in his April 20, 2005 Claim

9   Construction Order should be considered highly persuasive and relevant authority. *See Abbott*

10  *Labs. v. Dey, L.P.*, 110 F. Supp. 2d 667 (N.D. Ill. 2000) (applying issue preclusion to a claim

11  construction by another district court, although also considering whether the previous

12  construction was "plainly wrong"); *Nilssen v. Motorola, Inc.,* 80 F. Supp. 2d 921, 924 n.4 (N.D.

13  Ill. 2000) (prior claim construction was worthy of respect, though not necessarily preclusive

14  effect); *TM Patents, L.P. v. Int'l Bus. Machs. Corp*., 72 F. Supp. 2d 370 (S.D.N.Y. 1999) (ruling

15  that prior claim construction by a different district court was entitled to preclusive effect).

16      While this Court is not bound to adopt Judge Ward's Claim Construction Order, under the

17  doctrine of *stare decisis*, the Court should not disturb another District Court's claim construction

18  of the same patents at issue unless there is a compelling reason to do so. Judge Ward's claim

19  constructions are consistent with the intrinsic and extrinsic evidence of record and provide clear,

20  simple, and unambiguous definitions of the claim language that a jury can easily comprehend. If

21  this Court were to depart from Judge Ward's Claim Construction Order and give new meaning to

22  claim terms previously construed, the effect on the interpretation and enforcement of Visto's

23  patents would lead to anomalous results. A scenario where the same patents are given different

24  meaning and claim scope against separate defendants could lead to a situation where each

25  defendant would be free to pick and choose from a variety of different claim constructions for the

26  same claim terms based on arguments that suited that party best. This would disserve the purpose

27  of claim construction which has long been to provide meaning and uniformity to the

28  interpretation of patents.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

### B. Sproqit Improperly Construes Terms With Reference To The Accused Products

The claim constructions advanced by Sproqit are based largely and improperly on non-infringement arguments. This approach has been manifestly rejected by the Federal Circuit. *See Sri Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985):

> A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device. . . claims are not construed "to cover" or "not to cover" the accused device. That procedure would make infringement a matter of judicial whim. It is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied to the accused device to determine infringement. *See Palumbo v. Don-Joy Co*., 762 F.2d at 974, 226 U.S.P.Q. at 8.

Sproqit's constructions of several claim terms, such as "independently modifiable copy", "workspace element", "version information", and "global server", are based not on the ordinary meaning of the claim terms or the written description, but rather with a focus on structures of the accused product. For example, Sproqit's proposed construction of "independently modifiable copy" states that it "must include all components of the first workspace element." The argument of whether a "copy" includes all components is based directly on arguments Sproqit raised during the preliminary injunction motion with respect to whether "fields" of a given file copied in the Sproqit system comprise "independently modifiable copies" of "workspace elements". The definitions in Judge Ward's Claim Construction Order are, in contrast, clear on their face without reference to the accused devices and can be applied universally in any litigation.

### C. Sproqit's Constructions Impose Unnecessary Limitations

Another error in Sproqit's methodology derives from seeking construction of entire claim phrases and proposing constructions for each term with respect to the function embodied in the entire claim language. This defeats the purpose of claim construction, which is to resolve the meaning of specific technical terms, not to construe every conceivable claim term whose ordinary meaning is apparent. *See U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed.Cir. 1997) ("claim construction is a matter of resolution of disputed meanings and technical scope"); *see also Vivid Technologies, Inc. v. American Science & Engineering, Inc*., 200 F.3d 795, 803 (Fed. Cir. 1999) ("the "only" claim terms that need to be construed are those terms "that are in

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

1 controversy, and only to the extent necessary to resolve the controversy."). There is a "heavy
2 presumption" that the terms used in claims "mean what they say and have the ordinary meaning
3 that would be attributed to those words by persons skilled in the relevant art." *Texas Digital Sys.*
4 *v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).

