MANATT, PHELPS & PHILLIPS, LLP
RONALD S. KATZ (State Bar No. 85713)
ROBERT D. BECKER (State Bar No. 160648)
GREG T. WARDER (State Bar No. 38817)
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for Plaintiff*
VISTO CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

SAN FRANCISCO DIVISION

| | |
|---|---|
| VISTO CORPORATION,<br><br>    Plaintiff<br><br>    v.<br><br>SPROQIT TECHNOLOGIES, INC.,<br><br>    Defendant | Case No. C 04-0651 EMC<br><br>**PLAINTIFF VISTO CORPORATION'S SUPPLEMENTAL BRIEF REGARDING CLAIM CONSTRUCTION**<br><br>Judge:  Honorable Edward M. Chen<br>         Courtroom C, 15th Floor |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

VISTO'S SUPP. BRIEF REGARDING
CLAIM CONSTRUCTION
CASE NO. C 04-0651 EMC

Pursuant to the Court's direction at the July 6, 2006, claim construction hearing, Plaintiff Visto Corporation ("Visto") submits the following discussion of the terms: "initiating"; "first format/second format"; and "means for translating" to assist the Court in framing the outstanding issues.

## I. INTRODUCTION

The definitions suggested by Sproqit attempt to restrict the claims to preferred embodiments by adding limitations from the specification. "An accused infringer cannot overcome the heavy presumption that claims should be given their ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification." *Fuji Photo Film Co. v. ITC,* 386 F.3d 1095, 1105 (Fed. Cir. 2004). Rather, "absent a clear disclaimer in the specification, the embodiments in the specification do not limit broader claim language." *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336 (Fed. Cir. 2005).

In addition to improperly limiting the claims, Sproqit's arguments in support of its definitions often conflict with the teachings of the specification and the language of the claims themselves. Claim construction requires that proposed definitions adopted for claim terms be "consistent with both the plain language of the claims and the teachings of the specification." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1070 (Fed. Cir. 2002). Accordingly, the Court should decline to adopt Sproqit's proposed definitions.

## II. DISCUSSION.

### A. Initiating (Claims 1, 6-8 and 22 of the '192 Patent)

Sproqit has proposed the definition for the term "initiating" be construed as "causing the referenced steps to be executed by sending an instruction from within the firewall." (*See*, Supp. Joint CC Statement, Docket No. 150, Exh. A, p. 5.) At the claim construction hearing, Sproqit asserted that "initiating" should be construed in this narrow manner because the specification of the '192 patent describes one embodiment wherein "The synchronization-start module 420 initiates data synchronization by instructing the general synchronization module 425 to begin execution of its routines." ('192 patent, col. 5, ll. 42-45.) It is improper, however, to import this

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

VISTO'S SUPP. BRIEF REGARDING
CLAIM CONSTRUCTION
CASE NO. C 04-0651 EMC

1 limitation from an embodiment described in the specification. *Eolas Techs., Inc.*, 399 F.3d at 1336. *See also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'").

The claims of the '192 patent do not recite any limitation of "sending an instruction" and should not be construed to import this qualifying language. Instead, the meaning of "initiating" is clear on its face, and does not require further construction. There is a "heavy presumption" that the terms used in claims "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002). There is no evidence of an intention in the '192 patent to depart from the ordinary meaning and the term should, therefore, be considered to encompass the entire scope that would be attributed by one of ordinary skill in the art. (*See, e.g.*, Webster's 9th New Collegiate Dictionary, (1991), p. 622: initiate - "to cause or facilitate the beginning of: set going ... *syn* see BEGIN.") Accordingly, the Court should give the term "initiating" its plain meaning, and not narrow its scope through the use of a synonym or qualifying language.

### B. First Format/Second Format (Claims 1 and 17 of the '708 Patent)

For construction of the term "format," Sproqit's definition requires that the first format and the second format must be different. (Supp. Joint CC Statement, Exh. A, p. 6.) Visto maintains that the terms "first" and "second" are simply labels denoting one of one or more claim terms and do not require construction, a fact which was confirmed by the court in the *Visto v. Seven* case. (*See*, Decl. to Visto's Opening CC Brief, Docket No. 167, Exh. E.) That the formats may be the same is evident from claim 2 of the '708 patent, which **expressly** recites "wherein the first format is the same as the second format." It would be highly improper to construe claim 1 in a manner that is inconsistent with the express language of claim 2. *NeoMagic Corp.*, 287 F.3d at 1070.

