DORSEY & WHITNEY LLP
SRI K. SANKARAN (Cal. Bar. No. 236584)
555 California Street
Suite 1000
San Francisco, CA 94104-1513
Telephone: (415) 544-7038
Facsimile: (415) 398-3249

DEVAN V. PADMANABHAN (admitted *pro hac vice*)
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Defendant
Sproqit Technologies, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTO CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>SPROQIT TECHNOLOGIES, INC.<br><br>Defendant. | NO.: 04-CV-651 (EMC)<br><br>**SPROQIT'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>**Date: August 30, 2006**<br><br>**Time: 10:30 a.m.**<br><br>**Courtroom: C, 15th Floor** |

## TABLE OF CONTENTS

**Page No.**


Table of Authorities ........................................................................................................... ii

INTRODUCTION ................................................................................................................ 1

FACTS .................................................................................................................................. 2

ARGUMENT ........................................................................................................................ 3

I. Visto's Motion To Dismiss Under Rule 41(a)(2) Should Be Denied.................................. 3

II. Visto's Motion To Dismiss Sproqit's Counterclaims Should Be Denied............................ 4

A. Reasonable Apprehension of Suit ........................................................................ 6

B. Production Of, Or Preparation To Produce, Accused Products ............................... 7

III. The Court Should Exercise Its Discretion To Maintain Jurisdiction .................................. 11

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page No.**

**FEDERAL CASES**


Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852 (Fed. Cir. 1999) .................. 6, 7

Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731 (Fed. Cir. 1988) .................. 1, 5, 6

BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975 (Fed. Cir. 1993) .................. 5, 8

Biogen, Inc. v. Schering AG, 954 F. Supp. 391 (D. Mass. 1996) .................. 8

Capo, Inc. v. Dioptics Medical Products, Inc., 387 F.3d 1352 (Fed. Cir. 2004) .................. 11

Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953 (Fed. Cir. 1987) .................. 5

Hallco Manufacturing Co. v. Foster, 256 F.3d 1290 (Fed. Cir. 2001) .................. 6

Heerema Marine Contractors v. Santa Fe International Corp., 582 F. Supp. 445 (C.D. Cal. 1984) .................. 9, 10

Infinitech v. Vitrophage, Inc., 842 F. Supp. 332 (N.D. Ill. 1994) .................. 9

International Harvester Co. v. Deere & Co., 623 F.2d 1207 (7th Cir. 1980) .................. 7, 8

Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc., 242 F. Supp. 2d 311 (S.D.N.Y. 2003) .................. 8, 9

Lang v. Pacific Marine & Supply Co., 895 F.2d 761 (Fed. Cir. 1990) .................. 6

Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941) .................. 5

Read Corp. v. Bibco Equipment Co., 145 F.R.D. 288 (D.N.H. 1993) .................. 4

SVG Lithography Systems, Inc. v. Ultratech Stepper, Inc., 334 F. Supp. 2d 21 (D. Mass. 2004) .................. 3, 6, 9

Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc., 363 F.3d 1361 (Fed. Cir. 2004) .................. 5, 7, 8, 10

Techimark, Inc. v. Crellin, 14 F. Supp. 2d 762 (M.D.N.C 1998) .................. 4


**FEDERAL RULES AND STATUTES**


Federal Rule of Civil Procedure 41(a)(2) .................. 3, 4

Declaratory Judgment Act, 28 U.S.C. § 2201 .................. 1

## INTRODUCTION

By accusing Sproqit of patent infringement, Visto placed a cloud over Sproqit's technology. To remove that cloud, Sproqit sought declaratory judgments of noninfringement and invalidity. Now – after months of litigation, after Visto's motion for preliminary injunction was denied (twice), after Visto's efforts to postpone the claim construction hearing failed, with the claim construction issues briefed and argued, with the initial claim construction rulings received, and with the September 27 close of discovery in sight – Visto has no more stomach for the fight that Visto itself precipitated. Visto wants to quit this litigation, while leaving its allegation of infringement as a cloud firmly in place over Sproqit. This is precisely the sort of situation that the Declaratory Judgment Act was meant to address.

