1   **MANATT, PHELPS & PHILLIPS, LLP**
RONALD S. KATZ (State Bar No. 85713)
2   ROBERT D. BECKER (State Bar No. 160648)
GREG T. WARDER (State Bar No. 209966)
3   1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
4   Telephone:     (650) 812-1300
Facsimile:      (650) 213-0260
5
*Attorneys for Plaintiff*
6   VISTO CORPORATION

7

8                    UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT

10                   SAN FRANCISCO DIVISION

11   VISTO CORPORATION,                     Case No.  C 04-0651 EMC

12              Plaintiff,                   **PLAINTIFF VISTO CORPORATION'S
                                            BRIEF RE: COURT'S TENTATIVE CLAIM
13        v.                                 CONSTRUCTION ORDER**

14   SPROQIT TECHNOLOGIES, INC.,

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

                                            VISTO'S SUPPLEMENTAL BRIEF IN SUPPORT
                                            OF ITS CLAIM CONSTRUCTION
                                            CASE NO. C 04-0651 EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   DISCUSSION

Pursuant to the Court's Order of August 4, 2006, the parties have met and conferred to discuss the construction of the term "workspace element," but were unable to reach an agreement on the proposed or alternative constructions.

### A.   The Court's Tentative Construction of "Workspace Element"

For the '192 and '131 patents, the Court construed workspace element as:

> A basic unit of workspace data such as an e-mail, file, bookmark, or calendar. While a portion of a basic unit is not necessarily a workspace element, a basic unit is still a workspace element so long as all significant or important components of that unit are present. For example, a single field of an e-mail is not a workspace element, but an e-mail is still a workspace element even if it does not contain each and every field present; in other words, an e-mail is still a workspace element so long as all significant or important fields are present.

[*See* Docket No. 199, p. 14.]  The proposed construction for the '708 patent  includes substantially the same language, with the added workspace element category of a "folder."

In view of the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), the Court relied heavily on the specifications of the patents-in-suit to elucidate the meaning of the term "workspace element."  The Court stated:

> ...the [Federal Circuit] has also recently reiterated that 'the specification is always highly relevant to the claim construction analysis.  Usually, it is *dispositive;* it is the single best guide to the meaning of a disputed term.  *Phillips,*  415 F.3d at 1315 ... *see also id.* at 1317 (stating that it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims").  [Docket No. 199, p. 3.]

While the Court's proposed constructions reflect certain segments of the written description, they improperly omit other express categories of workspace elements, such as "documents" and "user data."  *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)("a claim construction that would exclude the preferred embodiment is rarely, if ever, correct.").

The Court has further included in its definition the concept of "a basic unit" and a discussion of "significant or important" e-mail "fields," despite the fact that e-mail is *merely exemplary* and fields are *never* mentioned in any of the patents-in-suit. This is erroneous. As the federal Circuit recently explained in *Phillips*, the descriptions in the specification can limit the apparent breadth of a claim in two instances: (1) where the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

OPENING CLAIM CONSTRUCTION BRIEF OF
PLAINTIFF VISTO CORPORATION
CASE NO. C 04-0651 EMC

1 possess; and (2) where the specification reveals an intentional disclaimer, or disavowal, of claim

2 scope by the inventor. 415 F.3d at 1316. This case does not feature either reason to read a

3 limitation from the specification into the claims. Thus, the standard rule that a claim construction

4 should decline to incorporate additional limitations from the specification governs. *See Comark*

5 *Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998).

6 In a recent case similar to the present situation, *Pfizer Inc. v. Ranbaxy Labs.*, 2006 U.S.

7 App. LEXIS 19416 at 12 (Fed. Cir. 2006), the Federal Circuit rejected the argument that a class

8 of chemical compounds recited in the claims should be limited to a specific category of that class

9 which was described by way of example in the specification:

10
11
12

> while the examples do describe reaction sequences that produce racemates, restricting claim 1 on this basis would improperly import limitations from the specification into the claims, which should be avoided unless the patentee clearly 'intends for the claims and the embodiments in the specification to be strictly coextensive.' *Phillips*, 415 F.3d at 1323. But here, the specification, at col. 10, ll. 36-38, states that '[t]hese examples are illustrative and are not to be read as limiting the scope of the invention as it is defined by the appended claims.'

13 In the same manner, the patents-in-suit indicate that the various descriptions of

14 workspace elements, such as e-mails, are merely exemplary. [*See, e.g*, '192 patent, col. 7, ln. 59-

15 62 ("The foregoing description of the preferred embodiments is by way of example only").]

