United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTO CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SPROQIT TECHNOLOGIES, INC.<br><br>　　　　Defendant.<br>_____/ | No. C-04-0651 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS BASED ON COVENANT NOT TO SUE; AND FINDING MOOT PLAINTIFF'S MOTION TO DISMISS AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER**<br><br>**(Docket Nos. 192, 213)** |

　　　　Plaintiff Visto Corporation has moved the Court to dismiss the entire case, both its claims and Defendant Sproqit Technologies, Inc.'s counterclaims. According to Visto, the case should be dismissed because it has extended to Sproqit a covenant not to sue and accordingly there is no case or controversy. Having considered the parties' briefs and accompanying submissions, the Court hereby GRANTS the motion to dismiss.

## I.　FACTUAL & PROCEDURAL BACKGROUND

　　　　On July 17, 2006, Visto filed a motion to dismiss the entire case. *See* Docket No. 192. In the motion, Visto argued in part that the Court should dismiss Sproqit's counterclaims because there is no case or controversy and accordingly no subject matter jurisdiction. According to Visto, there is no case or controversy because it is willing to waive damages for past infringement and Sproqit is a defunct business. Sproqit opposed the motion to dismiss and, in support of its opposition, Sproqit submitted a declaration from its president Gerald Trooien. In the declaration, Mr. Trooien stated,

*inter alia*, that "[o]nce this case is litigated to a successful conclusion Sproqit will resume commercial operations, marketing its technology and products as superior solutions that are free of any claim of infringement." Trooien Decl. ¶ 6.

On August 30, 2006, the Court held a hearing on Visto's motion to dismiss as well as Sproqit's motion for a protective order (to defer the deposition of Mr. Trooien). *See* Docket No. 213. During the hearing, the Court indicated that it would defer ruling on the motion to dismiss in order to give Visto an opportunity to depose Mr. Trooien. Visto declined to take the deposition of Mr. Trooien and instead extended to Sproqit a covenant not to sue. Relying on *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995), Visto argued that, in light of the covenant not to sue, the case should be dismissed on the basis of lack of a case or controversy. The Court ordered the parties to meet and confer on the covenant not to sue and provide supplemental briefing as to whether the covenant did in fact divest the Court of jurisdiction but otherwise stayed the litigation from proceeding. After supplemental briefing was provided on September 8, 2006, the Court determined that the parties had failed to adequately meet and confer and therefore instructed the parties to meet and confer a second time and then provide supplemental briefing.

## II. DISCUSSION

Visto extended to Sproqit the following covenant not to sue:

> Visto will unconditionally agree not to assert any claim of patent infringement against Sproqit under the claims of the patents-in-suit as they presently read, with respect to any product currently advertised, manufactured, marketed or sold by Sproqit, or any product which was advertised, manufactured, marketed or sold by Sproqit prior to the date of this covenant. This covenant is personal to Sproqit and is not transferable.

Pl.'s Supp. Br. at 1-2. The main question for the Court is whether this covenant divests the Court of jurisdiction with respect to Sproqit's declaratory judgment counterclaims.

A declaratory judgment counterclaim may only be brought to resolve an "actual controversy." 28 U.S.C. § 2201(a). "[T]he actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Super Sack*, 57 F.3d at 1058 (internal quotation marks omitted). Under Federal Circuit law, in the patent context, there is a case or controversy with

2

respect to a declaratory judgment counterclaim when there is (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. *See id.* The burden is on Sproqit "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed." *Id.* (internal quotation marks omitted).

As noted above, Visto argues that its covenant not to sue divests the Court of jurisdiction over Sproqit's counterclaims based on *Super Sack*. In *Super Sack*, the Federal Circuit examined whether a declaratory plaintiff had a reasonable apprehension of suit when the declaratory defendant had extended a covenant not to sue. *See id.* at 1058-59. The covenant not to sue stated: "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056 (emphasis omitted). The Federal Circuit commented as follows:

> The legal effect of Super Sack's promise not to sue is the heart of the matter, and the trial court acted consistently with that legal effect. In short, although Chase may have some cause to fear an infringement suit under the '796 and '652 patents based on products that it may develop in the future, Chase has no cause for concern that it can be held liable for any infringing acts involving products that it made, sold, or used on or before July 8, 1994, the day Super Sack filed its motion to dismiss for lack of an actual controversy. As to the '796 and '652 patents, Super Sack is forever estopped by its counsel's statement of nonliability, on its face and as explained during oral argument before this court, from asserting liability against Chase in connection with any products that Chase made, sold, or used on or before July 8, 1994. This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over this case. Because Chase can have no reasonable apprehension that it will face an infringement suit on the '796 and '652 patents with respect to past and present products, it fails to satisfy the first part of our two-part test of justiciability.

