UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTO CORPORATION,<br><br>    Plaintiff,<br><br>       v.<br><br>SPROQIT TECHNOLOGIES, INC.,<br><br>    Defendant.<br>_____/ | No. C-04-0651 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO VACATE ALL INTERLOCUTORY ORDERS**<br><br>**(Docket No. 232)** |

On February 17, 2004, Plaintiff Visto Corporation filed suit against Defendant Sproqit Technologies, Inc. for patent infringement. The litigation proceeded for more than two years. The Court conducted a claim construction hearing and issued a partial claim construction order. The Court ordered additional briefing on the claims construction. Visto moved to dismiss the case on grounds of mootness. After the Court indicated further discovery would be appropriate in order to rule on the motion, Visto decided to extend to Sproqit a covenant not to sue. *See* Docket No. 218 (civil minutes of August 30, 2006).

Based on the covenant not to sue, the Court dismissed Visto's claims for infringement with prejudice and Sproqit's counterclaims without prejudice. *See* Docket No. 231 (order of October 4, 2006). The next day, Visto filed a motion to vacate all interlocutory orders issued by the Court, including not only administrative orders (*e.g.*, scheduling orders) but also substantive orders -- most notably, the Court's partial claim construction order. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Visto's motion to vacate.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

As noted above, this case was filed on February 17, 2004, and was litigated for more than two years. On July 17, 2006, shortly after the Court held a claim construction hearing and before the Court rendered its construction on all of the selected terms, Visto filed a motion to dismiss the entire action. Visto argued that dismissal was appropriate because there was no longer any case or controversy since Sproqit was a defunct business and Visto was willing to waive damages for past infringement. In response, Sproqit argued that (1) it had a reasonable apprehension of suit given that Visto had sued Sproqit for patent infringement and would not provide an unconditional promise not to sue in the future and (2) Sproqit had prepared to produce and actually produced the two accused products and that it was planning to resume business if it prevailed in this suit. In support of its position, Sproqit submitted the declaration of its president, Gerald Trooien. In the declaration, Mr. Trooien stated that "the current focus of Sproqit's business" is the current litigation, through which Sproqit will "vindicate its right to make, use, offer and sell the accused technology and products," Trooien Decl. ¶ 4, and that, "[o]nce this case is litigated to a successful conclusion Sproqit will resume commercial operations, marketing its technology and products as superior solutions that are free of any claim of infringement." *Id.* ¶ 6.

While claim construction was still pending, the Court held a hearing on Visto's motion to dismiss -- as well as a motion for a protective order filed by Sproqit to defer the deposition of Mr. Trooien -- on August 30, 2006. At the hearing, the Court indicated that it would defer ruling on Visto's motion to dismiss so that Visto could depose Mr. Trooien in order to test the assertions made in his declaration. Visto, however, declined to take the deposition of Mr. Trooien and instead offered to Sproqit a covenant not to sue. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1998). After supplemental briefing from both parties regarding the adequacy of the covenant not to sue, the Court issued an order dismissing the case because the covenant not to sue divested the Court of subject matter jurisdiction. Accordingly, Visto's claims were dismissed with prejudice and Sproqit's counterclaims without prejudice.

The next day, Visto filed the currently pending motion to vacate all interlocutory orders, including but not limited to the partial claim construction order that had previously been issued by the Court on August 4, 2006.  *See* Docket No. 199 (order of August 4, 2006).

## II.   DISCUSSION

### A.   Lack of Article III Jurisdiction

Visto argues first that all interlocutory orders must be vacated because this Court lost Article III jurisdiction before entry of final judgment.  In *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999), cited by Visto, the Fifth Circuit referred to a rule of "automatic vacatur," stating that, "[i]f mootness occurred prior to the rendering of final judgment by the district court, vacatur and dismissal is automatic.  The district court would not have had Article III jurisdiction to render the judgment, and we cannot leave undisturbed a decision that lacked jurisdiction." *Id.* at 718.  However, *Goldin* did not require vacatur of interlocutory orders entered *prior* to the case becoming moot.

