UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISTO CORPORATION, | No. C-04-0651 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES** |
| SPROQIT TECHNOLOGIES, INC. | **(Docket No. 247)** |
| Defendant. | |
| _____/ | |

On October 4, 2006, this Court granted Plaintiff Visto Corporation's motion to dismiss based on the covenant not to sue it extended to Defendant Sproqit Technologies, Inc. Subsequently, Sproqit moved for attorney's fees pursuant to 35 U.S.C. § 285. Having reviewed the parties' briefs and accompanying submissions, the Court hereby **DENIES** Sproqit's motion for fees.[1]

## I. DISCUSSION

In patent actions, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Sproqit argues that it is a prevailing party and that this was an exceptional case because Visto's infringement claims were brought in bad faith and were objectively baseless.

---

[1] The Court grants both Visto's motion for leave to file a sur-reply and its request for judicial notice. *See* Docket No. 254 and 257.

A.     Prevailing Party

Visto challenges Sproqit's assertion that it is a prevailing party for purposes of § 285. Whether a party is a prevailing party under the statute depends on whether the party obtains some relief on the merits. *See Motorola, Inc. v. Hazeltine Research, Inc.*, No. 88 C 4663, 1990 U.S. Dist. LEXIS 12769, at *3-4 (N.D. Ill. Sept. 24, 1990) (concluding that "the cases which have construed the term 'prevailing party' under 42 U.S.C. § 1988 are instructive as to the definition of that term under 35 U.S.C. § 285" -- *i.e.*, a "'prevailing party' is one who receives 'at least some relief on the merits of his claim,' and thus can be said to have 'obtained the substance of what he sought'"). Here, Sproqit obtained a dismissal with prejudice of Visto's infringement claims. Accordingly, Sproqit is a prevailing party.

The fact that the Court dismissed the claims only as a result of Visto's covenant not to sue is not relevant. In a recent opinion, the Federal Circuit confirmed that an alleged infringer can be a prevailing party under § 285 even when the dismissal comes about because the patentholder extended a covenant not to sue. *See Highway Equip. Co. v. FECO, Ltd.*, Nos. 05-1547, 05-1578, 2006 U.S. App. LEXIS 28740, at *21 (Fed. Cir. Nov. 21, 2006) (stating that that an alleged infringer's prevailing party status "is sufficiently based on [the patentholder's] having filed a covenant not to sue with the court to end the litigation, resulting in a dismissal with prejudice").

Visto maintains still that Sproqit is not a prevailing party because Visto only extended the covenant not to sue because Sproqit was a defunct business and stopped making any infringing products. The Court is not persuaded by this argument. First, Visto's motive for the covenant not to sue is debatable. Arguably, the covenant not to sue was issued at least in part because the litigation was not proceeding as Visto had hoped, with the Court denying Visto's motion for preliminary injunction and subsequently construing at least some terms unfavorably to Visto. Second, and more important, in *Highway*, the Federal Circuit did not indicate that a party's motive for giving a covenant not to sue is relevant to determining whether the other party is a prevailing party. The critical point in *Highway* is that where a plaintiff dismisses its suit with prejudice, the defendant is a prevailing party. *See id.* at *20-21 ("[A]s a matter of patent law, the dismissal with prejudice, based on the covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the

1 necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of
2 the parties, such that the district court properly could entertain [the defendant's] fee claim under 35
3 U.S.C. § 285."). The Court therefore turns to the question of whether this is an "exceptional case"
4 for which attorney's fees may be awarded under § 285.