5       Sproqit seeks constructions for the terms "first" and "second", for example, in the context
6 of "version information", "workspace element" and "examination results", when these qualifiers
7 could be easily understood by reference to the surrounding claim language. Furthermore, Sproqit
8 seeks to define the claim term with reference to the function embodied the in specific claims. For
9 example, Sproqit's proposed definition of "version information" lists several qualifiers, including
10 the limitation that "version information can be examined to determine whether the workspace
11 element has been changed." This qualifier, which is found in the language of claim 1 of the '192
12 patent, reads: "first version information which indicates whether a first workspace element . . .
13 has been modified," is absent in, for example, claim 36 of the '131 patent: "... wherein if the first
14 workspace element has not been modified." In such a situation, where a workspace element is
15 not modified, "version information" may not reveal any information of whether that workspace
16 element has changed or not. This is exactly the reason why the Federal Circuit has cautioned
17 against reading additional limitations into the claims. *See Superguide Corp. v. DirecTV Enters.*,
18 358 F.3d 870, 875 (Fed. Cir. 2004) ("Though understanding the claim language may be aided by
19 the explanations contained in the written description, it is important not to import into a claim
20 limitations that are not a part of the claim.").

21       **D.**    **Claim Terms Of Related Patents Should Be Construed Consistently**

22       Sproqit argues that the disclosure of the '708 patent should not be used to construe claims
23 in related patents, such as for example the '131 and '192 patent. This argument lacks merit. *See*
24 *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("We presume, unless
25 otherwise compelled, that the same claim term in the same patent or related patents carries the
26 same construed meaning.").

27       All of the patents-in-suit are related either through a series of continuations or through
28 incorporation by reference. The '708 patent incorporates by reference the '192 patent. [*See e.g.,*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

'708 patent, col. 1, ln. 8 ("This application is related to and hereby incorporates by reference the co-pending application entitled "System and Method for Securely Synchronizing Multiple Copies of a Workspace Element in a Network Ser. No. 08/835,997 [the '192 patent] . . .")]. The '131 patent is a direct continuation of the '192 patent. [*See* '131 patent, Related U.S. Application Data ("Continuation of application No. 08/835,997 [the '192 patent]")]. The '221 patent is also a continuation in part of the '708 patent. [*See* '221 patent, Related U.S. Application Data (". . . continuation-in-part of application No. 08/865,075 [the '708 patent]")].

Furthermore the common and overlapping disclosures of the patents in suit evinces a clear substantive relationship between the patents. It would be unnecessary and confusing to adopt different meanings for the same claim terms across related Visto patents.

### III. SPROQIT'S PROPOSED CLAIM CONSTRUCTIONS ARE IMPROPER

#### A. "an independently modifiable copy of the first workspace element"

Sproqit urges that the term "independently modifiable copy" "must include all the components of the first workspace element." [*See* Sproqit's Claim Construction Brief at 6]. Sproqit argues that Visto does not have any support for the fact that a *copy* of a workspace element can comprise less than all fields of a given file. [*See* Sproqit's Brief at 9 ("Visto is trying to turn the word "copy" into "partial copy.")]. Visto's proposed construction is the verbatim construction determined by Judge Ward, which simply reads: "*a copy of a workspace element that is capable of being modified independent of the workspace element. The copy of the workspace element does not have to be in the same format as the workspace element.*"

The fact that different formats may include different fields is set forth expressly in the '708 patent: "For example, if a bookmark in Format A needs elements X, Y and Z and a bookmark in Format B needs elements W, X and Y, the global translator 122 incorporates elements W, X, Y and Z to create a bookmark in the Global Format." ['708 Patent, col. 8, ln. 51-54]. In this example, copies of the same bookmark in different formats share elements X and Y, but they differ with respect to elements W and Z. Thus, Sproqit's argument that an "independently modifiable copy" "must include all the components of the first workspace element" is flatly contradicted by the intrinsic evidence and should be rejected. *See, e.g., Johnson*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

*Worldwide Assocs. v. Zebco Corp.,* 175 F.3d 985, 992 (Fed. Cir. 2002) ("Mere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms.").

### B. "version information"

Sproqit imposes several unnecessary and confusing qualifiers for the term "version information" which should be rejected in favor of the simple and straightforward definition proffered by Visto and adopted by the Texas Court.

First, Sproqit argues that "each workspace element is associated with version information." [*See* Sproqit's Brief at 11]. While this may or may not be true depending on the particular claim involved, the qualifier is unnecessary because it does not add anything to the definition of version information other than associate version information with another claim term, "workspace element." *See U.S. Surgical*, 103 F.3d at 1568 ("claim construction is a matter of resolution of disputed meanings and technical scope").