While the specification of the '708 patent discloses that formats may be different, e.g.,

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

VISTO'S SUPP. BRIEF REGARDING
CLAIM CONSTRUCTION
CASE NO. C 04-0651 EMC

1  when using a global translator, it does not disclose that they **must** be different. (*See,* '708 patent,
2  col. 8, ll. 47-50: "The global translator incorporates all the information needed by both formats
3  (Format A and Format B) to create a global format.") If an application program for workspace
4  elements at the first store is the same type of application program for workspace elements at the
5  second store, for example, the workspace elements at each store would require the same
6  information and would inherently be in the same format. (*See*, '708 patent, col. 1, ll. 41-52.)

7  Sproqit suggests that there is a way to make its theory work by limiting the claims to the
8  preferred embodiment of a global translator. Sproqit's definition once again limits the claims to a
9  preferred embodiment. Sproqit attempts to overcome this by pointing to the prosecution history,
10 but a review of the arguments Sproqit relies on shows that they do not support its position. While
11 the applicants' arguments cited by Sproqit generally discuss the invention in terms of a network
12 using a global translator, that limitation is not relied on to distinguish the prior art. Rather, the
13 applicants state, "Since Smith does not deal with synchronization of multiple versions of a
14 workspace element, Smith does not include the translator as claimed in claims 1 and 17." (*See*,
15 Decl. to Sproqit's CC Brief, Docket No. 169, Exh. M, p. 3.) It is clear from this language that the
16 prior art was distinguished on the basis of a translator as recited in the claims, and not by reliance
17 on the global translator described in the preferred embodiment.

18 Nothing in the patent or the prosecution history compels the conclusion that different
19 formats or a global server is required. As such, it would be improper to construe the term
20 "format" by interpreting it based on limitations that are not present in the claims.

21       **C.**    **Means for Translating (Claim 33 of the '708 Patent)**

22 Sproqit argues that "means for translating" must include the global translator. This
23 improperly limits the claim to a single disclosed embodiment to the exclusion of other
24 embodiments that perform the same function. Construction of a means-plus-function limitation
25 requires the court to identify the corresponding structure in the written description necessary to
26 perform that function. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed.
27 Cir. 1999). However, "Disclosed structure includes that which is described in a patent
28 specification, including any alternative structures identified." *Serrano v. Telular Corp.*, 111 F.3d

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

VISTO'S SUPP. BRIEF REGARDING
CLAIM CONSTRUCTION
CASE NO. C 04-0651 EMC

1578, 1583 (Fed. Cir. 1997). As previously discussed in Visto's opening brief, the '708 patent contemplates that the computational work, including synchronization and translation, can be spread across the various disclosed structures depending on the processing power of the computer involved. (Visto's Opening CC Brief, Docket No. 166, p. 20.) The '708 patent also describes a system according to the invention including "a translator for translating between the first format and the second format," without reference to a global translator. (*See, e.g.*, '708 patent, col. 2, ll. 3-10.) Because the '708 patent discloses that the corresponding structure necessary to perform the recited function may be **any** translator, the Court should not adopt Sproqit's proposed construction for the term "means for translating." 35 U.S.C. § 112(6) does not permit incorporation of structure from the written description "beyond that necessary to perform the claimed function." *Micro Chem., Inc.*, 194 F.3d at 1258.

Dated: July 24, 2006

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

/s/Robert D. Becker
Ronald S. Katz
CA State Bar No. 085713
Robert D. Becker
CA State Bar No. 160648
Greg T. Warder
CA State Bar No. 209966

1001 Page Mill Road, Building 2
Palo Alto, CA 94304
Telephone: 650-812-1300
Facsimile: 650-213-0260

*Attorneys for Plaintiff
Visto Corporation*

20162430.1

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

VISTO'S SUPP. BRIEF REGARDING
CLAIM CONSTRUCTION
CASE NO. C 04-0651 EMC