Nearly 20 years ago, the Federal Circuit described the *"danse macabre"* in which a patent owner would level accusations of infringement, but avoid having its infringement claims decided in court:

> This appeal presents a type of the sad and saddening scenario that led to enactment of the Declaratory Judgment Act (Act), 28 U.S.C. § 2201. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. **Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.**

Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734-35 (Fed. Cir. 1988) (citations omitted).

Visto brought an infringement claim, but now wants to retreat back to the *danse macabre*. Visto asserted claims of patent infringement, perhaps hoping that a small company like Sproqit would simply be unable to defend in Court. But now, having been disabused of that notion, and apparently unhappy with the way the litigation is going, Visto wants out. Visto wants to get out of this litigation

while still leaving its patents and its charge of infringement hanging over Sproqit like a Damoclean threat. This is impermissible. There is a justiciable controversy relating to the infringement and validity of the patents in suit and Visto's motion should be denied.

**FACTS**

Visto's Amended Complaint accuses Sproqit of infringing, contributing to the infringement of, and inducing the infringement of the four patents in suit. Amended Complaint (Docket No. 81). The accused product is described in the Amended Complaint as the "Sproqit Architecture." Amended Complaint ¶ 13-14. The Sproqit Architecture is embodied in the Sproqit Personal Edition product and Sproqit Work Group Edition product. Declaration of Dr. Sabin Head dated November 22, 2005 ("Head Decl.") (Docket 100-1) ¶ 12. Visto accuses the Sproqit Personal Edition and Work Group Edition Products of infringing the patents in suit.

The Sproqit Personal Edition product and the Sproqit Work Group Edition product are actual working software products. Visto's expert, Dr. Head purchased the Personal Edition product and the Work Group Edition product in the market place. Head Decl. ¶15. The products include software that runs on the user's desktop computer, and software that runs on the user's hand held device. Head Decl. ¶ 13. There is also software that runs on the Sproqit Server which is involved communications between the desktop computer and the hand held device. Head Decl. ¶ 14. Dr. Head notes that the Sproqit products can operate on hand held devices running a Palm operating system or a Microsoft Windows Mobile operating system. Head Decl. ¶13. The Sproqit products come with thorough documentation. <u>See</u>, <u>e.g.</u>, Head Decl. Exhibit G (Sproqit Work Group Agent, Version 1.0 Administrator's Guide) (Docket 100-12), Exhibit H (Sproqit Personal Edition User Guide for the Palm Operating System) (Docket No. 100-13); Exhibit K (Sproqit Personal Edition User Guide for Pocket PC) (Docket No. 100-16). Dr. Head's testing confirms that the Personal Edition and the Work Group Edition are complete and operational commercial software products that provide users with real-time access to email and other data. <u>See</u> Head Decl. ¶¶12-13.[1]

---

[1] While Dr. Head's Declaration demonstrates that the Sproqit Personal Edition and the Sproqit Work Group Edition products are operational, commercial products, Dr. Head erred in his understanding of exactly how those products work.

Sproqit invested millions of dollars and years of effort to develop the accused technology. Declaration of Gerald Trooien ("Trooien Decl.") ¶ 3. Sproqit is not going to walk away from that investment. Sproqit intends to litigate this case to a successful conclusion and then resume commercial operations, marketing its product as a superior technology that is free of any claim of infringement. Trooien Decl. ¶¶ 4-8. Sproqit will also market its products as a noninfringing alternative solutions to the other companies that have been accused of infringing the Visto patents. Id. Reflecting that intention to market and sell the accused technology and products, Sproqit is fighting Visto's claim of infringement and is pursuing counterclaims which seek declaratory judgments of noninfringement and invalidity. Trooien Decl. ¶ 8.

## ARGUMENT

### I. Visto's Motion To Dismiss Under Rule 41(a)(2) Should Be Denied

Visto's motion to dismiss its Amended Complaint without prejudice should be denied. Federal Rule of Civil Procedure 41(a)(2) provides that:

> **If a counterclaim has been pleaded** by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, **the action shall not be dismissed** against the defendant's objection **unless the counterclaim can remain pending for independent adjudication** by the court.