16
17

**B.**      **Visto's Proposed Modification To Court's Tentative Construction Of Workspace Element**

18 Visto proposes the following modifications to the Court's tentative order for the term

19 "workspace element" in the '192 and '131 patents, which are consistent with the intrinsic

20 evidence, the Court's own proposed definition and the objects of the invention:[1]

21
22

> *A portion of workspace data such as an e-mail, file, bookmark, calendar, document, or other user data. While a portion of workspace data is not necessarily a workspace element, a portion is still a workspace element so long as it may be modified and synchronized with an independently modifiable copy of the workspace element.*

23 Similarly, for the '708 patent, Visto proposes the following modification:

24
25
26

> *A portion of workspace data such as an e-mail or e-mail folder, file or file folder, calendar or calendar folder, bookmark or bookmark folder, document or document folder, or other user data. While a portion of workspace data is not necessarily a workspace element, a portion is still a workspace element so long as it may be modified and synchronized with an independently modifiable copy of the workspace element.*

27
28

---

[1] While providing proposed modifications to the Court's construction, Visto continues to maintain its prior arguments that "workspace element" should be construed in the same manner as in the *Visto v. Seven* action.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2          OPENING CLAIM CONSTRUCTION BRIEF OF
PLAINTIFF VISTO CORPORATION
CASE NO. C 04-0651 EMC

**C.**   **The Written Description Expressly States That A Workspace Element May Be A "Document" Or Other Types of "User Data"**

The Court's construction for the '192 and '131 patents states that a workspace element is a basic unit of workspace data "such as an e-mail, file, bookmark, or calendar." The construction for the '708 patent includes the same categories of data, as well as folders. The written description for the patents-in-suit, however, expressly states that workspace elements may be comprised of other categories of workspace data, such as "documents" (and "document folders" in the '708 patent):

> For example, when maintaining multiple independently-modifiable copies of a document, a user risks using an outdated version. ['192 patent, col. 1, ln. 31-33; '708 patent, col. 1, ln. 25-28.]

> A system and method are needed ... for synchronizing multiple copies of a workspace element such as a document. ['192 patent, col. 1, ln. 45-49; '708 patent, col. 1, ln. 53-56.]

> Accordingly, each ... document or document folder, etc. may be referred to as a workspace element. ['708 patent, col. 3, ln. 26-29.]

The written description, including that of Application Nos. 08/766,307 and 08/841,950 which are incorporated by reference into all of the patents-in-suit, also describes further categories of "user data" as comprising workspace elements:

> It will further be appreciated that the e-mail data 165, file data 170, calendar data 175 and user data 180 may each be divided into workspace elements. ['192 patent, col. 3, ln. 26-28.]

> Accordingly, the locator module 415 determines the memory addresses of ... the workspace elements in the user data 180. ['192 patent, col. 5, ln. 24-28.]

> the service engine 245 operates on service data 250 (e.g., the e-mail data 165, the file data 170, the calendar data 175 or the user data 180) ['192 patent, col. 4, ln. 28-30.]

> User data 392 may include user-and-service-specific information such as stored bookmarks, calendar data, pager numbers, etc. ['950 application, p. 17.]

> The service data 496 may include previously generated documents, database information, etc. ['950 application, p. 19; '307 application (now U.S. Pat. No. 6,131,116), col. 6, ln. 14-17.]

Based on the express disclosure of the specification, a workspace element is not limited to the categories of "an e-mail, file, bookmark, or calendar" set forth by the Court. Instead, it should also include at least the categories of "documents" and "user data" found in the specification. "[U]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d at 1342.

**D.**   **Construing A Workspace Element In Terms Of A "Basic Unit" Departs From The Plain Language Of The Specification**

The Court's construction further includes the concept that a workspace element is "a basic unit of workspace data." The term "basic unit" is not found in the written description of any of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3

the patents-in-suit, and none of the exemplary embodiments characterize a workspace element in such a manner.   Rather, the express language of the written description repeatedly frames workspace elements in terms of "portions" of workspace data:

> Accordingly, a client user who maintains a work site, a home site, an off-site and the global server site can synchronize the workspace data or portions thereof among all four sites. ['192 patent, col. 2, ln. 34-37; '708 patent, col. 2, ln. 20-23.]