*Id.* at 1059.

The Federal Circuit rejected the declaratory plaintiff's argument "that Super Sack's promise not to sue fails to eliminate the controversy between them because, however absolute it may be with respect to past and present products, the promise does not cover products that Chase may make, sell, or use in the future." *Id.* The court explained that, under the second part of the declaratory

3

1  justiciability test, the alleged infringer must be engaging in present activity that places it at risk of
2  infringement liability.

> Chase has, of course, never contended that it has already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe. And Super Sack's promise not to sue renders any past or present acts of infringement that Chase may or may not have committed irrelevant to the question whether a justiciable controversy remains. The residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity.

*Id.* at 1059-60.

In the instant case, Visto claims that its covenant not to sue is exactly like the covenant not to sue offered by the declaratory defendant in *Super Sack*. Sproqit contends otherwise. More specifically, Sproqit argues that *Super Sack* is not dispositive and Visto's covenant does not divest the Court of jurisdiction: (1) because the covenant fails to identify the accused products; (2) because the covenant does not extend to future products that are, in essence, functionally equivalent to the products covered by the covenant; (3) because the covenant does not address inducement or contributory infringement by Sproqit; (4) because the covenant does not cover Sproqit's customers, licensees, or other authorized users; (5) because the covenant does not cover Sproqit's successors or acquirers; (6) because the covenant does not cover Visto's successors; and (7) because the covenant does not extend to re-examination claims. Sproqit further contends that, if Visto's covenant is deemed adequate, then Visto's claims should be dismissed with prejudice and Sproqit's counterclaims without prejudice. Each argument is addressed below.

At the outset, however, it should be noted that this Court, even prior to Visto's issuance of the covenant not to sue, had serious questions about the justiciability of this suit in light of Visto's waiver of claim for damages and undisputed information that Sproqit had ceased doing business and was no longer selling the accused products. Under these circumstances, Sproqit was not currently engaged in infringing activity and there was considerable doubt as to the immediacy and concreteness of its intent and ability to do so in the future. *See Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1372 (Fed. Cir. 2004) ("In the declaratory-judgment context, 'the question in each case is whether the facts alleged, under all the circumstances, show

4

1  that there is a substantial controversy, between parties having adverse legal interests, of sufficient
2  immediacy and reality to warrant the issuance of a declaratory judgment.'"). Justiciability hinged on
3  the rather conclusory assertions of Mr. Trooien that "[o]nce this case is litigated to a successful
4  conclusion Sproqit will resume commercial operations . . . ." Trooien Decl. ¶ 6. It was when the
5  Court directed the parties to engage in further discovery to flesh out Mr. Trooien's statements that
6  Visto issued the covenant not to sue.

A. <u>Identification of Accused Products</u>

Sproqit argues first that the covenant is inadequate because it does not identify the accused products. According to Sproqit, the accused products should be explicitly identified in the covenant. Sproqit, however, provides no authority to support its argument. Moreover, it appears that the covenant is actually broader by not identifying specific products. Sproqit has not shown otherwise. Nor has Sproqit shown that it plans to manufacture or sell other products not covered by the covenant. Accordingly, the Court rejects Sproqit's argument that *Super Sack* is inapposite for this reason.

B. <u>Future Products That Are Functionally Equivalent</u>[1]

Sproqit's second argument is that the covenant is inadequate because Visto has "apparently take[n] the position that its covenant is limited to products advertised, manufactured, marketed, or sold, with no changes permitted, major, minor or otherwise." Def.'s 2d Supp. Br. at 2 (emphasis omitted). The Court is not persuaded by Sproqit's argument.

First the covenant does not state that it is so limited. Should an enforcement issue arise, it is not clear that Visto's covenant not to sue will be so interpreted. In *Glenayre Elecs., Ltd. v. Polansky Elecs., Ltd.*, No. 90-1255 (RCL), 1994 U.S. Dist. LEXIS 8631 (D.D.C. Mar. 31, 1994), the court stated that "plaintiff's concern that it will be unable to modify its existing products without fear of a lawsuit is unfounded . . . [a]s long as plaintiff does not make any material changes to its [product] line." *Id.* at *6.

---

[1] Sproqit makes a variation of this argument in asserting that the covenant is deficient because a direct infringer could make a trivial modification to the accused products and that Sproqit could thereby be held liable for indirect infringement.