*Goldin* involved a suit between the officers and directors of a bankrupt bank and the trustee of the bank's assets in bankruptcy.  *See id.* at 714.  The trustee claimed that the officers had misused assets of the bank for their own personal benefit and that the directors had failed to halt and actually ratified the misconduct.  *See id.*  At the trial level, the district court granted the officers and directors summary judgment on almost all issues.  *See id.*  Subsequently, the trustee asked for an extension of the trust, which was soon due to expire.  That request was denied, and the trust therefore terminated.  The district court thereafter issued a series of final orders which, *inter alia*, confirmed summary judgment in favor of the officers and directors, granted the officers and directors their severance benefits, and granted the officers and directors their costs and attorney's fees.  *See id.*  The trustee then appealed.  *See id.*

On appeal, the officers and directors argued that the termination of the trust stripped the trustee of standing and thus mooted the case.  *See id.* at 717.  The Fifth Circuit agreed that the bulk of the case was moot.  *See id.*  The court further held that, because the mootness occurred prior to the rendering of final judgment by the district court, the district court did not have Article III jurisdiction to render the final judgment.  *See id.* at 718.  Because the Fifth Circuit could not "leave undisturbed a decision that lacked jurisdiction," vacatur of the final judgment was automatic.  *Id.*

3

*Goldin* stands for the unremarkable proposition that a court does not have the authority to issue a final judgment (or, in general, any decision) if the case has already become moot. Nothing in *Goldin* suggests that there must be vacatur of interlocutory orders entered by a court at a time when it still had Article III jurisdiction prior to the advent of mootness. Notably, the cases cited in *Goldin* contemplate only vacatur of decisions entered after the loss of Article III jurisdiction. *See, e.g.*, Iron *Arrow Honor Society v. Heckler*, 464 U.S. 67, 69-70, 72-73 (1983) (vacating a court of appeals decision where the case became moot before entry of the decision); *New Left Ed. Project v. Board of Regents of University of Texas System*, 472 F.2d 218, 220 (5th Cir. 1973) (declining to vacate a district court's judgment due to lack of Article III jurisdiction where mootness only occurred after entry of the judgment), *vacated on other grounds*, 414 U.S. 807 (1973).

The Court notes that numerous other courts have refused to vacate interlocutory orders despite the loss of jurisdiction after they were entered. *See, e.g.*, *Mitchell v. Samsung Electronics Co., Ltd.*, No. C-01-0295 SI (N.D. Cal. Apr. 1, 2002) (denying a motion to vacate a claim construction order entered prior to mootness); *Allen-Bradley Co., LLC v. Kollmorgen Corp.*, 199 F.R.D. 316,(E.D. Wisc. 2001) (same); *Clever Devices, Ltd. v. Digital Records, Inc.*, No. 3:03-CV-679-M, 2004 U.S. Dist. LEXIS 10494 (N.D. Tex. June 3, 2004) (same); *Nilssen v. Motorola, Inc.*, Nos. 93 C 6333, 96 C 5571m 2002 WL 31369410 (N.D.Ill. October 21, 2002) (same); *Avellino v. Herron*, 181 F.R.D. 294 (E.D. Pa. 1998) (denying a motion to vacate an order refusing to dismiss, where the case later became moot); *Keeler v. Mayor and City Council of Cumberland*, 951 F.Supp. 83, 83 (D.Md.1997) (denying a motion to vacate an interlocutory order finding the Religious Freedom Restoration Act of 1993 unconstitutional, where the case later became moot); *cf. Ericsson, Inc. v. Interdigital Communications*, 2004 WL 1636924 (N.D. Tex. June 3, 2004) (reinstating previously vacated claim construction and summary judgment orders entered in a case that became moot before final judgment), *reversed on other grounds*, 418 F.3d 1217 (Fed. Cir. 2005). While these cases do not expressly address the issue whether the loss of Article III jurisdiction before entry of a final judgment mandates dismissal of previous orders, all assume that jurisdiction to issue interlocutory orders is not vitiated by subsequence occurrence of mootness. Their holdings are irreconcilable with the rule that Visto advocates.

The only case that supports Visto's argument for automatic vacatur is *GFI, Inc. v. Franklin Industries*, 55 F. Supp. 2d 565 (N.D. Miss. 1999). In *GFI*, the plaintiff patentholder extended a covenant not to sue to the defendants. *See id.* at 566. After concluding that this promise divested the court of Article III jurisdiction over the defendants' counterclaims, the court turned to the issue of whether a prior ruling issued by the court on the invalidity of the patent should be vacated. *See id.* at 567. The defendants argued that the court should not automatically vacate the prior ruling because it preceded the court's loss of Article III jurisdiction, but the court disagreed, relying exclusively on *Goldin*. *See id.* The court concluded: "[T]his court lost its Article III jurisdiction before the entry of final judgment. Accordingly, under *Goldin*, vacatur of the [prior] ruling regarding those counterclaims is automatic." *Id.* at 568.