B.  Exceptional Circumstances

As a preliminary matter, the Court notes that the use of the term "exceptional" in § 285 is not to be taken lightly. "[T]he term . . . is generally defined as 'forming an exception,' 'being out of the ordinary,' 'uncommon' or 'rare.'" *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v Dana Corp.*, 372 F. Supp. 2d 833, 848 (E.D. Va. 2005). "Congress in choosing to limit district court authority to award attorney's fees to 'exceptional' cases has made clear that this should occur only in rare or extraordinary cases. And courts elucidating this statutory language have generally found that 'exceptional' cases are those rare or extraordinary cases blighted and marked by a party's bad faith or inequitable conduct." *Id.* at 851; *see also Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 743 (M.D.N.C. 2003) ("In imposing this limit [to exceptional cases], Congress expressed a desire to curtail attorney fees litigation to rare or unusual circumstances."). In other words, an exceptional case is one in which there is some egregious action by a party such that fees must be awarded to the other party in order to prevent a gross injustice. *See FieldTurf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1373 (Fed. Cir. 2006) ("We do not discern the egregious action required by precedent to support fee-shifting."); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (stating that §285 is an exception to the American Rule concerning attorney fees and is "limited to circumstances in which it is necessary to prevent 'a gross injustice'"); *see also Continental Art Co. v Bertolozzi*, 232 F2d 131, 134 (7th Cir. 1956) (noting that attorney's fees should be not be awarded in an "ordinary and typical patent infringement suit").

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg., Inc., v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). "Absent misconduct in conduct of the litigation or in

3

securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.*

A party seeking an award of fees under § 285 must establish the predicate conduct by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003) ("[A] district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is 'exceptional.'"). This high standard of proof has particular resonance in cases, like the one here, where an alleged infringer seeks attorney's fees after the patentholder has extended a *Super Sack* covenant not to sue. If fees are too readily awarded under § 285 when a patentholder extends a covenant not to sue resulting in dismissal of the case, then such covenants and the beneficial economies and finality attendant thereto might be unduly discouraged.

In the instant case, Sproqit does not claim that there was material misconduct by Visto in the conduct of this litigation or in securing the patents at issue. Rather, Sproqit contends only that the infringement claims were brought in bad faith and were objectively baseless.

At the hearing on Sproqit's fee motion, the issue of whether Visto's infringement claims were brought in bad faith was hotly contested. Sproqit argued bad faith based on, *inter alia*, that Visto's unsuccessful attempts to acquire Sproqit spurred this lawsuit. It also argues the timing of the *Super Sack* covenant not to sue (before the Court could issue a final claim construction ruling) was intended to prevent an anticipated adverse ruling. Visto argues that the lawsuit against Sproqit was simply part of a broader effort to protect its intellectual property; entities other than Sproqit had and have been sued, with a verdict having been rendered in its favor in one case in Texas. Moreover, Visto asked to have the case dismissed even before the claim construction hearing was held, once it learned that Sproqit was no longer in business. The Court, however, need not make any conclusions about subjective bad faith on the part of Visto, because Sproqit must demonstrate both subjective bad faith *and* objective baselessness. The Court finds that Sproqit has failed to meet its burden of demonstrating by clear and convincing evidence that Visto's infringement claims were objectively baseless.

According to Sproqit, Visto's claims of infringement were objectively baseless because Visto knew or should have known that Sproqit's system does not practice certain limitations found

4

in the claims at issue. In its brief, Sproqit focuses specifically on Visto's allegedly unreasonable construction of the patent terms "workspace element," "independently modifiable copy," "version information," and "examination results." *See* Mot. at 6. The question of infringement *vel non* turns largely upon the construction of these and other terms.

The standard for demonstrating objective baselessness is a rigorous one under § 285. *See Bicon, Inc. v. Straumann Co.*, 356 F. Supp. 2d 6, 8 (D. Mass. 2005) (indicating that only when an issue is "so one-sided," fees could be awarded); *Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989) (finding a lawsuit frivolous because "intelligent people should have known [it] would have no chance at success"); *Kaehni v. Diffraction Co.*, 342 F. Supp. 523, 536 (D. Md. 1972) (awarding fees in part because "[t]he infringement question in this case is not close enough as to be a matter upon which informed, reasonable counsel might differ; nor is it close enough as to be a matter upon which scientifically-informed, reasonable men might differ"); *cf. B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1429 (Fed. Cir. 1997) (upholding the district court's decision to deny fees to alleged infringer because, *inter alia*, patentholder "presented a plausible though untenable argument as to why [a] limitation . . . was met by [the accused product]").