Second, Sproqit seeks to construe the term "first" and "second" version information separately, when these terms can be construed with reference to their plain and ordinary meaning and require no special construction. As Judge Ward properly noted, "[t]he terms 'first' and 'second' require no construction." [*See* Visto's Opening Claim Construction Brief, Khaliq Decl., Exh. E, Claim Construction Order at 14]. *See also, Raytheon Co. v. McData Corp.*, 2004 WL 952284, 11 (E.D. Tex. 2004) ("The Court believes that only the term "signal" need be construed and that from that construction the jury will be able to determine the meaning of 'first signal,' 'second signal,' 'first command signal,' and 'second command signal.'").

The third improper qualifier advanced by Sproqit is that "version information is distinct from workspace element." There is no basis for this limitation other than the fact that Sproqit is attempting to add limitations that are not present and infuse non-infringement arguments into the claim construction proceedings; an approach that has been rejected by the Federal Circuit. *See Sri Int'l,* 775 F.2d at 1118.

The fourth improper limitation urged by Sproqit is that "version information indicates, and can be examined to determine whether, the workspace element has changed." [*See* Sproqit's Brief at 12]. While this may be true in situations where the claims specifically recite modifications to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

workspace elements, this is not true in all circumstances, especially when dependent claims specify that changes to workspace elements are not contemplated. *See e.g.,* claim 36 of the '131 patent: "The system of claim 31, where, if the first workspace element <u>has not been modified</u>".(emphasis added). In such a situation, version information may not necessarily provide any information regarding whether or not that workspace element had been modified. The doctrine of claim differentiation mandates against importing limitations that are present in some claims but not others. *See Tandon Corp. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate [patent] claims. To the extent that the absence of such [a] difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").

The fifth erroneous argument Sproqit makes with respect to "version information" is that it "can be used to place the workspace element in sequence (i.e., before or after other versions of that workspace element." [*See* Sproqit Brief at 12]. Sproqit cites a dictionary definition relevant to product release versions to support this construction which is wholly irrelevant to the technical meaning of "version information" as described in the patents. Moreover, there is simply no support of this qualifier in the intrinsic evidence.

Finally, Sproqit states that "version information can be used to generate a preferred version." Again, while this may be true in some claims, it not true in others. For example, claim 24 of the '192 patent does not describe the generation of a "preferred version" but, rather, contemplates "storing both the first workspace element and the copy at the first store and at the second store." The imposition of a limitation that would lead to inconsistent results throughout the patent claims would be improper.

### C. "Examination Results"

Sproqit's construction of "examination results" suffers from the same problems discussed above. The construction advanced by Sproqit, whereby "examination results are generated from version information and determine whether a workspace element has been changed," is simply a recital of the *function* of certain claim elements. If the limitation of whether information obtained

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

1    by examining workspace elements concerns modifications to those elements or their copies, this
2    fact will be evident from the surrounding claim language. It is improper to impose additional
3    limitations on the ordinary meaning of "examination results", which should be defined as:
4    *Information regarding one or more workspace elements obtained by examining those workspace*
5    *elements.* [*See* Visto's Opening Claim Construction Brief, p. 13].

6    Furthermore, as previously mentioned, the terms "first" and "second" with respect to
7    examination results need not be separately construed as this meaning is clear from the ordinary
8    meaning and context of the claims.

9    **D.     "Initiating steps __ and __ from within the firewall"**

10   Sproqit accuses Visto of failing to take a position with respect to the phrase "initiating
11   steps __ and __ from within the firewall". This is simply untrue. In its opening brief, Visto
12   plainly stated: "[t]he term 'firewall' is the only language in this claim element that requires
13   construction . . .". The meaning of the other terms in the phrase, which are not by nature
14   technical claim terms requiring construction, should be given their plain and ordinary meaning: to
15   initiate the required steps from within the firewall.