The plain language of the Rule mandates that Visto's action "shall not" be dismissed unless Sproqit's counterclaim can remain pending for independent adjudication. Even one of Visto own authorities recognizes that Rule 41(a)(2) dismissal is not appropriate when noninfringement and invalidity declaratory judgment counterclaims are pending. SVG Lithography Systems, Inc. v. Ultratech Stepper, Inc., 334 F.Supp.2d 21, 26 (D. Mass. 2004) (holding that infringement claims may not be dismissed under Rule 41(a)(2) where declaratory judgment counterclaims were pending).

Visto's motion should also be denied because dismissal of Visto's infringement claims would prejudice Sproqit. By accusing the Sproqit Architecture and the Sproqit products of infringing the patents in suit, Visto has placed a cloud over the company and its technology. Dismissal of Visto's infringement claims, to the extent that dismissal would impact the Court's ability to hear Sproqit's declaratory judgment counterclaims, would seriously prejudice Sproqit: the cloud of Visto's

infringement allegation would be left hanging over Sproqit and yet Sproqit would be unable to maintain an action for declaratory relief.

Visto's main support for its Rule 41(a)(2) argument, Read Corp. v. Bibco Equipment Co., 145 F.R.D. 288 (D.N.H. 1993), is distinguishable. First, the defendant in Bibco (unlike Sproqit) had no counterclaims pending seeking declaratory judgment of noninfringement and invalidity. Thus the primary issue raised by Visto's motion – the maintenance of declaratory judgment counterclaims – was not even involved in Bibco. Sproqit, on the other hand, has declaratory judgment counterclaims pending. See Sproqit's Answer to Amended Complaint and Counterclaims (Docket No. 149). Second, the defendant in Bibco (unlike Sproqit) did not oppose dismissal, but merely asserted a "limited objection" seeking dismissal without prejudice conditioned upon an award of attorneys fees or a dismissal with prejudice. Bibco,145 F.R.D. at 289. Sproqit, by contrast, opposes dismissal and is seeking a judicial determination of noninfringement and invalidity. Third, the defendant in Bibco (unlike Sproqit) "had no intent of resuming operations, since its president had retired and had been in poor health." Bibco, 145 F.R.D. at 291, n.3. As a result dismissal would not result in any prejudice to the defendant in Bibco. Sproqit, however, fully intends to resume commercial operations, Trooien Decl. ¶6, and therefore, as discussed above, dismissal would seriously prejudice Sproqit.[2]

So long as Visto's infringement claims remain pending there is an indisputable basis for subject matter jurisdiction over Sproqit's counterclaims. Unless Visto concedes, and the Court agrees, that Sproqit's counterclaims present a justiciable controversy that can remain pending even in the absence of Visto's infringement claims, Visto should not be permitted to dismiss its Complaint with or without prejudice under Rule 41(a)(2).

## II. Visto's Motion To Dismiss Sproqit's Counterclaims Should Be Denied

Visto's motion to dismiss Sproqit's counterclaims should be denied because those counterclaims present a justiciable controversy. "The sole requirement for jurisdiction under the

---

2 In a footnote, Visto cites Techimark, Inc. v. Crellin, 14 F.Supp.2d 762, 767 (M.D.N.C 1998), in an effort to avoid the impact of Rule 41(a)(2). Visto Motion at 5, n.2. Techimark, however, involved a plaintiff patent-owner which had sued for infringement and later dedicated the patent in suit to the public. Techimark, 14 F.Supp.2d at 762. The dedication of the patent-in-suit to the public was the critical feature of Techimark, and a feature that distinguishes it from the present case.

[Declaratory Judgment] Act is that the conflict be real and immediate, i.e., that there be a true, actual 'controversy' required by the Act." Arrowhead, 846 F.2d at 735.

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Arrowhead, 846 F.2d at 735, quoting, Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). See also Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc., 363 F.3d 1361, 1373 (Fed. Cir. 2004) (same).