> The global server stores independently-modifiable copies of selected portions of the workspace data 136 and 116, collectively referred to herein as workspace data 120. Accordingly, the workspace data 120 includes an independently-modifiable copy of each workspace element in the selected portions of the workspace data 136 and 116.  ['708 patent, col. 3, ln. 67 – col. 4, ln. 5.]

> The base system 146 and the synchronization agent 124 cooperate to synchronize selected portions of the workspace data 136 with selected portions of the workspace data 120.  The synchronization means may synchronize workspace elements individually, e.g., specific word processor documents, or may synchronize workspace element folders, e.g., a bookmark folder. ['708 patent, col. 4, ln. 28-34.]

Accordingly, Visto submits that the construction of a workspace element should be defined in terms of "a portion of workspace data," rather than "a basic unit of workspace data."

### E.      Including A Description of E-Mail Fields Improperly Limits The Definition Of "Workspace Element"

The Federal Circuit has expressly stated that claims should not be construed with reference to infringement arguments. *See Sri Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985). The discussion of fields arose only after Sproqit made non-infringement arguments during the preliminary injunction briefing directed towards whether all "fields" of an e-mail originating at a server must be copied over to the smartphone. [*See* Docket No. 110, Opp. to Motion for PI, p. 6.]  In response, Visto has pointed out that an e-mail does not require all the fields listed by Sproqit. [*See* Docket No. 166, Claim Const. Brief, p. 11 ("An e-mail with less than all its fields, is still an e-mail and hence a workspace element").]

Faced with these competing infringement arguments, the Court decided to address the issue by including language directed to "fields" of an e-mail in its construction of "workspace element."   Notably, however, the term "e-mail" is not a term used in any of Visto's patent claims.   The claims refer only to "workspace element", "workspace data" or "independently modifiable copy the first workspace element".  Furthermore the specification of the patents-in-suit are silent on the issues of specific data "fields."   Therefore, a construction including language specifically addressing the fields of an e-mail is unnecessary and improper.

4                    OPENING CLAIM CONSTRUCTION BRIEF OF
PLAINTIFF VISTO CORPORATION
CASE NO. C 04-0651 EMC

1    The Court has, on the other hand, correctly recognized that the importance of the

2  invention resides in the utility of synchronization. [*See* Order at 13 ("The nature of the invention

3  as described in the specifications clearly contemplates that a workspace element be sufficiently

4  complete and independently coherent so that there is utility to the synchronization of the

5  workspace elements contemplated by the patents.").]  Therefore, Visto's proposed modification

6  indicates that a portion of workspace data may be a workspace element "so long as it may be

7  modified and synchronized with an independently modifiable copy of the workspace element."  This

8  language demonstrates the significance of the term "workspace element" is that it is capable of

9  being selected from the "workspace data" for synchronization.  It is further consistent with the

10  description that synchronization is focused on the data that is changed or modified:

11    Appropriate synchronizing responsive actions may include forwarding the modified version (as
     the preferred version) of a workspace element in workspace data 185 or forwarding just a
12     compilation of the changes to the other stores. ['192 patent, col. 5, ln. 61-65.]

13    general synchronization module 425 sends the preferred version or the changes to general
     synchronization module 510 to update the outdated workspace element. ['192 patent, col. 7,
14     ln.50-53.]

     Appropriate synchronization responsive actions may include ... forwarding the modified version
15     ... or determining and forwarding only the changes made. ... It will be appreciated that one store
     preferably forwards only the changes to the other store.  ['708 patent, ln. 35-46.]

16    **F.      Sproqit's Proposed Construction of "Workspace Element**

17    Sproqit has indicated that "Sproqit's position is that the construction proposed in its claim

18  construction brief and at the claim construction hearing is the most appropriate construction for

19  the term."  In view thereof, Visto submits that its comments on Sproqit's alternative construction

20  set forth in the previous briefing remain applicable and incorporates them herein by reference.

21

22  Dated:  August 14, 2006                    Respectfully submitted,

23                                            MANATT, PHELPS & PHILLIPS, LLP

24                                            /s/Robert D. Becker
                                              Robert D. Becker
25                                            CA State Bar No. 160648
                                              1001 Page Mill Road, Building 2
26                                            Palo Alto, CA  94304
                                              Telephone:  650-812-1300
27                                            Facsimile:  650-213-0260
                                              *Attorneys for Visto Corporation*

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

OPENING CLAIM CONSTRUCTION BRIEF OF
                                            PLAINTIFF VISTO CORPORATION
                                            CASE NO. C 04-0651 EMC