Second, this is not a situation where Sproqit "has developed and imminently plans to release new versions of its products." *BIS Advanced Software Sys., Ltd. v. Red Bend Software, Inc.*, No. 04-11960-RWZ, 2006 U.S. Dist. LEXIS 12223, at *4 (D. Mass. Mar. 22, 2006). No such evidence has been presented to the Court. Nor has Sproqit submitted evidence that it regularly updates its products. *See id.* at *3 ("Because defendant regularly updates its products, . . . it is still vulnerable to an infringement suit."). Thus, the issue of the application of the covenant to functionally equivalent variations is at this point speculation.

Finally, even if the Sproqit Architecture is, "by its very nature, . . . a flexible construct that can be used to form the backbone of many different applications and solutions," Def.'s 2d Supp. Br. at 2, *Super Sack* is clear that "[t]he residual possibility of a future infringement suit based on [the declaratory plaintiff's] future acts is simply too speculative a basis for jurisdiction over [the] counterclaim for declaratory judgments of invalidity." *Super Sack*, 57 F.3d at 1060.

C. <u>Inducement or Contributory Infringement by Sproqit</u>

Sproqit's next contention is that the covenant is inadequate because it does not clearly cover indirect infringement by Sproqit. Sproqit notes that, in its complaint, Visto asserted both inducement and contributory infringement as well as direct infringement for all four patents at issue.

In briefing filed by Visto on September 15, 2006, Visto clarified that "the covenant covers both direct and indirect infringement, including contributory infringement and inducement, where the directly infringing product is one which was advertised, manufactured, marketed or sold by Sproqit on or before the date of the covenant." Pl.'s Memo. at 2. The Court understands Visto's representation also covers products currently advertised, manufactured, marketed, or sold as of the date of the covenant in accord with the terms quoted above. Accordingly, this issue is moot.

D. <u>Sproqit's Customers, Licensees, or Other Authorized Users</u>

Sproqit further asserts that covenant is insufficient as it does not cover its customers, licensees, or other authorized users. In its September 15 briefing, Visto concedes that "[t]he [c]ovenant [c]overs Sproqit's [c]ustomers, [l]icensees, [o]r [o]ther [a]uthorized [u]sers [o]f Sproqit's [e]xisting [p]roducts, [b]ut [n]ot [o]f [f]uture [u]nnamed [c]ustomers on [f]uture [u]nnamed

6

1  [p]roducts."[2] *Id.* The Court agrees with Visto based on *Microchip Tech., Inc. v. Chamberlain
2  Group*, 441 F.3d 936 (Fed. Cir. 2006) that is the exclusion of future unnamed customers of future
3  unnamed products does not create a justiciability controversy.

4  In *Microchip*, the Federal Circuit held that there must "be an underlying legal cause of action
5  that the declaratory defendant could have brought or threatened to bring" in order for the declaratory
6  plaintiff to have a reasonable apprehension of a future suit. *Id.* at 943. In this case, Sproqit itself has
7  no reasonable apprehension based on its customers, licensees, or other authorized users because
8  Visto has admitted that the covenant covers indirect infringement as well as direct, and Visto has
9  stipulated to customers, licensees and authorized users of Sproqit's existing products.

10 While the Federal Circuit noted that it is possible for a declaratory plaintiff's customers to
11 have an adverse legal interest with respect to the declaratory defendant, there was no such interest in
12 *Microchip*, because plaintiff's customers "were not parties to this action" and the declaratory
13 plaintiff did not "establish[] a legal relationship between it and a customer that had a legal interest
14 adverse to [the declaratory defendant], such as the existence of an indemnity agreement between [the
15 declaratory plaintiff] and its customer." *Id.* At best, the declaratory plaintiff "had only an economic
16 interest in clarifying its customers' rights under [the] patents [at issue], which may have facilitated
17 the sale of [the declaratory plaintiff's] products," but "an economic interest alone . . . cannot form
18 the basis of an 'actual controversy'" because the declaratory plaintiff "was under no threat of legal
19 harm." *Id.*

20 In the instant case, Sproqit has not provided any evidence that it has an indemnification
21 agreement with any of its customers. Nor has it submitted any evidence indicating that Visto has
22 made any threats to Sproqit's customers. *Compare Intellectual Property Development, Inc. v. TCI
23 Cablevision of California, Inc.*, 248 F.3d 1333, 1341 (Fed. Cir. 2001) (potential suit against entity
24 entitled to indemnification from accused not sufficient to preserve justiciability). Accordingly, at
25 best, Sproqit has only an economic interest in clarifying its customers' rights. That interest is even

---

[2] Sproqit argues that, because the covenant does not extend to future customers, licensees, and authorized users, it "does not dissipate the justiciable controversy before the court." Def.'s 2d Supp. Br. at 3. Sproqit, however, has misread Visto's brief. Visto states that the covenant does cover customers -- just not customers on *future products*.