As should be clear from above, the Court reads *Goldin* differently from the *GFI* court. Although the *GFI* court assumed that the Fifth Circuit in *Goldin* vacated the interlocutory orders issued by the district court, *see id.* at 567 (citing *Goldin*, 166 F.3d at 714-15), nothing in *Goldin* supports such conclusion. In *Goldin*, the Fifth Circuit only vacated part of the final judgment -- not any interlocutory order. *See Goldin*, 166 F.3d at 715 ("Since the district court lacked jurisdiction over the trust's claims against the [officers and directors], we must vacate *that portion of the judgment*.") (emphasis added). Other then *Goldin*, the *GFI* court cited no authority supporting the mandatory vacatur of the interlocutory order. *GFI* cannot be reconciled with the numerous cases cited above which refused to vacate such orders. This Court respectfully declines to follow *GFI*.

Accordingly, the Court finds that, in the instant case, it had jurisdiction to enter the interlocutory orders when they were entered and those orders should not be automatically vacated on jurisdictional grounds because of subsequently occurring mootness.

B.      Vacatur Pursuant to Federal Rule of Civil Procedure 60(b)

The question still remains, however, whether the Court should, in the exercise of discretion, vacate all of its interlocutory orders -- in particular, the partial claim construction order -- under Fed. R. Civ. P. 60(b). When a district court decides whether to vacate a "final judgment, order, or proceeding" that it issued, Federal Rule of Civil Procedure 60(b) applies. Fed. R. Civ. P. 60(b); *see American Games, Inc. v. Trade Products, Inc.*, 142 F.3d 1164, 1167-70 (9th Cir. 1998). Although

5

Visto has moved for relief from all interlocutory orders, those orders became final for purposes of Rule 60(b) once final judgment was entered. *See Ericsson*, 2004 U.S. Dist. LEXIS 11615, at *11 ("[A]bsent an exception, an interlocutory order is generally not appealable prior to a final judgment, but it may be freely revised or vacated by the district court prior to final judgment; however, once a final judgment is entered, the order becomes a 'final order' for purposes of appeal."), *reversed on other grounds*, 418 F.3d 1217 (Fed. Cir. 2005); *see also Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 986 (9th Cir. 2004) (noting that interlocutory orders entered prior to judgment merge into the judgment). Accordingly, the question for the Court is whether, under Rule 60(b), vacatur should be granted.

Rule 60(b)(5) and (6) allow for vacatur if the equities so demand. *American Games*, 142 F.3d at 1168. Where the case is mooted by happenstance, vacatur is particularly appropriate. *Id.* at 1168-69. Where mootness is caused by voluntary action, the district court decides whether to grant vacatur in light of "the consequences and attendant hardships of dismissal or refusal to dismiss" and "the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Id.* at 1168, *quoting Dilley v. Gunn*, 64 F.3d 1365, 1370-71 (9th Cir. 1995). In short, the Court must "weigh the equities and determine whether it should vacate its own judgment." *Id.* at 1169, *quoting*, *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997).

In *American Games*, 142 F.3d at 1168, the case became moot because an asset sale effectively merged the two parties that had been litigating against one another. The parties asked for vacatur, which an intervenor opposed. The Ninth Circuit acknowledged that the parties seeking vacatur had essentially caused the mootness of the case but determined that "the merger was motivated by legitimate business reasons only incidental to the mooted case." *Id.* at 1165. The Ninth Circuit thus concluded the district court did not abuse its discretion in granting vacatur.

The pivotal question is "whether the party seeking relief from judgment below caused the [nonjusticiability] by voluntary action." *American Games*, 142 F.3d at 1169 (citation omitted). The distinction between mootness caused by happenstance and that caused by voluntary action derives from Supreme Court decisions addressing vacatur of lower court decisions. *Cf. Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 117-18 (4th Cir. 2000) (standards for vacatur by a district court and

6

vacatur by an appellate court are "essentially the same" -- *i.e.*, both take into account the issues of "fault" and public interest).