Visto's asserted constructions of these terms were not so outside the realm of possibility that they could be deemed frivolous and "entirely without merit." *Kor-CT*, 2005 U.S. Dist. LEXIS 4728, at *4; *see also Haynes Int'l v. Jessop Steel Co.*, 8 F.3d 1573, 1580 (Fed. Cir. 1993) (declining to award fees because the court could not say that the positions advanced by the party against whom fees were sought were frivolous even though "notably weak"). The meaning of these terms is hardly self evident; there is room for substantial ambiguity. Moreover, the constructions favored by Visto with respect many of the disputed terms -- *i.e.*, "workspace element," "independently modifiable copy," "version information," and "examination results" -- were, if not identical, arguably consistent with the constructions previously given by Judge Ward in the Eastern District of Texas. *See Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW (E.D. Tex.).[2]

---

[2] A copy of Judge Ward's claim construction order can be found in this case at Docket No. 101 (Exhibit A to the Khaliq declaration).

5

1    Sproqit points out that, in the Texas litigation, Visto argued that a "copy" of a workspace element does not have to be an exact copy of the workspace element but that Judge Ward rejected that argument and instead simply determined that a "copy" of a workspace element does not have to be in the same format as the workspace element.  According to Sproqit, Judge Ward implicitly rejected Visto's argument that the copy does not have to be an exact copy of the workspace element, yet Visto nonetheless continued to argue this point to this Court.  *See id.*  But as this Court held in its prior order, Judge Ward's construction is not binding on this Court, *see* Order of 8/4/2006, at 4-6, and thus Visto was free to argue otherwise.  Moreover, as this Court pointed out, Judge Ward did not address the precise question here.  The issue was open to debate.

    In any event, Sproqit's argument misses a larger point.  Even if Visto's construction of the term "copy" were without merit and deemed unreasonable, the Court could have adopted a construction of "workspace element" that would permit an ultimate finding of infringement.  For example, if a portion of an e-mail could be considered a "workspace element," then there might still be infringement even if the term "copy" were construed to require an exact copy (format differences aside).  In fact, while the Court's tentative construction on the term "workspace element" was not entirely favorable to Visto, neither was it entirely unfavorable.  Sproqit has not shown that under the Court's tentative construction of "copy" and "workspace element," Visto had no chance of success in proving infringement.

    Furthermore, even if the Court's claim construction made Visto's claims for literal infringement difficult or even impossible, Visto still could have asserted infringement by equivalents.  "[J]ust as parties to a tort case might differently assess how a hypothetical 'reasonable person' would or should resolve the question of negligence, parties in patent litigation can legitimately differ over what an objective skilled practitioner would regard as equivalent." *Bicon*, 356 F. Supp. 2d at 8.  While counsel for Sproqit suggested at the oral argument that doctrine of equivalents might not apply depending, *e.g.*, upon the content of the prosecution history, Sproqit has failed to show by clear and convincing evidence that the doctrine would not have been viable here.  Indeed, the Court notes that in responding to the Court's tentative construction of "workspace element," Sproqit alluded to the doctrine of equivalents as a way of accommodating the Court's

6

skepticism of Sproqit's proposed construction.  *See* Docket No. 203 (Sproqit's second supplemental memorandum on claim construction) (arguing that Court's concern regarding the proper construction of "workspace element" was more of a doctrine-of-equivalents issue).

Given the vagaries often inherent in the claims construction process, it appears to be the exception, and not the rule, for a court to find terms of a patent so obvious on its face, and thus the construction offered by a party so obviously unreasonable, that sanctions under § 285 would be warranted.  *See, e.g.*, *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1116, 1120 (Fed. Cir. 2002) (concluding that district court properly denied fees to Yahoo! under § 285 because, *inter alia*, "Yahoo! has failed to demonstrate that Fantasy's proposed construction of the 'bonus points' limitation as including additional points for distance scoring and total yardage was unreasonable"); *E.I. Dupont De Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680, 719 (D. Del. 1995) (denying fees sought by alleged infringer under § 285 because patentholder's construction of patent claims "was plausible").

The Court acknowledges that Sproqit has cited three cases in which a court did award fees under § 285 because the party's construction of a claim was frivolous.  However, they are all distinguishable.