16   Sproqit's proposed construction: "<u>causing</u> the referenced steps to be executed by <u>sending</u>
17   <u>an instruction</u>" departs from the ordinary meaning without justification. *Kegel Co. v. AMF*
18   *Bowling*, 127 F.3d 1420, 1427 (Fed. Cir. 1997) ("Without an *express intent* to impart a novel
19   meaning to a claim term, the term takes on its ordinary meaning.") (emphasis added). Sproqit's
20   reference to an exemplary embodiment in the '192 patent specification, which refers to the
21   synchronization start module sending an instruction to the general synchronization module, does
22   not justify limiting the claim language as Sproqit proposes without an express intent by Visto to
23   impart a secondary meaning. While "the specification may aid the court in interpreting the
24   meaning of disputed claim language, particular embodiments and examples appearing in the
25   specification will not generally be read into the claims." *Comark Communications, Inc. v. Harris*
26   *Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); see also *Laitram Corp. v. Cambridge Wire Cloth*
27   *Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988).

28   The definition of firewall proposed by Sproqit as "a system or group of systems that

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

enforces an access control policy between two networks," should be rejected because it seeks to conflate firewalls with authentication and validation features (i.e. access control features) which are clearly distinguished in Visto's patents and pending applications.  In its opening brief, Visto enumerated several extensive examples from the intrinsic evidence citing the patents-in-suit and related applications which contrast the use of firewalls and access control features.  [*See* Visto's Opening Claim Construction Brief at 14-16].

Moreover, Visto relies on the complete and accurate definition of firewall from a technical dictionary well known to those of ordinary skill in the art. [*See* Visto's Opening Brief, Khaliq Decl., Ex. Q, *The Microsoft Computer Dictionary* (3rd Ed., 1997) at 197].  This Court adopted that definition in its Order denying Visto's Motion for Preliminary Injunction. [Order Denying Plaintiff's Motion for Preliminary Injunction and Overruling Plaintiff's Objections (Docket No. 136) at p.4, fn. 4].

Sproqit argues that this dictionary definition, which reads, *inter alia*, that a "firewall prevents computers in the organizations network from communicating directly with computers external to the network and vice versa," is inconsistent with a description in the specification of the '192 patent which states that "the *typical corporate firewall* 130 prevents inbound communications and allows outbound communications." [*See* '192 patent, col. 5, ln. 47-49].  There is no inconsistency here.  The dictionary definition envisions that firewalls can be configured to prevent traffic in both directions, while the patent describes "typical corporate firewalls" which can be configured to allow outbound communications.

Sproqit's citation to a preferred embodiment does not provide a sufficient or compelling reason to depart from established principles of claim construction.  The presumption that a term has a meaning synonymous with its ordinary meaning, which is generally consistent with the dictionary definition, may be rebutted only if the "patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning." *Texas Digital Systems, Inc.*, 308 F.3d at 1204.  Visto has not explicitly set forth the definition of firewall in its patents to justify a disavowal of the ordinary meaning of the term.  Thus, the Court should not reverse its prior adoption of the complete dictionary definition of the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

9

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

term "firewall".

### E. "First Format/Second Format"

Sproqit's proposed construction of "format" suffers from similar problems. In *Visto v. Seven*, the parties stipulated to the ordinary meaning of format which is self evident and embodied in Visto's easily comprehensible construction: *Any method of arranging information that is to be stored or displayed. The format of a workspace element refers to the way the information is stored in it.* In contrast, Sproqit's definition makes reference to "ASCII" files and other irrelevant information.

Sproqit argues at considerable length that the "first format" and "second format" must necessarily be different formats (citing to various portions of the '708 specification referring to data consistency and translation). [*See* Sproqit's Brief at 19]. These arguments, however, are rebutted by the simple fact that not all the claims require the first format and the second format to be the same. For example, claim 2 of the '708 patent states: "<u>The system of claim 1, wherein the first format is the same as the second format</u>." (emphasis added). The doctrine of claim differentiation embodies the notion that language in one claim should not be interpreted so as to make another claim, often a dependent claim, superfluous. *See, e.g., Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995). If the Court were to interpret the term "format" to require that the first format and the second format be different, claim 2 of '708 patent (among others) would be rendered meaningless.