The Federal Circuit has developed a two-part test to help guide the inquiry:

> First, the defendant's conduct must have created on the part of plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device **or** have **prepared to produce that device**.

Arrowhead, 846 F.2d at 736, quoting, Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987) (emphasis added). Stated slightly differently:

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement **or concrete steps taken with the intent to conduct such activity.**

Sierra Applied Sciences, 363 F.3d at 1373, quoting, BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993) (emphasis added).

In considering the second prong of the test, the Federal Circuit has made clear that pre-complaint conduct by the declaratory judgment plaintiff can be critical:

> Just as a patentholder can sue based on past acts that no longer continue, a declaratory-judgment plaintiff can sue using past acts as the jurisdictional predicate for the suit. . . .

Sierra Applied Sciences, 363 F.3d at 1377.

**A. Reasonable Apprehension of Suit**

Visto can not seriously dispute that Sproqit has a reasonable apprehension of suit. Visto sued Sproqit for patent infringement. As the Federal Circuit noted in Arrowhead:

> If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more.

Arrowhead, 846 F.2d at 736. Visto has not withdrawn its claim that the Sproqit Architecture and the Sproqit products infringe the patents in suit. Indeed, Visto's motion reiterates its claim that the Sproqit Architecture and the Sproqit products infringe the patents in suit and actually threatens to renew its motion for a preliminary injunction. Visto Motion at 7, n.3.

Visto's statement that it will dismiss its infringement claims without prejudice and waive any damages for past infringement does not remove Sproqit's reasonable apprehension of suit. As an initial matter, this case has never been about obtaining a substantial damage award. Visto maintained the action and pursued (and renewed) its motion for preliminary injunction even though it knew that Sproqit's sales volume was small. Rather, this case has been about Visto's effort to keep the Sproqit Architecture and the Sproqit products off the market. Despite its magnanimous waiver of past damages, Visto could sue Sproqit at any time for a declaratory judgment that the Sproqit Architecture and the Sproqit products infringe the patents in suit, and for preliminary and permanent injunctive relief. See Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 763-64 (Fed. Cir. 1990) (patent owner may bring declaratory judgment action against accused infringer).

Moreover, Visto ignores key distinctions between the present case and Visto's primary authority, SVG Lithography. First, the patent owner in SVG Lithography (unlike Visto) sought to dismiss its infringement claims **with prejudice**. SVG Lithography, 334 F.Supp.2d at 23, 27. A dismissal with prejudice is an adjudication on the merits with preclusive effect on future suits. Hallco Mfg. Co. v. Foster, 256 F.3d 1290, 1297 (Fed. Cir. 2001). Second, the patent owner in SVG Lithography (unlike Visto) provided an "unconditional promise not to sue." Id. at 26. A covenant not to sue precludes future allegations of infringement. See Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855-56 (Fed. Cir. 1999). Third, the accused infringer in SVG Lithography (unlike

Sproqit) conceded that there was no case or controversy as to alleged past acts of infringement. Id. at 25. Fourth, the accused infringer in SVG Lithography (unlike Sproqit) had discontinued, and had no plans to remarket, the accused product, and had only vague plans to develop new products that might be brought to market and might be accused on infringement. Id. at 25.[3]

Sproqit has a reasonable apprehension of suit and satisfies the first prong of the declaratory judgment test.

**B. Production Of, Or Preparation To Produce, Accused Products**

Sproqit has made, used, offered and sold products which Visto has accused of infringing the patents in suit. Sproqit intends to litigate this case to a successful conclusion and then resume commercial operations, including the marketing and sales of the accused Sproqit Architecture and Sproqit products. Trooien Decl. ¶¶ 4-8. Under the Arrowhead formulation the second prong requires that an accused infringer: "must actually have either produced the device or have prepared to produce that device." Here Sproqit has done both. It has **prepared to produce** and **actually produced** the accused Sproqit Architecture and the accused Sproqit products. Or, under the Sierra Applied Sciences formulation Sproqit has, at a minimum, taken "concrete steps taken with the intent to conduct" allegedly infringing activity. Sierra Applied Sciences, 363 F.3d at 1373.