1 further attenuated given Visto's stipulation that existing customers are covered by its covenant. As
2 in *Microchip*, any economic interest of Sproqit is insufficient to create a case or controversy.

3 E. <u>Sproqit's Successors or Acquirers</u>

4 Sproqit asserts that the covenant is insufficient because it does not extend to its successors or
5 acquirers. Visto in turn argues that the covenant may be personal and nontransferable, citing in
6 support *Inline Connection Corp. v. Atlantech Online, Inc.*, 85 Fed. Appx. 767, 769 (Fed. Cir. 2004)
7 ("Future disputes relating to Atlantech's successors in interest and others in privity with Atlantech
8 are just that -- future disputes. They must be left to future cases and are not ripe for consideration in
9 this case."), and *Vision Biosystems (USA) Trading, Inc. v. Ventana Med. Sys., Inc.*, No. 03-10391-
10 GAO, 2004 U.S. Dist. LEXIS 21449, at *31 (D. Mass. Sept. 30, 2004) ("The possibility that Vision
11 might transfer certain interests in the future to an unidentified third party remains remote and
12 speculative and does not demonstrate a live controversy between the present parties.").

13 Sproqit criticizes Visto's reliance on *Inline* because it is an unpublished case, *see* Fed. Cir. R.
14 47.6(b) ("An opinion or order which is designated as not to be cited as precedent is one unanimously
15 determined by the panel issuing it as not adding significantly to the body of law. Any opinion or
16 order so designated must not be employed or cited as precedent."), and *Vision Biosystems* to the
17 extent it relies on *Inline*. While *Inline* is an unpublished case, and therefore not precedential, the
18 Court is not barred from examining its reasoning and adopting that reasoning if persuasive. As for
19 *Vision Biosystems*, it did not expressly rely on *Inline*, simply making note of the case in a footnote.
20 *See Vision Biosystems*, 2004 U.S. Dist. LEXIS 21449, at * 32 n.2.

21 The Court holds that the covenant is adequate even though it does not extend to Sproqit's
22 successors or acquirers. In *Super Sack*, the Federal Circuit stated that "[t]he residual possibility of a
23 future infringement suit based on [the declaratory plaintiff's] future acts is simply too speculative a
24 basis for jurisdiction over [the] counterclaim for declaratory judgments of invalidity." *Super Sack*,
25 57 F.3d at 1060. Although the Federal Circuit made this statement in the context of future products,
26 the same reasoning would apply to future successors or acquirers. As noted above, even before
27 Visto issued the covenant not to sue herein, Visto had raised a substantial argument that Sproqit's
28 asserted intent to produce and sell the accused product once this case was terminated in its favor was

1  insufficient to establish justiciability. While the Court does not rely on the current record to find
2  nonjusticiability on this factor alone, the additional layer of events that would have to transpire
3  before a potential successor would come into play exacerbates the remoteness of the purported
4  controversy here. Sproqit has presented no evidence of any imminent or concrete plan or ability to
5  sell or assign its intellectual property to a successor.

F.  Re-examination Claims

Sproqit contends next that the covenant is inadequate because it does not extend to re-examination claims. Sproqit highlights the fact that the '708 patent is currently in reexamination -- all of the original claims in the '708 patent have already been rejected as invalid over the prior art and that Visto has therefore amended the claims of the '708 patent and added new claims in the reexamination process. Sproqit also notes that the '192 patent was sent back into reexamination in August 2006 and that a request for reexamination has been made with respect to the '221 patent.

The problem for Sproqit is that its argument is foreclosed by *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991). In *Spectronics*, the Federal Circuit found that a declaratory judgment plaintiff did not have a reasonable apprehension about a future suit based on a pending reissue application. The court explained that "[t]here is . . . no guarantee that the reissue patent will eventually issue" and added that, even if the plaintiff did have a reasonable apprehension about a future suit based on the reissue patent, the plaintiff could not "demonstrate that its present activity is potentially infringing of any patent claims, since . . . no reissue patent claims yet exist by which infringement *vel non* can be measured." *Id.* at 636; *see also Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) ("[T]he future existence of a reissue patent is wholly speculative and, therefore, cannot create a present controversy."). While *Spectronics* and *Amana* dealt with reissue applications, the same reasoning would apply to reexamination. *See Vision Biosystems*, 2004 U.S. Dist. LEXIS 21449, at *32 ("Vision's concern that some claims may emerge from the PTO's reexamination of the '439 patent is too speculative and does not provide a basis for jurisdiction at this time.").