In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), the Supreme Court held that, where the party requesting vacatur caused the mootness by its own voluntary litigation related action, *e.g.*, through a settlement, a court may not grant the motion absent exceptional circumstances. *See id.* at 29. In contrast, in *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), the Supreme Court explained that it is inequitable to bind parties to unappealable adjudications where they lost their right to appeal by "happenstance." *Id.* at 39-40. Although *American Games* held that general equitable factors rather than "exceptional circumstances" test of *U.S. Bancorp* applies where mootness is caused by voluntary action, the distinction between mootness caused by happenstance versus that caused by voluntary legal action taken by the party seeking vacatur remains as the pivotal threshold question in determining the propriety of vacatur by the district court.

In the instant case, mootness was caused by Visto's voluntary action in the litigation -- *i.e.*, its issuance of the covenant not to sue. Visto protests, however, that it only issued the covenant not to sue because of Sproqit's decision to cease manufacturing or marketing infringing products. *See* Reply at 5. Thus, according to Visto, it cannot be blamed in equity for the mootness of the case. The Court does not find this argument persuasive for two reasons.

First, in his declaration, Mr. Trooien stated that, once the case was decided in Sproqit's favor, then it would *resume* commercial operations. *See* Trooien Decl. ¶ 6. The Court offered Visto the opportunity to depose Mr. Trooien to test the credibility of this assertion, but Visto -- and not Sproqit -- made the decision not to proceed with the deposition.

Second, although, in some cases, courts have looked at the motives behind a party's voluntary action to determine whether that party is at fault for purposes of vacatur, those cases are distinguishable. For instance, in *American Games*, 142 F.3d at 1164, the district court had found that the decision of the parties to merge, which caused the mootness of the case, was made for "legitimate business reasons only incidental to the mooted case." *Id.* at 1166. In *Dilley v. Gunn*, 64 F.3d 1365 (9th Cir. 1995), a prisoner's case to improve access to the prison law library became moot

7

because he was transferred to another prison. The Ninth Circuit indicated that, if the prisoner's "transfer from Calipatria was wholly unrelated to this lawsuit and would have occurred in the absence of litigation," then the voluntary action should be treated as "'happenstance' within the meaning of *Munsingwear*." *Id.* at 1372. In the instant case, Visto's issuance of the covenant not to sue is neither "incidental" nor "unrelated" to this litigation. Visto's covenant not to sue Sproqit was a litigation event, issued solely to terminate the lawsuit. *Cf. Highway Equip. Co. v. FECO, Ltd.*, Nos. 05-1547, 05-1578, 2006 U.S. App. LEXIS 28740, at *18 (Fed. Cir. Nov. 21, 2006) (indicating that a covenant not to sue cannot be considered "simply an extra judicial promise made by one party to another outside the context of litigation").

Because it was ultimately Visto's voluntary action that caused the instant case to become moot, the equities favor a denial of vacatur. Visto nonetheless contends that equity favors vacatur because the Court's partial claim construction order could have a preclusive and prejudicial effect. Visto suggests that it would be unfair for the order to have a preclusive effect when it cannot appeal the order. It thus asserts an attendant hardship from refusal to vacate and compromise of its right to relitigate an unreviewed dispute. *American Games*, 142 F.3d at 1168.

Visto's argument as to nonreviewability is compromised inasmuch as the mootness of this case was caused by Visto's voluntary action, not happenstance. *See Bancorp*, 513 U.S. at 25 (explaining that it is equitable to refuse to vacate an order made moot by a party's voluntary actions because "[t]he judgment is not unreviewable, but simply unreviewed by his choice."). Visto had options to ensure review. If Visto was unhappy with the claim construction results, it could have continued the litigation and sought relief therein. More to the point, Visto also had the option of taking Mr. Trooien's deposition and then pursuing its motion to dismiss based on Sproqit's closure and unlikelihood of its business being revived. Had Visto prevailed on the merits of the motion to dismiss rather than issuing the covenant not to sue, it would have had a stronger argument that mootness was caused by "happenstance" of Sproqit's closure rather than Visto's voluntary action, thereby setting up a stronger argument for vacatur.

Furthermore, it is not clear what the preclusive effect of the partial claim construction order will have. *Compare TM Patents, L.P. v. International Business Machines Corp.*, 72 F. Supp. 2d

370, 376-377, 379 (S.D.N.Y. 1999) (giving preclusive effect to a claim construction order issued after two-day hearing and incorporated into the jury instructions in an earlier case), *with Kollmorgen Corp. v. Yakawa Elec. Corp.,* 147 F. Supp. 2d 464, 468, 470 (W.D. Va. 2001) (ruling that claim construction orders should not be given preclusive effect before they are subject to the opportunity of Federal Circuit review).  Visto's claim of prejudicial hardship is somewhat speculative.