In *CellNet Data Systems, Inc. v. Itron, Inc.*, No. C-97-20396 EAI (N.D. Cal. 2001), the court specifically provided that the order granting fees was not for publication.  More importantly, in that case, the court found that the construction was frivolous because it "was strained, unsupported in fact or reason, and contradictory to the plain language of the claims and the specification."  *Id.* at 9.  That is not case here.

In another case cited by Sproqit, the award of fees was vacated by the Federal Circuit because the district court had erred in its claim construction, which was integral to its award of fees. *See Rambus, Inc. v. Infineon Techs. AG*, 115 F. Supp. 2d 668, 676 (E.D. Va. 2001) (finding a party accountable for fees because its construction was directly at odds with the intrinsic evidence, in particular, the claims and written descriptions); *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106-07 (Fed. Cir. 2003) (noting that district court had erred in its claim construction and thus vacating the grant of judgment as a matter of law of noninfringement; also vacating fee award).

1  Moreover, the district court had awarded fees largely because the party's "view of the patents was
2  completely untethered to the language of the patent claims or the written description, and, in many
3  cases, flatly contradicted the written description." *Rambus*, 115 F. Supp. at 676.  As noted above,
4  that is not the case here.

5  Finally, *Multi-Tech*, 708 F. Supp. at 615, is distinguishable from the instant case.  There, a
6  "well-documented prosecution history. . . indicate[d] unequivocally that [certain] materials were
7  excluded from the scope of the patent." *Id.* at 622.  Again, that is not the case here.  In the
8  arguments on claim construction, neither party cited anything material in the prosecution history.
9  Their arguments were based on the claim language and specifications.

10  Accordingly, the Court finds that, in the instant case, Sproqit has failed to meet its heavy
11  burden of proving, by clear and convincing evidence, that Visto's infringement claims were
12  objectively baseless within the meaning of § 285.  Therefore, this is not an "exceptional case" for
13  which fees may be awarded thereunder.

14  C.    Discretion to Award Fees

15  Even if the Court were to deem this case exceptional, the decision whether or not to award
16  attorney's fees under § 285 lies within the Court's discretion.  *See Brooks*, 393 F.3d at 1382.  In
17  determining whether to award attorney's fees under § 285, a court considers such factors as "the
18  closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties'
19  conduct, and any other factors contributing to imposition of punitive sanctions or to fair allocation of
20  the burdens of litigation." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir.
21  2005); *see also Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322 (Fed. Cir.
22  2006) (stating that "the denial of attorney fees is discretionary and 'permits the judge to weigh
23  intangible as well as tangible factors," including any "factor[] whereby fee shifting may serve as an
24  instrument of justice.").

25  Here, even if it were ultimately concluded that Visto's claims of infringement were
26  objectively baseless, at the very least that issue was "close."  As noted above, the issues for claim
27  construction were not easily resolved by plain language or prosecution history.  The issues were
28  difficult and imbued with ambiguity.  The tactics of Visto's counsel were not egregious.  For

example, although the Court rejected many of counsel's arguments, those arguments did not lack a factual and/or legal basis. *Cf.* Fed. R. Civ. P. 11(b). As for the conduct of Visto itself, that too was not egregious. Sproqit faults Visto for pursuing the case when it became evident early on that Sproqit's sales were minimal. Although Visto learned at the time of the preliminary injunction proceedings that Sproqit's sales were minimal, Visto had a basis to proceed with this case and seek, *inter alia*, prospective relief, because Sproqit was still in business and gave no indication it was giving up the business. Sproqit thus continued to pose a threat of ongoing and future infringement. Once it became clear that Sproqit had ceased doing business, Visto sought dismissal of the case on mootness grounds. Its attempt to end the case preceded commencement of the claims construction hearing.

The Court thus concludes that, even if Sproqit were correct and demonstrated that Visto's infringement claims were objectively baseless, this is not a case where the Court should exercise its discretion to grant fees under § 285. There has been no gross injustice to Sproqit warranting the exception remedy of shifting fees.

## II. CONCLUSION

For the foregoing reasons, Sproqit's motion for fees is denied.

This order disposes of Docket No. 247. This order further disposes of Docket Nos. 254 and 257.

IT IS SO ORDERED.

Dated: January 17, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge

9