Moreover, the fact that a "global translator" may be involved in translating data between different formats does not necessarily mean that a "global translator" or data translation is needed all situations. For example, the section of the prosecution history cited by Sproqit on pg. 20 of its brief actually supports Visto's proposed construction. Visto stated during an Amendment and Response: "Translation is needed when a first workspace element is in a different format than a second workspace element." [*See* Sankaran Decl., Ex. M (Response to Office Action at 3)]. It follows, therefore, that translation is <u>not</u> needed when the first format and the second format are the same; as embodied in Visto's other dependent claims. Visto does not have a duty to describe every single permutation of its claimed invention as Sproqit suggests. *See Golight, Inc. v. Wal-*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

1  *Mart Stores, Inc*., 355 F.3d 1327, 1331-32 (Fed. Cir. 2004), holding:

<u>An applicant is not necessarily required by 35 U.S.C. § 112, P 1 to describe more embodiments than its preferred one, and we have outright rejected the notion that disclosure of a single embodiment necessarily limits the claims</u>. *See Teleflex,* 299 F.3d at 1327 (stating that "the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms"). Moreover, "<u>absent a clear disclaimer of particular subject matter, the fact that the inventor anticipated that the invention may be used in a particular manner does not limit the scope to that narrow context</u>." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,* 334 F.3d 1294, 1301 (Fed. Cir. 2003).

7  For these reasons, the Court should adopt the true and correct construction of "format" as proffered by Visto.

9      **F.    "Global Server"**

10  Sproqit urges that the "global server" must be located outside the corporate LAN. Again, Sproqit seeks to import a limitation regarding the location of the global server that does not appear in the plain language of the claim. *See Rhine v. Casio, Inc.,* 183 F.3d 1342, 1346 (Fed. Cir. 1999) ("Particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments."). In the *Visto v. Seven* case, Judge Ward rejected the argument that the global server must be "outside a corporate LAN and inside a global firewall" because those limitations were found only in a preferred embodiment and not in the claims themselves. [*See* Visto's Opening Claim Construction Brief, Khaliq Decl., Exh. E, Claim Construction Order at 22-23]. The proper definition of "global server" adopted by Judge Ward is: "a server accessible from remote locations which stores independently modifiable copies of selected portions of workspace data." [*Id*. at 23].

21  Sproqit's argument is contradicted by the description in '708 patent, which states: "although the global server 106 is illustrated as a single device, the global server 106 may include several computers networked together." [*See* '708 patent, col. 11, ln.18-21]. One of these components could be located within the LAN. Further, the specification of the '221 patent states "a server can be any computer which is polled by a client." ['221 patent, col. 16, ll. 52-53.] A "global server" is generally described as a server that allows a remote user to access services or data on a computer network. ['221 patent, Abstract.] "The global server is configured to identify and authenticate a user attempting to access it from a remote terminal, and is configured to

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

1  provide access based on the client configuration either to the first set of workspace data stored on
2  the client or to the second set of workspace data stored on the global server." ['221 patent, col. 2,
3  ll. 57-63.]  In other words, the global server is one that mediates the connection between the
4  remote user and the computer network, and may store data.  The exemplary embodiments shown
5  in the figures depicting the a global server at a central location relative to the first and second
6  stores do not provide any basis for importing a location limitation into the claims.  *See Gart v.*
7  *Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) (noting that "drawings [depicting the
8  preferred embodiment] are not meant to represent 'the' invention or to limit the scope of coverage
9  defined by the words used in the claims themselves.").

10         Second, Sproqit contends that the "global server" must store selected portions of "*first
11  workspace data*" as opposed to "selected portions of workspace data". [*See* Sproqit's Brief at 21
12  (emphasis added)].  There is no support in the specification that storage of workspace data at the
13  global server is limited to "first workspace data" as opposed to selected portions thereof.  For
14  example, the '221 patent, col. 5, ln. 59-64 states:

> It will be further appreciated that the workspace data 180 or portions thereof may
> be stored at different locations such as locally on the client 165, on other systems
> in the LAN 125 or on other systems (not shown) connected to the global server
> 115.

*See also* '221 patent, col. 6, ln. 23-26:

> The global server stores 115 stores workspace data 163, which includes an
> independently modifiable copy of each selected workspace element in the selected
> portions of the workspace data 180.

       As noted above, the specifications of the patents-in-suit do no impose any limitation
whereby only selected portions of "first workspace data" are stored on the global server.

       Also, while it is true that the global server can be configured to "identify and authenticate
users" (*see* '221 patent, col. 6, ln. 8-10), the patent describes a myriad of other functions the
global server may serve, none of which, however, should limit the scope of the term.

       Finally, Sproqit's additional qualifier that the "global server has a memory for storing
data" is redundant of both parties proposed definitions that the global server store selected
portions of workspace data.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

12

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

## IV. THE MEANS PLUS FUNCTION LIMITATIONS

### A. "Means for translating . . ."

Sproqit's proposed construction specifies that the "means for translating" must invoke the "global translator." If however, Visto chose to limit its claims to require a "global translator", it would have done so in its claim terminology. For instance, claim 1 of the '708 patent requires a "translator" for translating between the first format and the second format; it does not require a "global translator." Similarly, the means-plus-function claims should not be limited to require a global translator. Sproqit's arguments regarding "global translator" are precisely the same arguments raised by Seven which were rejected in the Eastern District of Texas.

In Visto's opening brief, Visto noted that the translator function could be spread across various software modules without limitation to a particular location. [*See* Visto's Opening Brief at 20]. Accordingly, Visto's proposed definition is true with the full scope of the written description: *software routines or code the convert information or data in one format to information or data in a second format*.

### B. "Synchronization means for synchronizing . . ."

Visto agrees that the parties are largely in agreement on the construction of this term. However, for the sake of simplicity, Visto proffers that the claim construction for this term should be spelled out concisely, as it is in the patent specification without recitation of each and every single module as Sproqit has listed them. Visto's proposed definition, as construed by Judge Ward, best reflects the meaning gleaned from the specification of the patents in suit. *See e.g.,* '708 patent, col. 4, ln. 23-28: "Network 100 further comprises synchronization means, which includes a base system 146 stored within the LAN 110 and for example on the desktop computer 134. Network 100 further includes a synchronization agent 124."

### C. "Means for generating a preferred version"

Sproqit's proposed definition which imports the entire claim language of the last element of claim 10 of the '192 patent into the recitation of the structure is manifestly improper. A means plus function claim must be interpreted by identifying the "means" corresponding to the function. [*See* 35 U.S.C. § 112(6)]. The claimed function is "generating a preferred version" which is found

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

13

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

1 in other claims besides claim 10 of the '192 patent. *See e.g.,* claim 21 of the '192 patent: "means
2 for generating a preferred version from the first workspace element and from the copy based on
3 the first and second examination results." To read the means plus function claims as Sproqit
4 suggests would render Visto's other patent claims meaningless. *See, e.g., Transmatic,* 53 F.3d at
5 1277.

6 Moreover, there is no requirement that the "content based synchronization" need be
7 involved in "generating a preferred version." The patent suggests that the content based
8 synchronization module may be implicated when both the workspace element and the copy have
9 been modified since the last synchronization. [*See* '192 patent, col. 6, ln. 15-27]. However, the
10 '192 patent means plus function claims do not require that both the workspace element and the
11 copy be modified to implicate the means for generating a preferred version. For example, claim
12 10 of the '192 patent which invokes "means of for generating a preferred version," states
13 "wherein if only one of the first workspace element and the copy has been modified." *See also*
14 claim 22 of the '192 patent. If the means plus function claims contemplate that only one of the
15 workspace element and its copy may be modified, then there would be no need for the content
16 based synchronization module in the scenario. Accordingly, the content based synchronization is
17 not required for generating a preferred version.

18 **V.    CONCLUSION**

19 Visto's proposed constructions are fully supported by the intrinsic and extrinsic evidence
20 and are consistent with the constructions adopted by Judge Ward in the *Visto v. Seven* case.
21 Sproqit on the other hand, has improperly imported limitations into the claims in a manner that
22 confuses the claim language and contravenes established principles of claim construction. In the
23 interest of maintaining judicial uniformity and giving inter-jurisdictional consistency to the
24 interpretation of Visto's patents, Visto respectfully requests that this Court adopt, unless noted
25 otherwise, the constructions as defined in Judge Ward's Claim Construction Order as set forth in
26 Visto's Opening Claim Construction Brief.

27
28

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

14

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC

Dated:  June 16, 2006

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

/s/ Robert D. Becker
Ronald S. Katz
Robert D. Becker
Greg T. Warder
1001 Page Mill Road, Building 2
Palo Alto, CA  94304
Telephone:  650-812-1300
Facsimile:  650-213-0260

*Attorneys for Plaintiff*
*Visto Corporation*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

15

PLAINTIFF VISTO CORPORATION'S REPLY
CLAIM CONSTRUCTION BRIEF
CASE NO. C 04-0651 EMC