Even apart from Sproqit's previous sales and offers to sell the products, the millions of dollars and years of effort Sproqit has expended in developing the Sproqit Architecture and getting the Sproqit products ready for market, independently satisfy the second prong of the jurisdictional test. The cases have long made clear that a party may bring a declaratory judgment action even if it has not actually engaged in the accused conduct:

> **The declaratory judgment device enables a plaintiff to obtain a decision** on the infringement question **without requiring him to incur the expenses of actual production or the risk of infringement liability**. . . .

International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1217 (7th Cir. 1980) (emphasis added).

---

3 Should Visto seek to change the basis for its motion in its Reply brief by offering dismissal with prejudice or a covenant not to sue, Sproqit will seek to continue the hearing on Visto's motion so that it can study the newly crafted motion and submit a further brief to the Court.

> [W]ith regard to the second prong, **a declaratory plaintiff need not have actually produced** or be selling **the product at issue as long as it has engaged in** "present activity which could constitute infringement or **concrete steps taken with the intent to conduct such activity**."

Biogen, Inc. v. Schering AG, 954 F.Supp. 391, 396 (D. Mass. 1996), quoting, BP Chemicals, 4 F.3d at 978 (emphasis added).

As these cases demonstrate it is perfectly appropriate for a declaratory judgment plaintiff to file suit when its product is developed and all that remains is production.[4] In such cases the real issue is whether product development has progressed to the point where the design is fixed such that "the product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained." Sierra Applied Sciences, 363 F.3d at 1379, quoting International Harvester, 623 F.2d at 1216. Sproqit meets this standard. The Sproqit Architecture and the Sproqit products are fully developed, as demonstrated by Dr. Head's Declaration and by the fact that the products have actually been produced, marketed and sold commercially.

The development of the Sproqit Architecture and the Sproqit products, at a cost of millions of dollars and years of effort, are sufficient "concrete" steps taken with intent to engage in the allegedly infringing activity. In Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc., 242 F. Supp.2d 311, 317-18 (S.D.N.Y. 2003), the court held that in developing a generic version of a patented drug and applying for FDA approval, the declaratory judgment plaintiff had taken sufficient concrete steps to satisfy the second prong of the jurisdictional test. The Court reached this conclusion even though the declaratory judgment plaintiff did not have "the present ability to market" the drug, lacked FDA approval for the drug, and might not get FDA approval for more than a year (if approval was received at all). Id. at 318.

> [Patent-owner] Kos would have the Court believe that [declaratory judgment plaintiff] Barr has spent in excess of $2.3 million over two years to produce two ANDAs spanning more than 12,000 pages, yet has no intention of ever producing a product covered by those ANDAs.
>
> *  *  *

---

[4] Where the product is software, production – putting the code on disks or on a web site for downloading – is not difficult.

> [W]hile Barr may not have the present ability to market a generic [version of the patented drug], it has embarked upon a protracted and costly process of obtaining regulatory approval, and this conduct illustrates the kind of "concrete steps" or "meaningful preparation" needed to establish an actual case or controversy under "all the circumstances"

Kos Pharmaceuticals, 242 F.Supp.2d at 317-18. See also Infinitech v. Vitrophage, Inc., 842 F.Supp. 332, 337-38 (N.D. Ill. 1994) (declaratory judgment plaintiff's actions in developing drug and seeking FDA approval sufficiently demonstrate intent to bring the product to market and "concrete steps" and "meaningful preparation" needed to establish justiciable controversy).

The cases where declaratory judgment plaintiffs have failed to satisfy the second prong of the jurisdictional test present situations very different from Sproqit's situation in this case. In SVG Lithography, 334 F.Supp.2d at 23, the patent in suit covered a "mirror mount." The mirror mount was one component of a "stepper" product. Id. at 23. The accused infringer had previously sold a stepper that contained the accused mirror mount, but had discontinued that stepper before patent owner filed its motion to dismiss. Id. at 24-25. The accused infringer did not argue in opposition to the motion that it intended to resume sales of the discontinued stepper. Rather, the accused infringer argued that it had plans – not set forth with any specificity – to develop a **new** stepper that incorporated the accused mirror mount. Id. at 24-25. The court found these allegations insufficient:

> The fact that Ultratech "may" in the future wish to incorporate its [accused] Mirror Mount into new products and sell them is not sufficient to satisfy the present infringing activity requirement for subject matter jurisdiction. The "current desire" and amorphous "plans" to use the [accused] Mirror Mount in future steppers that Ultratech avers . . . are not sufficiently concrete steps to support an Article III case or controversy.

SVG Lithography, 334 F.Supp.2d at 25. In the present case, Sproqit is not arguing that it "may" "wish" to develop a new Architecture or new products. Rather, Sproqit intends to market and sell the very Sproqit Architecture and the very Sproqit products that it marketed and sold previously, and which Visto has accused of infringement.

In Heerema Marine Contractors v. Santa Fe International Corp., 582 F.Supp. 445, 447 (C.D. Cal. 1984), another case cited by Visto, the accused product was an ocean-going crane used in the

construction of oil platforms. The court found that the declaratory judgment plaintiff, a marine contractor, was "several steps removed from the potentially infringing activity." Id. at 451. The declaratory judgment plaintiff had not even submitted any bids to perform work in U.S. waters that would involve the use of the accused ocean going crane, let alone had any such bids accepted. Id. at 452. Further, given the long lead times in the industry between acceptance of bids and commencement of work, it was unclear whether any infringing activity could even begin before the patent expired. Id. at 452.

In Sierra Applied Sciences, the declaratory judgment plaintiff had not taken sufficient steps towards infringement to maintain the declaratory judgment action. Sierra Applied Sciences involved three power supply products. The first product, the 2 kW power supply, had been taken off the market 5 or 6 years before the declaratory judgment complaint was filed; the declaratory judgment plaintiff had done little with the product since, and had "no present intention" to bring the product back on market. Sierra Applied Sciences, 363 F.3d at 1376. The second product, the Coleman 150 kW power supply, reached the prototype stage, but the prototype was destroyed in testing and there was no evidence of any effort to resurrect the product. Id. at 1377. (Nevertheless, the Federal Circuit remanded for further fact finding as to this product. Id. at 1377-78.) The third product, the Billings 150 kW power supply, was still in the early stages of development when the declaratory judgment complaint was filed and it was not clear that the design of the product was fixed at the time the declaratory judgment complaint was filed. Id. at 1379.

The present case does not involve a situation where the party seeking a declaratory judgment has not yet developed the accused product or developed and then abandoned the accused product. Sproqit has developed the accused Sproqit Architecture and developed, offered and sold commercial products, the Sproqit Personal Edition and Sproqit Work Group Edition, which are accused of infringing. Sproqit is proceeding with this litigation in order to obtain a declaration that the Sproqit Architecture and the Sproqit products do not infringe the patents in suit, or that those patents are invalid. Upon the successful resolution of this lawsuit, Sproqit will resume commercial operation.

Sproqit has squarely met the requirements of the second prong of the declaratory judgment standard.

**III. The Court Should Exercise Its Discretion To Maintain Jurisdiction**

This Court previously accepted jurisdiction of Sproqit's declaratory judgment counterclaims, and the Court should continue to do so. There must be well-founded reasons for declining to entertain a declaratory judgment action. Capo, Inc. v. Dioptics Medical Products, Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004). When the objectives of the Declaratory Judgment Act are served "dismissal is rarely proper." Id. Declaratory judgment is needed "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." Id. at 1357 (internal citations and quotations omitted). Sproqit's declaratory judgment counterclaims present a justiciable controversy and serve the objectives of the Declaratory Judgment Act. The Court properly exercised its discretion to hear those counterclaims and it should continue to do so.

**CONCLUSION**

For the reasons stated above, Visto's motion to dismiss should be denied.

Respectfully submitted,

Dated: August 9, 2006

DORSEY & WHITNEY LLP

By: /s/ Sri K. Sankaran ____________________
Sri K. Sankaran
Attorney for Defendant
Sproqit Technologies, Inc.

4844-9598-9505\1