Sproqit tries to distinguish *Spectronics*, stating that in that case, the patent owner initiated reissue proceedings "before extensive litigation." Def.'s Supp. Br. at 8. But nothing in *Spectronics*

1 indicates that the Court's ruling was based on, or even took into account, whether the litigation was
2 in the early or late stage of proceedings. The point remains that what ultimately emerges from the
3 PTO is still speculative and, until the precise form of the claim is fixed and presented, Sproqit's
4 assertion of noninfringement are not sufficiently concrete to measure.[3]

G. <u>Dismissal With or Without Prejudice</u>

For the foregoing reasons, the Court rejects Sproqit's arguments that Visto's covenant not to sue is inadequate and further holds that the covenant divests the Court of jurisdiction over Sproqit's declaratory relief counterclaims as well as Visto's claims.

Sproqit's final contention is that the dismissal of its counterclaims should be without prejudice and Visto's claims with prejudice. Sproqit notes that that approach was taken by the Federal Circuit in *Intellectual Property Development*, 248 F.3d at 1342 (holding that "the statement of non-liability divested the district court of Article III jurisdiction, and therefore the district court properly granted the motion to dismiss [plaintiffs'] complaint with prejudice and [defendant's] counterclaims without prejudice"). Visto does not argue otherwise. The Court agrees that Sproqit's counterclaims should be dismissed without prejudice and that Visto's claims, in light of its covenant not to sue issued herein, should be dismissed with prejudice. That is the approach taken by the courts which have addressed the issue. *See, e.g.*, *Intellectual Property Development*, 248 F.3d at 1349; *Inline*, 2004 U.S. App. LEXIS 771, at *6. Whereas Visto's asserted claims are forever barred by the covenant and thus warrant dismissal with prejudice[4] (*see Super Sack*, 57 F.3d at 1060; *BIS Advanced Software Systems*, 2006 U.S. Dist. LEXIS 12223, at *5; *Glenayre Electronics*, 1994 U.S. Dist. LEXIS 8631, at *12), Sproqit's counterclaims are dismissed on grounds of mootness only. *See MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 970 (Fed. Cir. 2005) ("[W]e have stated that a

---

[3] *Spectronics* holds that original claims reissued without substantive change would be subject to the covenant not to sue and that there is cause to fear a suit for future infringement only of "substantively non-identical claims." *Spectronics*, 940 F.2d at 637. That fear is not sufficient to confer justiciability.

[4] Sproqit's concern that Visto's covenant did not expressly state it was binding on Visto's successors are obviated by the dismissal with prejudice. The Court notes that, even though counsel's statement in *Super Sack* did not expressly refer to Super Sack's successor, the court in *Intellectual Property Development* held that statement in *Super Sack* bound any successor. *See Intellectual Property Development*, 248 F.3d at 1340.

dismissal for lack of subject matter jurisdiction is usually one without prejudice because the dismissing court has no power to render a judgment on the merits of the dismissed claim."); *Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1380 (Fed. Cir. 2001) (noting that "the case-or-controversy requirement is a component of subject matter jurisdiction"); *cf. Knauf Fiber Glass, GmbH v. Certainteed Corp.*, No. 1:02-cv-1215-DFH, 2004 U.S. Dist. LEXIS 6291, at *3 n.1 (N.D. Ind. Mar. 24, 2004) ("Although *Super Sack* itself affirmed dismissal with prejudice, later Federal Circuit law makes clear that dismissal of counterclaims in response to a *Super Sack* declaration should be without prejudice [citing *Intellectual Property Development*]. Dismissal for lack of subject matter jurisdiction is ordinarily without prejudice, of course, because the court has not adjudicated the merits of the claim and the decision does not bar a future decision on the merits.").

### III.   CONCLUSION

For the foregoing reasons, the Court grants Visto's motion to dismiss based on the covenant not to sue. Visto's claims are dismissed with prejudice. Sproqit's counterclaims are dismissed without prejudice. Visto's prior motion to dismiss (Docket No. 192) and Sproqit's motion for a protective order (Docket No. 213) are moot.

The Clerk of the Court is ordered to enter final judgment and close the file in this case.

IT IS SO ORDERED.

Dated: October 4, 2006

EDWARD M. CHEN
United States Magistrate Judge