Balance against Visto's equitable claims is the competing value of finality of judgment. *American Games*, 142 F.3d at 1168.  In this regard there is a strong policy reason which militates against allowing a party to hedge its bet by seeking a claim construction ruling from a court and then, if unhappy with that ruling, obtaining a vacatur by extending a covenant not to sue.  *See Bancorp*, 513 U.S. at 28 (noting that parties may wish to roll the dice rather than settle "if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur").  Several courts have underscored the concern about permitting parties to so hedge their bets.

In *Mitchell v. Samsung Electronics Co., Ltd.*, No. C-01-0295 SI (N.D. Cal. Apr. 1, 2002) (order denying motion to vacate claim construction order), the plaintiff moved Judge Illston of this District to vacate her claim construction order because a settlement had been reached and settlement was contingent upon her withdrawing and vacating that order.  In denying the motion, Judge Illston cautioned that, "[i]f plaintiff's vacatur motion were granted, the Court would be condoning a system in which patent holders would be able to seek a claim construction ruling from one court, then settle the case and obtain a vacatur of the ruling if it is not to their liking, only to perform the entire process again before another court in hopes of obtaining a more favorable ruling."  *Id.* at 3.

The same concern animated the court's decision to deny a vacatur motion in *Allen-Bradley Co., LLC v. Kollmorgen Corp.*, 199 F.R.D. 316, (E.D. Wisc. 2001).  There, as in *Mitchell*, a request was made to vacate a claim construction order because the settlement between the parties was contingent on vacatur of the order.  The court denied the request because "[t]he result sought by the parties . . . would . . . encourag[e] litigants to test their proposed claim constructions via a full-blown *Markman* hearing and decision before settling, thereby relegating the court's *Markman* decision to the category of 'advisory opinion.'"  *Id.* at 319.

Finally, in *Clever Devices, Ltd. v. Digital Records, Inc.*, No. 3:03-CV-679-M, 2004 U.S. Dist. LEXIS 10494 (N.D. Tex. June 3, 2004), the court denied the parties' joint motion to vacate the claim construction order that had been issued. The court relied on *Allen-Bradley*, noting that, "'just as the availability of post-judgment vacatur by an appellate court may encourage some litigants to "roll the dice" rather than settle, so too may the availability of post-*Markman* hearing vacatur encourage the gambler within some litigants.'" *Id.* at *10 (quoting *Allen-Bradley*, 199 F.R.D. at 318).

Visto tries to distinguish the above authority in two ways: (1) because, "[i]n those cases, the parties did not seek vacatur of all Interlocutory Orders" and (2) because, in those cases, "the parties entered into settlement agreements," whereas here it was Sproqit's cessation of business that caused Visto to extend the covenant not to sue. Reply at 7. Neither distinction is apposite. Indeed, with respect to the first distinction, it seems disingenuous for Visto to argue that it has an equal interest in vacating all of the Court's orders, including, *e.g.*, mere scheduling orders. As is evidenced by its stated concern regarding prejudice, the order of most concern to Visto is the partial claim construction order. As for the second distinction, although Visto initially sought dismissal based on Sproqit's cessation of business, it did not pursue the motion. The Court thus dismissed the case based on Visto's conduct, not Sproqit's -- *i.e.*, Visto's covenant not to sue. The fact that the dismissal was the result of Visto's unilateral conduct, rather than a bilateral settlement agreement, if anything, cuts in favor of denying vacatur since the mootness is attributable to Visto, not both parties.

Furthermore, permitting vacatur after completion of extensive claims construction proceedings works a hardship on the party opposing vacatur. In this case, Sproqit has been put through considerable expense in litigation the hard fought battle over claims construction.

In sum, although there are equitable considerations on Visto's side, the balance of the equities weigh against vacatur.

Finally, the Court is mindful that "'[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.'"

*Bancorp*, 513 U.S. at 26. While there are circumstances that warrant vacatur of interlocutory orders under Rule 60(b), they do not obtain here.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Visto's motion to vacate is denied.

This order disposes of Docket No. 232.

IT IS SO ORDERED.

Dated: December 19, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge